UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge Presiding

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
    VS.                         ) **Case No. 3:24-cr-00329-CRB-1**
                                )
RUTHIA HE, also known as Rujia )
He,                             )
                                )
            Defendant.          )
_____ )
                                San Francisco, California
                                Friday, October 4, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**
For Plaintiff:

                        ISMAIL RAMSEY
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
            BY:  **KRISTINA GREEN**
                 **LLOYD A. FARNHAM**
                 **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant:

                        HUESTON HENNIGAN LLP
                        523 W. 6th Street - Suite 400
                        Los Angeles, California  90014
            BY:  **VICKI CHOU (appearing via Zoom)**
                 **ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Stenographically Reported By:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Stenographic Reporter

**APPEARANCES**:  (CONTINUED)

For Defendant:

                        KEKER, VAN NEST & PETERS LLP
                        633 Battery Street
                        San Francisco, California  94111
                   BY:  **ELLIOT R. PETERS**
                        **NICHOLAS D. MARAIS**
                        **ATTORNEYS AT LAW**


Also Present:        **Carolyn Truong, Pretrial Services**
                     **Amaryllis Austin, Pretrial Services**
                     **Silvio Lugo, Pretrial Services**
                     **Wayne Decoste, Rescor Group**

**<u>I N D E X</u>**

Friday, October 4, 2024

**<u>E X H I B I T S</u>**

| **<u>COURT EXHIBITS</u>** | **<u>IDEN</u>** | **<u>EVID</u>** |
|---|---|---|
| 1 | 13 | |
| 2 | 13 | |
| 3 | 13 | |
| 4 | 14 | |
| 5 | 15 | |
| 6 | 24 | |

| | |
|---|---|

1    <u>**Friday - October 4, 2024**</u>                    <u>**11:00 a.m.**</u>

2                        <u>**P R O C E E D I N G S**</u>

3                            **---oOo---**

4        **THE CLERK:**  Calling Criminal Action CR 24-0329, U.S.A.

5    vs. Ruthia He.

6        Counsel, please step forward and state your appearances

7    for the record.

8        **MS. GREEN:**  Good morning, Your Honor.  Kristina Green

9    and Lloyd Farnham for the United States.

10        **THE COURT:**  Good morning.

11        **MR. FARNHAM:**  Good morning.

12        **MS. CHOU:**  Good morning, Your Honor.  Vicki Chou on

13    behalf of defendant Ruthia He, and Mr. Van Nest and I believe a

14    colleague are appearing in court.

15        **THE COURT:**  All right.  Good morning.

16        **MS. CHOU:**  Good morning.

17        **MR. PETERS:**  Elliot Peters and Nick Marais.  We were

18    planning to be here, but we also obviously saw the Court's

19    order.

20        **THE COURT:**  Well, actually I received notification

21    that you were coming at first; and then I -- I mean, I wouldn't

22    have sent out that order had I thought you'd be here.  My

23    concern was that you wouldn't be here, not --

24        **MR. PETERS:**  We're here.

25        **THE COURT:**  -- that you would willfully not be here.

My concern was --

      **MR. PETERS:**  Understood, Your Honor.

      **THE COURT:**  -- that you weren't coming, so that's why I sent -- that's an unusual order, and I don't -- I regret -- I just wouldn't have sent it --

      **MR. PETERS:**  I understand.

      **THE COURT:**  -- in the normal set of conditions.

      **MR. PETERS:**  I just wanted Your Honor to know we were planning to be here.

      **THE COURT:**  Oh, okay.  Great.

      **MR. PETERS:**  -- and we are here.

      **THE COURT:**  Okay.  I appreciate that, and I wouldn't have thought otherwise.

    I thought what I want to do is, for the purpose of accuracy, is to identify all the documents, that is, what are referred to as travel documents, that are -- that have been delivered either to the Government or to Pretrial Services and have them marked as exhibits.

    Do you have them?  Did you bring them?  This is?

      **PRETRIAL SERVICES AUSTIN:**  Amaryllis Austin.

      **THE COURT:**  Pardon me?

      **PRETRIAL SERVICES AUSTIN:**  Your Honor, the travel documents are downstairs in our office.

      **THE COURT:**  Oh, bring them.

      **PRETRIAL SERVICES LUGO:**  Your Honor, they've been

1    photocopied.

2            THE COURT:  Yeah, but I want the documents.  I want

3    the documents.

4            MS. GREEN:  Your Honor, the Chinese travel document is

5    in DEA custody, but I can have it brought to the courtroom if

6    you would like it.

7            THE COURT:  Yeah, bring all the documents.  The

8    documents should be here.

9            MR. FARNHAM:  A copy of the travel document is

10   sufficient?  The original is with the DEA, but we propose that

11   a copy of it be the exhibit.

12           THE COURT:  I want the originals here.

13           MR. FARNHAM:  Understood.

14           THE COURT:  Thank you.

15       I mean, yes, I've looked at the copies.  I understand

16   that.  Yesterday I did look at the documents that were in the

17   custody of Pretrial Services, but of course they weren't the

18   document that is most the recent disclosure.

19       So -- but before they come up, let me -- let me tell you

20   what the center of my focus is so the parties can respond

21   accordingly.

22       I am not focused as the -- the center of the focus is not

23   whether or not the defendant violated a condition of release,

24   and I can go into that for a variety of reasons, not the least

25   of which she was in custody.  The document was discovered when

she was -- I think when she was in custody.  No?  I thought it
was discovered in -- maybe I have the facts wrong.

     I thought it was discovered by the document.  By the way,
we are referring to a document issued by the Chinese Government
on June 21st, 2023.  Okay, that's the document.  And it bears a
number T and then everything else has been blotted out except
the last two digits 28.

     Okay.  The document was discovered by DEA searching the
house, and I had thought that at the time -- the exact time of
the discovery of the document, she was still in the custody of
the Government, but am I wrong in that?

     **MS. GREEN:**  I'm not sure about how you're defining
"custody."  My understanding was that the search happened.  So
in terms of the order of events, she was released from
Santa Rita and picked up by the security agents and then the
two DEA agents and then driven to the house, and then that's at
the point at which they went into the house, the team, to look
for any devices and that's when it was found.  So she was
outside of Santa Rita at that time with at that point the DEA
agents and the security personnel.

     **THE COURT:**  She was no longer confined to
Santa Rita --

     **MS. GREEN:**  Correct.

     **THE COURT:**  -- but she was at the house but she hadn't
been given free rein of the house; she was still -- it was the

1  DEA agents and the two security guards that accompanied her in

2  connection -- yes, sir?

3      **MR. DECOSTE:**  Yes, sir.  She was --

4      **THE COURT:**  I think you have to come forward.

5      **MR. DECOSTE:**  I apologize.

6      **THE COURT:**  That's all right.  Just come forward and

7  identify yourself.

8      **MR. DECOSTE:**  My name is Wayne Decoste.  I run the

9  security company that is watching her right now.  She was --

10     **THE COURT:**  You have to speak into a microphone

11 because we're recording it.

12     **MR. DECOSTE:**  All right, sir.

13     **THE COURT:**  Yeah.

14     **MR. DECOSTE:**  Yeah, I apologize.

15     **THE COURT:**  That's all right.

16     **MR. DECOSTE:**  So I helped escort her from the jail,

17 and she wasn't allowed to leave the custody of the DEA vehicle

18 until that search was complete.

19     **THE COURT:**  Okay.  All right.  So thank you.  I

20 appreciate that.

21     **THE CLERK:**  Can you spell your last name, sir?

22     **MR. DECOSTE:**  Yeah.  I apologize.  It's Decoste,

23 D-E-C-O-S-T-E.

24     **THE COURT:**  Okay.  Thank you.

25     The focus of my inquiry is not based on a violation of a

1   condition of release.  Instead, it is based upon the

2   representations that were made in connection with the existence

3   of travel documents upon which the Court then fashioned a set

4   of conditions consistent with what was represented to me.

5   That's number one.

6        Number two, I don't think there's a dispute that her

7   counsel advised the Court on numerous occasions that she had no

8   travel document -- that her travel document, that is, passport

9   and other travel documents, were submitted to the Government.

10  Counsel said that on numerous occasions.

11       By the way, everything I say today and everything in my

12  mind is that the counsel was unaware of the existence -- so I'm

13  not quite sure; I'll ask one question about that -- unaware of

14  the existence of this other document at the time they made the

15  representations to the Court.  So this isn't about the counsel

16  withholding information from the Court.

17       What it is about is the defendant withholding information

18  at a time on numerous occasions in which she heard her lawyers

19  say that she had no way of traveling because, in fact, she had

20  given her passports and other travel documents to either her

21  lawyer or to the Government.

22       So that's the context in which the Court is examining the

23  question of whether it's appropriate to remand her in light of

24  those representations.

25       Okay.  I guess I have a question that I -- well, and I

have before me the opposition.  I have a declaration from

Mr. Giu -- is it Giu or Giu?  Is he here?

**MR. PETERS:**  Yes, sir.

**MS. CHOU:**  I think Giu, and he should be there, yeah.

**THE COURT:**  Pardon?

**MR. PETERS:**  Yes, he's here.

**THE COURT:**  Yes, he's here.

-- as to the circumstances in which he observed the

document and what action he took in connection with it.  So --

but that, in my view, is not the issue.  My view is that the

issues occurred prior to that time.  That's my concern.

So -- and I will say also that the opposition filed by the

Government -- by the Defense doesn't really address that point

other than to say it was either inadvertent or unknowing or a

mistake; or I don't exactly understand what their position is

as to the question of why the defendant permitted her attorneys

on four occasions to say that she had no travel documents when,

in fact, she did.  She had it.

And I guess the big question -- if you want to answer this

question, but you may not know, Mr. Peters -- is she turns over

her passport to Miranda Kane, I guess, according to your

declaration, in February of 2023, and in June or earlier she

goes to the Council and she gets another passport.  And that's

clear, to me, her intention to flee.  And I was unaware of

that.

There's no conceivable -- I mean, I can't think of the explanation. I don't want you to fantasize or speculate why a person can do that. I have no idea what it would be; but if there's an explanation, of course, I'll hear it.

And also I will say it's not as if she doesn't understand English. She's completely fluent in English, reasonably fluent in English. She received a graduate degree from a recognized educational institution. She's been living here. And I've been told by Defense there's no need to have an interpreter here, she understands exactly -- she understands what is being said. So it wasn't a failure of communication.

And I'll also point out one other thing, not that I need to, but there was an issue as to what this company MakeBelieve was. And Mr. Peters stated -- and, again, I want to emphasize the fact that he can only say that which he was told. He was told that this was a -- apparently he was told, because I don't think -- it's not his company. He was told by someone that MakeBelieve was the company that was -- that furnished payment to independent contractors who were working on -- for the benefit of the company; that it wasn't a, quote, "shell" that was used simply to hold funds but, rather, it was an active -- active company.

And then when the Government said, "We don't believe that to be the case; we believe it simply to be a receptacle or vehicle for funds to be transferred from accounts in the

United States to an account that either she or friends of hers

operated to give her access to funds in China" -- the account,

by the way, it was in Hong Kong -- that that was their belief.

And the Defense came in after the subsequent hearing and

said, "We've been unable to receive documents -- to obtain

documentation as to this company," which I assume is correct.

But the fact of the matter is that the documentation that

was provided was suspicious to begin with because there were

invoices that were issued not by the company that -- not by

MakeBelieve, the company that was given the money, but, rather,

by the defendant or the defendant's company.

And so that's odd to have an invoice, but it's not

entirely inconceivable, but it certainly was consistent with

something created after the fact.

So for all those reasons, I have a serious concern as to

whether or not I have in my possession, or in the court's

possession, now all travel documents.  I have no idea.  You

know, maybe, maybe not.

And, by the way, it's clear, since there's no dispute,

that the existence of this travel document was not conveyed to

either the Court or to the Government, the most recent, and

that it was the DEA that located it.

So I want to identify for the record the travel

documents -- all right? -- so we can refer to it.  There is,

first of all, a document from Homeland Security identified as

"Travel Document," and it bears the last three digits 105.  It was issued February 26 of 2024.

That will be A or B or whatever.  Should we give it letters or what, Ms. Scott, or numbers?

**THE CLERK:**  Numbers, that's fine.

**THE COURT:**  Okay.  That's Exhibit 1.

(Court's Exhibit 1 marked for identification.)

**THE COURT:**  Exhibit 2 is the permanent resident green card.

Oh, by the way, I want to, for the record, indicate that while it was issued February 26th, 2024, that's Exhibit 1, it was good through February 25th of 2026.  So it's an active document.

Number two is a green card, and -- what is referred to as a green card, and that doesn't indicate the date of its issuance but it does say "Resident Since" and has August 5th, '20 -- 2020, and it expires August 5th, 2030.  That will be Exhibit 2.

(Court's Exhibit 2 marked for identification.)

**THE COURT:**  Exhibit 3 is a PRC passport, and that is Passport Number ending in the three digits 384.  It was issued August 19th, '91, and expired February 22nd, 2008.  And that will be Exhibit 3.

(Court's Exhibit 3 marked for identification.)

**THE COURT:**  Exhibit 4 is a current passport, which the

last three digits are 997, and it was issued October 14th, 2021, and it expires October 13th, 2031, and that document reflects that it is a replacement of a passport -- well, I guess, replacement of a passport ending in 210, two one zero, and it says October 14th, 2021.

(Court's Exhibit 4 marked for identification.)

**THE COURT:** So those are the four passports plus the document now, which you don't have.

**MS. GREEN:** It's still in -- they're bringing it down from evidence. This is a photocopy of it, and it's coming down now hopefully.

**THE COURT:** Okay. And this is the document that was seized by the DEA. It will be Exhibit 5, and it is People's Republic of China travel documents in the defendant's name and it bears the number T01732928, and it was issued June 21st, 2023, in San Francisco. I don't know if it has an expiration date or not. Maybe it does. I just didn't see it.

**MS. GREEN:** Our understanding -- the agent's understanding through speaking to the agents and officers is that it's valid for two years based on what they were told.

**THE COURT:** Well, it was obviously -- it was issued in June of 2023.

So --

**MS. GREEN:** Your Honor, for the record, it's -- thank you, Mr. Farnham -- paragraph three on page 2 of the document.

**THE COURT:** Yes, it does say this travel document contains it is valid for two years unless otherwise stated. Okay. And that's Exhibit 5.

(Court's Exhibit 5 marked for identification.)

**THE COURT:** So I guess if you care to address my questions, my first question would be: Why did she get this passport -- this travel document after turning it over to the lawyer?

And I'll have to believe that the lawyer would say to her, "I'm going to hold it because either the Government wants it" -- the Government already told her then they didn't want her to travel. Okay. But that's not an order. I mean, the Government can't tell somebody not to travel. I can. I don't know that the Government can.

And so the Government -- she then turns over her passport to the lawyer, and then she goes out and gets another passport two, three months later so she can travel. I mean, that's the only explanation.

If you want to address it, you can but you don't have to. And that's of what's a concern to me.

**MS. CHOU:** I understand, Your Honor.

And thank you, first, Your Honor for allowing me to appear remotely.

So this is my first appearance before Your Honor, and my role in the case is I was the attorney who took over the

passport after Ms. He delivered it to Miranda Kane.

And what is important to this history --

**THE COURT:** When did you get the pass --

**MS. CHOU:** Sorry, Your Honor?

**THE COURT:** When did you get the passport? When did you get the passport?

**MS. CHOU:** I obtained the passport I think around maybe March of 2023. I'd have to check the exact date, but in terms of the discussion now, it was before she applied for the travel document.

But what's important in this discussion is Your Honor discusses the travel document as a passport, but it's not. It's not a passport.

And the two things that came out in all the discussions with the Government were that they wanted her to surrender her passport and they wanted her to not travel. She did both of those things.

And I understand Your Honor's reaction. I had the same reaction too; and if I had known about the travel document, of course we would have made very different representations.

But going back to the time when she applied for this travel document, there were only those two points of discussion: Turn in your passport and don't travel. And this is not a passport. This is a travel document.

And then -- and so I would submit that --

1       THE COURT:  Why would somebody say -- explain

2  something to me.

3       MS. CHOU:  Yes, Your Honor.

4       THE COURT:  Why would the Government say, or someone

5  say, "Turn over your passport," if it's not a travel document?

6  It's not out of some prurient interest to see the photograph on

7  the passport.  I mean, the reason people turn over passports is

8  they can't travel, and then she goes out and she gets another

9  one.

10      MS. CHOU:  Your Honor, that's right.  But the point

11  there is that she can't -- she -- the Government does not want

12  her to travel; right?

13      And so what we know is that she didn't travel.  And even

14  despite getting this document, she did not travel because that

15  was her agreement with the Government.

16      And I just want to point out that were this a breach of

17  contract case, for example, and the agreement was --

18      THE COURT:  It's not a breach of contract case.

19      MS. CHOU:  -- no passport, there was no breach of

20  contract.

21      THE COURT:  I want to tell you it's not a breach of

22  contract case.  It's a breach of trust case.  That's what it

23  is.

24      MS. CHOU:  Yes, Your Honor.

25      And to that point, once the order from Your Honor came out

that specified no travel documents -- right, this is not
limited to passports, it's no travel documents of any kind --
the defendant did then -- or Ms. He did at that point advise
her lawyers of the existence of this document and asked to have
it turned in.

And I just want to present that the foil to this is that
there's also this green card that also was never part of the
discussions, and I didn't think of it as a travel document.
And all the discussions -- my discussions were passport; right?

**THE COURT:** I don't care about the green card. I
don't care about the green card. The green card simply is a
document that allows you to travel in the United States and to
enter the United States.

The problem is not that the defendant was -- could travel
in the United States or enter the United States. I assume, by
the way-- I assume, by the way, that -- as I did in the other
cases, that I would work out some sort of document, because
she's at liberty going back and forth and so forth, where if
some police officer stopped her or something, she'd have some
identification. That's what a green card does.

**MS. CHOU:** Your Honor, yes. I agree with Your Honor.

But the point I was trying to make is that the green card
actually does allow people to travel outside of the
United States. And although it was not called out by any
order, Ms. He and her proxies found that document and turned it

in in an abundance of caution because the Court's order was so broad that it covered all travel documents.

And so I know it's, of course, of concern to this Court, but the explanation I think is that the discussion was always about passports, the discussion was always about whether or not she would leave the United States. And so -- I handled the first -- or I handled -- someone else handled the very first appearance, and then I handled the first one in LA and the first one in San Francisco; and when it got to Mr. Peters and his colleagues, the discussion had always just been about passports and whether or not she traveled, and both those things at the Government's request she --

THE COURT: Actually, I'm sorry you weren't here, but that's actually not accurate. It's just not accurate. Because Mr. Peters said in her presence continually on four occasions, maybe fewer than four but several, she can't travel because she doesn't have travel documents or a passport. Maybe he said, "She doesn't have a passport. Can't travel."

But, in fact, Exhibit 5 it says on its face in English "Issued by the People's Republic of China," it says "Travel Document." So I think something that's called "Travel Document" means you can travel with the document.

I mean, that's -- listen, that's my understanding of the English language. And so she had a travel document at the time that Defense counsel represented she didn't have any

documentation to travel.  That was the thrust of what they were
saying, and she permitted them to continually make that
representation.

      **MS. CHOU:**  I understand, Your Honor.

      **THE COURT:**  Good.  Okay, then, well, you understand.
Anything further?

      **MS. CHOU:**  No, but --

      **MR. PETERS:**  Your Honor, can I say something?

      **THE COURT:**  Of course.

      **MS. CHOU:**  -- Your Honor, I think the point I was
trying to make was that, one, because I was the person who was
originally handling this and had not had discussions with her
about other documents and things happened in a rush and there
was this handover, we -- counsel made representations based on
what counsel knew; and I did not ever talk to her about, you
know, green card or any other documents.

    And sorry, Mr. Peters.

      **MR. PETERS:**  If I may, Your Honor, I take my
obligations to this Court very seriously.

      **THE COURT:**  I know you do.

      **MR. PETERS:**  I also take my obligations to my client
very seriously.  So this is a difficult situation, but I want
to -- in the context of this motion, I want to be very candid
with Your Honor, and I intend to be.

    If Mr. Marais or I had known of the existence of this

document, we would not have said what we said to Your Honor.  I
think that goes without saying, but I think I need to confirm
that.

I also believe, and I think the Court understands, that in
the confusion surrounding satisfying the condition of her
release, I do believe that our client intended to communicate
something about this document to us and to have us surrender
it, and it just got kind of screwed up because we weren't told
that it had been found.

But had it been found and located and turned in, we might
still well have been having this discussion because when we
turned in the document, it would have raised the same question
in the Court's mind about, "Explain to me how this document
exists and why you made these representations to the Court."
And I understand that.

So to answer Your Honor's question --

**THE COURT:**  Yes.

**MR. PETERS:**  -- it's a fair inference as to why our
client would have applied for and obtained this travel document
after surrendering her passport.  I actually believe that the
proof is in the pudding, that she never used it and traveled.

I think she resented the Government investigating her and
impinging on her freedom and nudging her, and she went and did
what she did.  Was it wise?  I don't think so.  Am I happy
about it?  No.

Does it mean she can or would flee now given the condition and combination of conditions the Court has set? I think the answer to that -- and that's the question that Your Honor has to wrestle with today. I think the answer to that question is: No, she can't and, no, she wouldn't because I believe she intended to have this document submitted to the Court, but it wasn't under circumstances that Your Honor knows about and we didn't know about it before -- until very recently.

But we have the guards here who were guarding her 24/7. She's wearing an ankle bracelet. She's been cooperative with the guards. She's under very stringent conditions.

This case is very hard to prepare. If she's in custody in Santa Rita -- and I believe, quite honestly, that the Court's own remarks and the Court's order establishing these very stringent bail conditions were not based on the view that she could be trusted but was based on the determination the Court made that these stringent conditions and the combination of them was sufficient to guarantee her appearance, and I submit to you that, in our view, that's still correct.

**THE COURT:** Okay. Well, it was based -- I have to tell you, it was based upon the representation that she had already surrendered all travel documents. That, it was based on.

And, secondly, it was -- it was -- and I think what is telling in this case is the passage of time in which these

statements were repeatedly made and she did nothing to correct her lawyers.  That's her decision.  But she -- and it's not just that she can't be trusted as I pointed out the last time. If she could be trusted, we wouldn't go through all this.  No. She can't be trusted.

But I have no idea now whether there's another document somewhere else.  I have no idea to what extent people will cooperate with her to flee.  I have no idea in the next month -- period of time whether or not an opportunity will present itself.  All I know is if a -- if the opportunity had presented itself, she then had, to her knowledge, a document that would have allowed her not only to leave the United States but to enter the People's Republic of China.  That's what she had.

So, accordingly, I am revoking her status.  She is remanded to the custody of the United States Marshal.  If there are further proceedings, you want to bring other things to my attention, I'm available to do so; but at the present time, her status is that of somebody who is being confined pretrial.

And I will be -- I think -- when's the next hearing in this matter?

**MR. FARNHAM:**  Your Honor, we do have the original travel document to present to Your Honor.  Can we do that?

**THE COURT:**  I want that in evidence.

**MR. FARNHAM:**  Yes, Your Honor.  So the DEA agent,

1  Agent Alfaro, is here in court.  He has it in an evidence

2  bag --

3          THE COURT:  Yes.  Do you have it?

4          MR. FARNHAM:  -- and we request that he bring it up to

5  Your Honor.

6          THE COURT:  Yes, please.

7          MS. CHOU:  I believe we have a status conference

8  October 16th.

9          THE COURT:  Okay.

10          MR. FARNHAM:  And he'll hand that to the courtroom

11  deputy.  Just the travel document.

12          THE COURT:  Okay.  And that will be exhibit next in

13  order, which I think is Exhibit 5.

14      (Court's Exhibit 6 marked for identification.)

15          MR. FARNHAM:  And, Your Honor, you'd be keeping that

16  original document with the Court exhibits?

17          THE COURT:  I think in all -- you don't want them?

18          THE CLERK:  No.  I want to give them back.

19          THE COURT:  Okay.  Exhibit 5 -- all exhibits will be

20  released to the custody of the United States Government or

21  DEA --

22          MR. FARNHAM:  I would propose --

23          THE COURT:  -- or Pretrial Services.  Where would it

24  go?

25          MR. FARNHAM:  Yes.  I would propose that the travel

document that you have in your hand --

        **THE COURT:**  All of them.

        **MR. FARNHAM:**  -- the found one go back to the DEA in

their evidence room where it is now and that the other

materials go back to Pretrial Services who has --

        **THE COURT:**  Okay.  That will be the order of the

Court.

        **MR. FARNHAM:**  Thank you.

        **THE COURT:**  All right.  And I will see everybody here

on the 16th.

    Thank you.

        **MS. CHOU:**  Thank you, Your Honor.

        **MS. GREEN:**  Thank you, Your Honor.

        **THE COURT:**  We're in recess.

             (Proceedings adjourned at 11:33 a.m.)

                  ---oOo---

<u>**CERTIFICATE OF REPORTER**</u>

        I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.


DATE:   Thursday, October 10, 2024




        _____
            Kelly Shainline, CSR No. 13476, RPR, CRR
                    U.S. Court Reporter