UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
    VS.                             )   **NO. 3:24-cr-00329-CRB**
                                    )
RUTHIA HE and DAVID BRODY,          )
                                    )
            Defendants.             )
_____)

San Francisco, California
Wednesday, May 28, 2025

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

For Plaintiff:

                    CRAIG H. MISSAKIAN
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
            BY:  **KRISTINA GREEN**
                 **ASSISTANT UNITED STATES ATTORNEY**

                    U.S. DEPARTMENT OF JUSTICE
                    FRAUD SECTION
                    950 Pennsylvania Avenue NW
                    Washington, D.C. 20530
            BY:  **JACOB N. FOSTER**
                 **ASSISTANT UNITED STATES ATTORNEY**

            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported Remotely By:  Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG
                       Official Reporter, CSR No. 12219

**APPEARANCES**:   (CONTINUED)

                  U.S. DEPARTMENT OF JUSTICE
                  CRIMINAL DIVISION
                  1400 New York Avenue NW
                  Washington, D.C. 20001
        BY:  **EMILY GURSKIS**
                  **ASSISTANT UNITED STATES ATTORNEY**

For Defendant He:

                  WILLKIE FARR & GALLAGHER LLP
                  2029 Century Park East - Suite 2900
                  Los Angeles, California 90067
        BY:  **KOREN L. BELL, ATTORNEY AT LAW**

                  WILLKIE FARR & GALLAGHER LLP
                  787 7th Avenue
                  New York, New York 10019
        BY:  **MICHAEL S. SCHACHTER, ATTORNEY AT LAW**
                  **STEVEN J. BALLEW, ATTORNEY AT LAW**

For Defendant Brody:

                  HICKEY & CHUNG, LLP
                  Pier 9 - The Embarcadero
                  Suite 100
                  San Francisco, California 94111
        BY:  **NAOMI S. CHUNG, ATTORNEY AT LAW**
                  **BRENDAN M. HICKEY, ATTORNEY AT LAW**

                  TAMARA CREPET LAW
                  Pier 9 - The Embarcadero
                  Suite 100
                  San Francisco, California 94111
       BY:  **TAMARA A. CREPET, ATTORNEY AT LAW**

Also Present:      **Valery Nechay, Attorney at Law**

**Wednesday - May 28, 2025**                                    **11:14 a.m.**

                              P R O C E E D I N G S

                                    ---oOo---

THE CLERK:  Calling Criminal Action CR 24-0329, U.S.A. versus Ruthia He, and U.S.A. versus David Brody.

Counsel, please, state your appearances for the record.

MR. FOSTER:  Good morning, Your Honor.  Jacob Foster, Kristina Green, and Emily Gurskis on behalf of the United States.

THE COURT:  Good morning.

MS. CHUNG:  Naomi Chung, Brendan Hickey, and Tamara Crepet on behalf of Dr. David Brody who's present and out of custody.

MS. NECHAY:  And good morning, Your Honor.  Valery Nechay appearing specially on behalf of Dr. David Brody with my intention to substitue in this morning.

THE COURT:  Okay.

MS. BELL:  Good morning, Your Honor.  Koren Bell, Michael Schachter, and Steven Ballew on behalf of Ruthia He, who's present in custody.

THE COURT:  All right.  Good morning.

So I think that this is on, even though we just sort of set a regularized -- I don't know if that's the right word -- but a status conference.

Since setting it, the Court has received a motion for

Dr. Brody's counsel to withdraw.  And now I've been recently advised I think that what his intention is is to substitute counsel for new counsel; that's what I understand.

So I think a number of the issues that, normally, one has to pursue for counsel that wishes to withdraw are obviated by new counsel subject to some questions that I have.

That's where we are now.

So you are -- give me your name again.

**MS. NECHAY:**  Valerie Nechay.

**THE COURT:**  Shea?

**MS. NECHAY:**  Nechay, Your Honor.

**THE COURT:**  I know you.  You've appeared in front of me before.

**MS. NECHAY:**  Right.

**THE COURT:**  Well, welcome back.

**MS. NECHAY:**  Thank you.

**THE COURT:**  And I understand it is your intention to represent Mr. Brody -- Dr. Brody in this proceeding; right?

**MS. NECHAY:**  That is subject to some contingencies, Your Honor.  I understand --

**THE COURT:**  Well, let's talk about the contingencies.

**MS. NECHAY:**  Right.

**THE COURT:**  Okay.  What are the contingencies that you have?

**MS. NECHAY:**  Well, there's a trial that's presently

set in September.

THE COURT: Yes.

MS. NECHAY: This is a voluminous case. I understand that there's a codefendant that is in custody and has been wishing to assert her speedy trial rights, so I understand that; but in the interest of Dr. Brody's due process rights, and in order to effectively represent him at the trial, I do need more time.

Additionally, I have a bona fide conflict. I am in trial in Santa Clara County on a sex case beginning September 15th.

So I would like -- I have the availability to focus and prioritize this case and work through the discovery diligently with my team, but I do need more time than that.

THE COURT: Well, let me unpack that a bit.

So you say you have a conflict with a case pending in the -- what? -- Sacramento Superior Court? Is that --

MS. NECHAY: Santa Clara.

THE COURT: Oh, Santa Clara.

MS. NECHAY: Yes.

THE COURT: In this district.

MS. NECHAY: Correct.

THE COURT: Okay. And how long will that -- do you anticipate that case to take?

MS. NECHAY: Two weeks.

THE COURT: Two weeks. Okay.

Is the defendant in that case in custody?

**MS. NECHAY:** No.

**THE COURT:** Okay. All right. So -- and who is the judge in that case?

Is it a master calendar system?

**MS. NECHAY:** It's a master calendar system.

**THE COURT:** And who is the master calendar judge; do you know?

**MS. NECHAY:** No, from the top of my head, Your Honor, I'm forgetting the name. I practice primarily out of this county and --

**THE COURT:** That's okay. I mean, I wouldn't know who the presiding judge is anywhere, but that's okay.

Anyway -- well, here, let me now address some of the --

**MS. NECHAY:** And I apologize, Your Honor. The name just came to me. It's Judge Peterson. Elizabeth Peterson of Santa Clara County. And she's been very clear that this was the last continuance. I just became the new lawyer on that case as well. But anyways, that's Judge Elizabeth Peterson.

**THE COURT:** Okay. Well -- and, again, I don't have control over her docket, and I don't know exactly what would take place.

I am assuming, because of a year's proceedings, that the -- that your codefendant will object to a continuance.

Is that correct?

**MS. BELL:** That is, Your Honor. We would object in the strongest of terms.

**THE COURT:** Yeah. Okay.

All right. So the question really is whether, putting aside the conflict with the other case, whether -- it's now May, end of May, so we have June, July, August, and September; the case is scheduled, I think, for September 29th or so. So we have four months in which you would have to prepare for trial in this case, after over roughly a year of litigation of -- in which documents were sought, documents were reviewed, documents were analyzed, as well.

So it would be my present intention to deny a motion for a continuance. You would -- subject to working out something with your Santa Clara issue -- because no lawyer can be in two places at the same time -- I understand that, but I think that we could work around that if that remains an issue.

Now, what I would do, however, is I would excuse -- that is, relieve Ms. Chung of any representation if you come into the case. And -- second -- and secondly, I would not remove Ms. Crepet, but keep her in the case for the limited role of assisting you in locating documents, in explaining anything that they have found in the last year of preparation of the case.

So in other words, you would have a guide, somebody who's intimately familiar with the case involving Dr. Brody to assist

you in -- in these proceedings.  So that would be the -- that would be the intention of the Court.

I do have a further question to ask, because what was raised as a -- as a concern by present counsel was the financing of the -- of the -- of the defense.  It's not my intention to go into those issues now, except insofar as I need some assurances -- or at least some understandings -- I don't know, assurance is, maybe, not the right word, but I need some understanding as to how you are going to be compensated in this case, if you come in, what is your understanding of your compensation.

And I don't -- I'm not looking at amounts, I'm looking at funding.

**MS. NECHAY:**  Sure.  And I want to be a little bit careful here, Your Honor, because I don't want to open the door to the conflict that took place between prior counsel.

But certainly there was a declaration that was filed. Mr. Brody had a declaration that he had wished to file in response, given that I had not really amply had time to prepare and review it, and exercise my own due diligence.

I proposed that we delay filing his.  Now, perhaps that might be moot.  But essentially, Your Honor, there was an indemnification agreement, done, should have been paying his legal fees.  I think that -- the most I'll say is, at a minimum, the conflict, I think, in part was as a result of this

dispute between the indemnification and who was going to pay.

I do have a private agreement with Mr. Brody -- or excuse me -- Dr. Brody, and he has already made a substantial contribution toward that, so I feel satisfied.

THE COURT: Well, that's fine. I want an understanding that -- I don't know to what extent the company will indemnify -- whether the company will identify Dr. Brody for expenses or past expenses or ongoing expenses or future expenses. I don't know.

But in terms of counsel, you're entitled to rely on anything that you want to rely on with respect to your compensation. But I don't want to be faced in the future with exactly the same argument that I've heard in this case today, which is that funding, essentially, was cut off, or at least severely limited by -- by the corporation.

So if you are satisfied that, even if that occurs, you will continue your representation of Dr. Brody, that's -- that's perfectly agreeable with me.

MS. NECHAY: Well, Dr. Brody, again, has confirmed to me that those funds exist. He'll make continued contributions towards that. And we are not reliant, at this moment, although we are still pursuing the indemnification civilly as an ancillary matter. My understanding is he's paying out of pocket for my --

THE COURT: That's fine. I'm not looking at Dr. Brody

for paying you or paying -- or paying anybody.  But you have a separate responsibility; that is -- I mean, I want you to come into the case, if you do come into the case, with the understanding that I'm not going to allow you to withdraw from the case in the event that, for one reason or another, or some unforeseen reason, you're not being paid.  That is just not going to happen.

It wouldn't have happened with -- with present counsel; I would not have let them out because they're not being paid.  That's fine in civil actions.  It's not fine in criminal actions.

So if you -- if you are willing to accept that fact, then we've cleared that obstacle.

Is that all right?

**MS. NECHAY:**  Yes.

**THE COURT:**  Okay.  We've cleared that obstacle.

Now -- so we've addressed -- now, I need to tell you this: In the event that the trial date is not postponed, but consistent with your obligations in terms of the other case, I mean, I -- that's beyond your control.  I don't know.  I assume it's basically beyond your control, but it's not one of your creation, and I recognize that.

So subject to that, and in the event I do not continue the trial, are you willing to accept this representation?

**MS. NECHAY:**  Your Honor, I'm -- as I stated, I

strongly feel that my representation is contingent on at least a short continuance.

THE COURT: Well, I'm telling you now, I may or may not grant a continuance; I don't know. But my present thinking is not to grant a continuance.

So my question to you is: Since you're not in the case now, but you are asking to be admitted to the case and represent him, I will do so with the understanding that you will try the case in the event I don't grant a continuance.

MS. NECHAY: I believe, that would actually put me in a challenging spot, Your Honor. I'm not certain that I could move forward.

I would like to perhaps wait and see what -- the Court's decision with respect to a short continuance because I just don't think given --

THE COURT: I don't know what you mean by a "short continuance."

MS. NECHAY: I could still try the case in fall.

THE COURT: It's on for October. That's definitely the fall.

MS. NECHAY: Right. November or December would work as well, and that would be my request.

THE COURT: Well --

MS. NECHAY: This is a very short time for such a voluminous case. And I --

THE COURT: Pardon?

MS. NECHAY: This is a voluminous case, and I do appreciate the Court's offer for a guide to assist me in the discovery. But given that there's still -- I just feel that the current trial date would present an ineffective assistance of counsel situation. I don't feel confident that I would be able to try this case effectively by the presently set date.

THE COURT: Okay. So this is what I'm going to do: I'm not going to substitute anybody out. I will -- I don't think that's an unfair thing that you're asking, but I will consider a continuance of up to 30 days.

Is that satisfactory?

MS. NECHAY: Yes.

THE COURT: All right. So I will -- I will allow the parties to be heard on that -- on that issue.

How long do we anticipate this case to take?

MR. FOSTER: Your Honor, in terms of the Government's case-in-chief, we expect it to be three to four weeks. Of course, the lengths of the cross-examinations, we can't predict, but we intend to try it as efficiently as possible.

MS. BELL: Your Honor, we would expect our case to be between one and two weeks.

THE COURT: Well, I think I need to think about it. I need to look at a calendar.

So we'll be in recess for ten minutes.

(Recess taken at 11:30 a.m.)

(Proceedings resumed at 11:49 a.m.)

**THE CLERK:** Come to order. Court is in session.

**THE COURT:** Let the record show all parties and counsel are present. Let me add a little context so that you can make a decision which you need to make.

First of all, I'm not inclined to continue the trial date, but I am willing to talk to the Santa Clara judge to see whether that matter, which is not a custody matter, can be continued. But it's up to her whether she would make that decision. And I know she says to you "I don't want to do it," but sometimes -- sometimes I have some influence over the matter, given my schedule.

That's number one.

Number two, is I anticipate -- and this would be news to the parties, but I anticipate that around October 22nd, through the end of the month, I will not be here because I will be doing a multidistrict litigation and other obligations that I have, and therefore, we would be dark in -- in the case.

That may very well be a time that the Government has rested, depending on where they are, and depending on how quickly we move through it. So that would give you, defense counsel, some options in terms of preparation in terms of meeting the evidence as it actually came in, which I think is tremendously valuable to the trial process.

And, of course, we know we have Thanksgiving and so forth in November, but I also have other things that I have to address.

So my question to you is:  Subject to my ability to convince Santa Clara County to have a continuance in that particular case, do you want to come in with the understanding that I'm going to start this trial on September 29th, four months from now?

MS. NECHAY:  I'm amenable to that, subject to what Your Honor just stated.

THE COURT:  All right.  Okay.

So I'm going to take -- I do have to -- I'll talk to counsel.

You have to give me some details of the case like the action number, the name of the case, or something, and I will call her today to see whether I can prevail upon her.

When is the trial actually -- you represent -- what is the name of the defendant?

MS. NECHAY:  The defendant's name, Your Honor, I'd rather keep that private as far as -- I'm happy to provide --

THE COURT:  All right.  No reason to share it on the record; just tell Ms. Scott.

MS. NECHAY:  I'm happy to do that.

THE COURT:  Absolutely.  We don't need publicity.

MS. NECHAY:  Thank you.

THE COURT:  But please provide the name of the case, if you can, the action number, the judge.  It's Elizabeth?

MS. NECHAY:  Peterson.

THE COURT:  Judge Peterson.  And I will try to do my magic -- that's a term of art and hardly applies to me -- but I will do what I can do in that regard.

MS. NECHAY:  Understood.

THE COURT:  And if I can't, I'm going to call you all back here and try to figure out what to do.

But I will, subject to the working that out, relieve Ms. Chung and -- yes?

THE COURT:  Sure.

MS. CREPET:  Yes, Your Honor.  I did want to clarify --

THE COURT:  Yes, of course.

MS. CREPET:  The nature of the breakdown between Ms. Chung and Dr. Brody equally applies to me --

THE COURT:  It's not a question of a breakdown.

I'm not going to ask you to communicate with Dr. Brody. I'm not going to ask you to do anything other than to help new counsel locate documents, explain what the documents are, explain what work you've done.

I mean, I think it's consistent, by the way, of every lawyer's obligation when they turn over a case to a new lawyer. But Ms. Chung has a full plate on -- on other matters that she

has to address.  We only need one lawyer to do this.  It doesn't have -- it's not going to be -- it's not going to be a particularly onerous task, but it's something that can be very helpful to new counsel and -- and I want to do everything possible to expedite the transition so that she is ready to represent Dr. Brody.

MS. CREPET:  I can --

THE COURT:  And I think -- Ms. Chung, to the extent that you can help, that's fine.

MS. CHUNG:  And that was --

THE COURT:  I want lines pretty clear.  I want you out of the representation so you can --

MS. CHUNG:  I understand, Your Honor.

The only clarification I was going to add is that we are -- so our firm is in possession of the hard drives and the Dropbox and all of that, so we will make sure to transition all of that.

THE COURT:  Yeah, yeah, obviously, all of that.

MS. CREPET:  I'm happy to ease the transition, as any lawyer would.

THE COURT:  Okay.  All right.  And then I will, of course, ultimately let you out, but I am not going to do it at this time.

MS. CREPET:  That's the record I wanted to make, just to note that the breakdown does apply to me as well.

THE COURT: Yes. I'm not going to ask you to engage in communications with your former client.

MS. CREPET: Thank you, Your Honor.

MR. HICKEY: And, Your Honor, as I --

THE CLERK: Sorry. Can you step forward to the mic.

MR. HICKEY: Pardon me.

I have entered an appearance in this matter as well, and would seek that -- that Hickey & Chung, in total -- that means both myself and Ms. Chung -- be relieved.

THE COURT: Yes, it does, Mr. Hickey, apply to you.

MR. HICKEY: Thank you.

THE COURT: Okay. So you will give the information to Ms. Scott. I will do that.

I need to also to address in some way the -- well, the letter that I received from government counsel which I think we shared with the parties.

MR. FOSTER: Yes, Your Honor it was.

THE COURT: But it's filed under seal or ex parte.

MR. FOSTER: Under seal, not ex parte.

THE COURT: So I want to move to the under-seal portion, but former counsel can remain, and just address it.

MS. NECHAY: Your Honor, if I may.

THE COURT: Yes.

MS. NECHAY: I understand that this may pertain to a limited issue. I would just request that, since I have not had

time to review the legal basis of the letter, of the issues involved concerning advice of counsel, or anything pertaining to that, that we address that at a separate status.

THE COURT: Yeah. Well, let me tell you, I don't think it will -- it may inferentially apply to your client, and it does because it -- it involves your client. But really, the allegations that's contained in the letter go to co-counsel. I mean, codefendant -- your codefendant.

I'll -- obviously, I'll allow the parties to say whatever they want to say, but this is what I want to say at the beginning.

The allegations that are contained in the letter are serious allegations.

THE CLERK: Okay. Your Honor, this portion is under seal, just for the record?

THE COURT: Yes.

THE CLERK: Okay. Ruth, this portion is under seal. Thank you.

(The following pages, 19 through 29, were placed under seal by Order of the Court and bound separately:)

(Proceedings adjourned at 12:12 p.m.)

---o0o---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, June 3, 2025

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219
Official Reporter, U.S. District Court