WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
mschachter@willkie.com
sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S REPLY IN FURTHER SUPPORT OF HER MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY FROM DR. DAVID GOODMAN UNDER FEDERAL RULES OF EVIDENCE 402, 403, and 702.**<br><br>DATE: September 9, 2025<br>TIME: 2:00 PM<br>Courtroom 6—17th Floor<br>Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 1

I. Because Dr. Goodman's Testimony Concerning Theoretical "Harm" Has No Reliable Basis and the Government Has Not Established That His Opinions Are Rooted In Fact, The Court Should Exclude the Testimony. ........................ 1

II. Because Dr. Goodman's Testimony Concerning "Causation" Is Not Reliable, The Court Should Exclude the Testimony. ........................ 5

III. Because Dr. Goodman's Testimony Concerning "Online Misinformation" Is Not Relevant, The Court Should Exclude the Testimony. ........................ 7

CONCLUSION ........................................................ 8

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 7

*Engilis v. Monsanto Co*,
2025 WL 2315898 (9th Cir. Aug. 12, 2025) .......... 2, 3, 6

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997) .......... 2

*Lopez v. Johnson and Johnson*,
654 F. Supp 3d 997 (C.D. Cal. 2023) .......... 6

*Northrup v. Covidien, LP*,
2021 U.S. Dist. LEXIS 227025 (C.D. Cal. Nov. 24, 2021) .......... 7

*Ruan v. United States*,
597 U.S. 450 (2022) .......... 8

*United States v. Crowder*,
No. 4:17-CR-00291, 2020 WL 820162 (M.D. Pa. Feb. 19, 2020) .......... 4

*United States v. Feingold*,
454 F.3d 1001 (9th Cir. 2006) .......... 8

*United States v. Lopez*,
No. S1 18CR0006 (DLC), 2019 WL 1570818 (S.D.N.Y. Apr. 11, 2019) .......... 4, 6, 7

*United States v. Ruvalcaba-Garcia*,
923 F.3d 1183 (9th Cir. 2019) .......... 8

*United States v. Taylor*,
643 F. Supp. 3d 731 (E.D. Ky. 2022) .......... 4

**Other Authorities**

Fed. R. Evid. § 702 .......... 2, 5, 7

## INTRODUCTION

Defendant He's motion to exclude portions of Dr. Goodman's expert opinion should be granted, for the reasons set forth in her Opening Motion. *See* ECF No. 332-2 ("Opening Motion" or "Opening Mot."). As described below, the Government's Opposition fails to identify any "reliable basis" for those opinions of Dr. Goodman that Defendant He has objected to and likewise fails to justify the waste of the jury's time on expert opinion that is irrelevant, not likely to advance the Government's case, and which involves tertiary issues that no percipient witness will actually testify about. *See* ECF No. 348 ("Opp.").

## ARGUMENT

### I. Because Dr. Goodman's Testimony Concerning Theoretical "Harm" Has No Reliable Basis and the Government Has Not Established That His Opinions Are Rooted In Fact, The Court Should Exclude the Testimony.

In Defendant He's Opening Motion, she identified seven opinions from Dr. Goodman related to supposed "harm" that were accompanied by a complete lack of any factual or medical citation that would serve as sufficient support for Dr. Goodman's claims. *See* Opening Motion at Argument I, A-G.[1] While Defendant He does not repeat what is already described at length in her Opening Motion, one example of this unsupported opinion is Dr. Goodman's proposed testimony that prescribing a dose of Adderall to a patient with substance abuse disorder "increases the risk of cardiac events, hospitalization, and death" for that patient.[2] *See* ECF No. 332-1, Ex. B

[1] Although Defendant He challenged these seven opinions, the Government's Opposition confirmed that Dr. Goodman will not offer any testimony about the feelings and experiences of patients that Dr. Goodman has never met. Accordingly, the Court now only needs to decide whether the six remaining "opinions" described in Section I, at A-F of Ms. He's Opening Brief are admissible.

[2] The Government claims to be confused by Defendant He's use of the phrase "therapeutic dose" in her Opening Motion. This word is meant to distinguish between dosages of Adderall that are prescribed for medical purposes and those that are so excessive that they are facially outrageous. For example, Defendant He does not understand Dr. Goodman to be opining only that "200 mg" of Adderall XR, taken on a daily basis, could cause the serious health problems he describes. Instead, the at-issue dosages prescribed were consistent with spectrum of dosages prescribed for therapeutic use. Defendant He understands Dr. Goodman to be issuing an opinion about the dosages prescribed, not obviously excessive and theoretical dosages such as 200 mg of Adderall XR or the like.

("Goodman Report") at 13. As explained in Ms. He's Opening Motion, Dr. Goodman does not describe the "dose" of Adderall that would supposedly cause the medical harms that he articulates nor does he provide any specifics about the likelihood or severity of this "increased risk" or any citation to medical literature or studies that would support his claim. Because Dr. Goodman cited to *no* reliable "basis" for his opinions on "harm," Ms. He sought the exclusion of these opinions.

In Opposition, the Government fares no better than Dr. Goodman did in his Expert Report. The Government does not even *try* to argue that Dr. Goodman's various opinions on "harm" can be supported by medical literature or that they have a basis in reliable medical or scientific studies or data. The Court must therefore assume that these opinions are *not* supported by data or medical literature. *Engilis v. Monsanto Co*, 2025 WL 2315898, at *14-16 (9th Cir. Aug. 12, 2025) (admissibility of expert testimony under Federal Rule of Evidence 702 rests with the proponent of the evidence and there is "no presumption in favor of admission"). Instead, the Government spends several pages of its Opposition repeating the credentials that are already described at length in Dr. Goodman's Expert Report, in order to justify its argument that no supporting medical literature or data is necessary in order to demonstrate the reliability of Dr. Goodman's opinions because Dr. Goodman's say-so is sufficient, given his background and experience. *See* Opp. at 5-6.

The Government is wrong. While Defendant He does not dispute that an expert's experience and training can serve as a reliable "basis" for *certain* opinions, the fact that an expert is experienced does not mean that his every opinion is automatically "reliable." Instead, the Court is required to perform an important "gatekeeping" function under Rule 702 to ensure that an expert, even a qualified expert, only relays testimony to the jury that is sufficiently rooted in facts or science. *See, e.g.*, *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing ...requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). In fact, as explained by the Ninth Circuit just last month in *Engilis v. Monsanto Co*, a "district court's responsibility to screen expert testimony encompasses the requirement that expert testimony be "based on sufficient facts or data,'' which "requires foundation." 2025 WL

2315898, at *17 (citing Rule 702). For a district court, the "key inquiry" must be whether the "expert had sufficient factual grounds on which to draw conclusions." *Id.* (citing *Hyer v. City & County of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024)).

The Court cannot determine that Dr. Goodman's opinions on "harm" meet these reliability standards because, even setting aside third party data or medical literature, Dr. Goodman has not explained which portions of his "experience and training" serve as the basis for these particular opinions and in many cases, it seems quite unlikely that his personal experience would provide a basis for him to render the proffered opinion. For example, when Dr. Goodman states that prescribing an (unspecified) dose of Adderall to a patient with substance abuse disorder "increases the risk of cardiac events, hospitalization, and death" for that patient, the Court cannot ascertain whether Dr. Goodman is basing this claim on addicted patients that he has *personally treated* who suffered heart attacks, were hospitalized, or died from a dose of Adderall—which seems very unlikely—or whether these "harms" are just something Dr. Goodman has "heard of" happening, at some point during the last 40 years.

If the latter, the Court's gatekeeping obligations require substantially more information about what Dr. Goodman "heard," when he heard it, who he heard it from, and what the context was for the discussion, before this opinion can be admitted, because the Court must consider whether whatever Dr. Goodman "heard" constitutes a sufficiently reliable "foundation" for an opinion that will be conveyed to the jury. The same is true for each of Dr. Goodman's anticipated opinions about the "increased risk" of the various "harms" that Dr. Goodman claims will follow from a dose of Adderall or an ADHD diagnosis, since in every instance, Dr. Goodman provides no information about what, specifically, in his "experience" has given him a reliable basis for his proffered opinion. *See* Opening Mot. at 5 (describing Dr. Goodman's anticipated testimony about the "risk" of medical harm that follows from prescribing Adderall to persons with substance abuse disorder), 6 (describing Dr. Goodman's anticipated testimony about the "risk" of harm to the "community" that follows from prescribing Adderall to persons misdiagnosed with ADHD), 7

(describing Dr. Goodman's anticipated testimony about the "risk" of medical harm that follows from prescribing Adderall on a "Take When Needed" basis").

The out-of-Circuit cases cited by the Government do not change this conclusion. See Gov. Opp. at 8. The Government relies on *United States v. Crowder*, No. 4:17-CR-00291, 2020 WL 820162, at *3 (M.D. Pa. Feb. 19, 2020), where an expert—an *emergency room doctor* who had been *personally* treating opioid *overdoses* for years—testified about the "risks" that opioid *overdoses* impose. But, as described above, and unlike in *Crowder*, Dr. Goodman's Expert Report does not state that his opinions about the increased risk of various "harms" are based on consequences suffered by patients that he has *actually treated*. Likewise, *United States v. Taylor*, 643 F. Supp. 3d 731, 738 (E.D. Ky. 2022) is even less applicable here, because although *Taylor* happens to use the word "risk," the actual expert opinion discussed therein concerned whether doctors *consider* "community safety concerns" when prescribing buprenorphine, a prescription opioid medication used to treat opioid use disorder. In other words, unlike Dr. Goodman, the expert in *Taylor* was *not* opining about the likelihood or the "risk" of supposed "increases" in "community safety concerns" but was instead rendering an opinion about the various considerations that a prescriber considers when he or she is treating a patient for addiction disorder. Finally, *United States v. Lopez*, No. S1 18CR0006 (DLC), 2019 WL 1570818, at *7 (S.D.N.Y. Apr. 11, 2019), is not instructive either, since that case just happens to mention, in one sentence in the opinion, that the defendant's expert testified, seemingly without any objection, about the "risks of taking oxycodone," although what precisely the expert said or the basis for her testimony is not described in the opinion, presumably because both parties agreed to the admission of those opinions and thus, the court had no reason to consider excluding them.

Finally, for the reasons articulated in Defendant He's Opening Brief, *see* Opening Mot. at 8, the Court should also exclude the opinions of Dr. Goodman concerning ADHD's "impact on insurance eligibility." The Government does not even attempt to justify Dr. Goodman's opinion on this topic, likely because it is well aware that whatever Dr. Goodman's "experience" may be, he is *not* an insurance expert and without any reliable third party data or actual studies, he cannot possibly

provide a "reliable" opinion to the jury about the impact of an ADHD diagnosis on various kinds of insurance, across all patient populations. Likewise, the Government argues that Defendant He should not have objected to Dr. Goodman's sweeping opinion that an ADHD diagnosis "may need to be reported when applying" for completely-unspecified "professional licenses," because the Government's "google searches" returned results suggesting that "air traffic controllers," "pilots" and "commercial truck drivers" have to report ADHD. *See* Opp. at 12. This response exemplifies the cavalier approach that the Government appears to have in connection with its Rule 702 obligations. It is not *Defendant He's* responsibility to "look for" a reliable source for Dr. Goodman's anticipated testimony; it is *Dr. Goodman's* responsibility to provide that source to Defendants and to the Court, in *advance* of his testimony. Moreover, a "google search" does not constitute a reliable "source" and even in its Opposition, the Government fails to cite any authority establishing that even the three professions that the Government managed to identify actually require ADHD reporting in order for its professionals to be "licensed." *Id*.

## II. <u>Because Dr. Goodman's Testimony Concerning "Causation" Is Not Reliable, The Court Should Exclude the Testimony.</u>

Defendant He also moved to exclude all "causation" opinions from Dr. Goodman, including his opinion that certain Done corporate policies "contributed" to particular patients' health outcomes or conditions. *See* Opening Mot. at 12-14. The Government's Opposition on this point is perplexing, at best. As an initial matter, the Government assures the Court, despite the *clear language* of Dr. Goodman's Expert Report, that Dr. Goodman will not opine that Done's stimulant treatment of patients N.C. and C.C. "caused their psychotic episodes and hospitalizations." *Compare* Opp. at 13 *with* Goodman Report, at N.C. at 3 ("Done's [corporate] practices likely contributed to the patient's escalation into a stimulant-induced psychotic episode for which he was involuntarily psychiatrically admitted.") and at C.C. at 3 (C.C.'s "hospitalization was preceded by monthly stimulant prescriptions from Done that were increasing in dosage (at the request of the patient) in the absence of face-to-face appointments for several months. It is very

likely that the persistence of prescriptions further exacerbated her psychiatric symptoms."). At the same time that the Government offers the Court its assurance that Dr. Goodman will not offer a "causation" opinion, the Government also states that Dr. Goodman *will* opine that Done's "policies and procedures. . . *contributed to* the escalation in the patients' conditions." Opp. at 14. This is nothing but semantics; just as Dr. Goodman had no reliable basis for opining that a Done corporate policy "caused" the patients' conditions or hospitalizations, he also has no reliable basis for opining that a Done corporate policy "contributed to the escalation in the patients' conditions." That is because, as Defendant He explained in her Opening Motion, Dr. Goodman has not done the work or the analysis that this Circuit requires before an expert can offer an opinion on what caused (or what "contributed to") a medical condition. *See* Opening Mot. at 12-14; *Engilis*, 2025 WL 2315898, at *17-22 (describing "differential etiology" analysis as an acceptable methodology for causation opinions concerning a medical condition or outcome).

The *one* case cited by the Government, *Lopez v. Johnson and Johnson*, confirms Defendant He's point, as it stands for the *opposite* proposition than that for which the Government cites it. In short, *Lopez*—which is *not* a Ninth Circuit case, even though the Government's citation states that it is, *see* Gov. Opp. at 9—involved a plaintiff who was suing Johnson & Johnson on the basis that their surgical medical product (Prolene Mesh) caused him injury during hernia surgery. *See Lopez v. Johnson and Johnson*, 654 F. Supp 3d 997, 1006-1007 (C.D. Cal. 2023). Johnson & Johnson sought to exclude the plaintiff's medical expert, on the basis of its disagreements with his "differential diagnosis" analysis, namely its objection that the expert had not "adequately" ruled out "anxiety" as the cause of the plaintiff's injuries when he conducted his "differential diagnosis" analysis. *Id*. The district court, however, permitted the expert to testify, explaining that the expert had found that plaintiff's anxiety contributed only to "exacerbating" the pain that existed "after" the surgery and that the plaintiff had no anxiety before the surgery. In other words, the expert's differential diagnosis analysis did rule out anxiety as the "cause" of the injury. Moreover, the court noted that even if the expert's differential diagnosis analysis was not able to identify the "sole" cause of the plaintiff's injuries, that did not bar the admission of the expert's opinion.

In other words, *Lopez* does *not* stand for the proposition that as long as an expert describes a particular factor as "contributing to" a medical condition, rather than "causing" the medical condition, he does not need to engage in a differential diagnosis analysis. To the contrary, the expert in *Lopez* was permitted to testify about what "contributed to" or "exacerbated" the plaintiff's medical condition because he *had* performed a differential diagnosis analysis.

Dr. Goodman, on the other hand, has engaged in no accepted analysis that would permit him to opine on the "cause of" or "contributions to" the medical conditions of N.C. or C.C. *See, e.g., Northrup v. Covidien, LP*, 2021 U.S. Dist. LEXIS 227025, *11 (C.D. Cal. Nov. 24, 2021) ("Absent any indication that Dr. Grischkan's causation opinion was the product of a properly conducted differential diagnosis, or any other reliable methodology, his opinion is not admissible.") Dr. Goodman's testimony is, as described in Defendant He's Opening Motion, nothing but pure speculation and guesswork, which is entirely inappropriate under Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) (Rule 702 testimony requires "more than subjective belief or unsupported speculation").

**III. <u>Because Dr. Goodman's Testimony Concerning "Online Misinformation" Is Not Relevant, The Court Should Exclude the Testimony.</u>**

As described in Ms. He's Opening Brief, Dr. Goodman should also be precluded from offering expert testimony and opinion about "online misinformation" because that testimony and opinion is irrelevant to this case and likely to confuse the jury. Opening Mot. at 14-16. In its Opposition, the Government argues that Dr. Goodman's testimony is relevant because it provides "information regarding the impact of misleading online information on a potential patient, and how that, coupled with an inadequate assessment, could lead to unauthorized prescriptions." Opp. at 17.

The Government is incorrect; the proposed testimony is not relevant. For evidence to be relevant, it must "logically advance a material aspect of the party's case." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The Government's argument that online misinformation, genuinely believed by patients, "could lead to unauthorized prescriptions" is

inconsistent with the law, which focuses on the mental state of the prescriber, not the patient. Opp. at 17.

In particular, in order to show that a prescription was "unauthorized," the Government must prove beyond a reasonable doubt that the prescriber "prescribed the controlled substance other than for a legitimate medical purpose ***and*** not in the usual course of professional practice." *United States v. Feingold*, 454 F.3d 1001, 1012 (9th Cir. 2006) (emphasis added). It is not enough for the Government to prove that the prescriber was a bad or reckless provider or that he or she fails to conform their conduct to what their fellow doctors or nurse practitioners would view as medical care. *Id.* at 1007 (the jury must "determine whether a practitioner has acted not as a doctor, or even as a *bad* doctor, but as a 'pusher' whose conduct is without a legitimate medical justification") (emphasis in original); *id.* at 1011 ("[A] jury must find that a doctor has intentionally prescribed controlled substances for no legitimate medical purpose. A practitioner becomes a criminal not when he is a *bad* or *negligent* physician, but when he ceases to be a physician *at all.*) (emphasis in original). In an instance in which a "patient genuinely believe[s]" they have ADHD and "present[s] their symptoms accordingly," as proffered by the Government in its Opposition, Opp. at 17, it will be exceedingly hard for the Government to prove that the prescriber was prescribing without any legitimate medical purpose but instead "knowingly or purposefully issu[ing] a prescription to facilitate addiction and recreational abuse." *Ruan v. United States*, 597 U.S. 450, 479 (2022) quoting *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006)) (Alito, J. concurring). That fact, coupled with the fact that the Government does not plan to actually call any patients who will testify to having been "misled" about "online information" confirms that Dr. Goodman's proposed testimony is of very little probative value and, given the relevant law, will not "advance a material aspect" of the Government's case. Opp. at 4. Accordingly, the testimony should be excluded.

**CONCLUSION**

The Court should grant Ms. He's motion to exclude portions of Dr. Goodman's testimony, as described in her Opening Motion.

Dated: September 2, 2025

WILLKIE FARR & GALLAGHER LLP

By: _/s/ Koren Bell_
Koren Bell
Michael S. Schachter
Steven J. Ballew

*Attorneys for Defendant*
RUTHIA HE