CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

RAVI T. NARAYAN (CABN 331858)
Acting Chief, Criminal Division

LORINDA I. LARYEA (DCBN 99769)
Acting Chief, Fraud Section

JACOB FOSTER (CABN 250785)
Acting Deputy Chief
EMILY GURSKIS (VABN 85973)
Assistant Chief
Fraud Section, Criminal Division

    1400 New York Avenue, NW
    Washington, D.C. 20530
    Telephone: (202) 514-2000
    FAX: (202) 514-3708
    Jacob.Foster@usdoj.gov
    Emily.Gurskis@usdoj.gov

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6912
FAX: (415) 436-7234

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>RUTHIA HE, A/K/A/ RUJIA HE, and<br>DAVID BRODY,<br><br>      Defendants. | CASE NO. CR 24-329 CRB<br><br>GOVERNMENT'S REVISED PROPOSED JURY<br>INSTRUCTIONS |

The government respectfully submits to the Court these Revised Proposed Jury Instructions, which are largely drawn from the Ninth Circuit Model Criminal Jury Instructions (2022 ed.) (last updated March 2025). Where a proposed instruction is modified from a Model Instruction or adapted from another source, it is noted in a footnote.

As referenced in the previously filed Joint Proposed Jury Instructions (ECF No. 365), the government has updated this filing to add arguments and authorities in opposition to instructions proposed by Defendant He, which the government previously received at 6:34 pm on the date that the joint filing was due.

The parties each reserve the right to propose further instructions based on the evidence presented at trial.[1]

---

[1] Defendants propose globally replacing references to them as "defendants" with references to "Ms. He" and "Dr. Brody" respectively. The government does not agree to this change, as the Ninth Circuit Model Criminal Jury Instructions use the term "defendant" or "defendants" rather than specific names. *See also, e.g.*, United States v. Lynch et al., Case No. 18-CR-577-CRB, at ECF No. 545 (final jury instructions).

1

| Disputed | Description | 9th Circuit Model No. |
|---|---|---|
| | **1 – PRELIMINARY INSTRUCTIONS** | |
| | JURY TO BE GUIDED BY ENGLISH TRANSLATION/INTERPRETATION | 1.12 |
| | SEPARATE CONSIDERATION FOR EACH DEFENDANT | 1.13 |
| | BENCH CONFERENCES AND RECESSES | 1.16 |
| | **2 – INSTRUCTIONS DURING COURSE OF TRIAL** | |
| | CAUTIONARY INSTRUCTION | 2.1 |
| | STIPULATED TESTIMONY | 2.2 |
| | STIPULATIONS OF FACT | 2.3 |
| | TRANSCRIPT OF RECORDING IN ENGLISH | 2.6 |
| | OTHER CRIMES, WRONGS, OR ACTS OF DEFENDANT(S) | 2.10 |
| | EVIDENCE FOR LIMITED PURPOSE | 2.12 |
| Disputed | DUAL ROLE TESTIMONY (Government Version) | 3.15 |
| Disputed | DUAL ROLE TESTIMONY (Defense Version) | 3.15 (modified) |
| | **3 – INSTRUCTIONS AT END OF CASE** | |
| Disputed | CREDIBILITY OF WITNESSES (Government Version) | 6.9 |
| Disputed | CREDIBILITY OF WITNESSES (Defense Version) | 6.9 (modified) |
| Disputed | TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES – IMMUNITY, BENEFITS, ACCOMPLICE, PLEA (Government Version) | 3.9 |
| Disputed | TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES – IMMUNITY, | 3.9 |

| | | |
|---|---|---|
| | BENEFITS, ACCOMPLICE, PLEA (Defense Version) | |
| | OPINION EVIDENCE, EXPERT WITNESS | 3.14 |
| Disputed | STATEMENTS BY DEFENDANT (Government Version) | 3.1 |
| | OTHER CRIMES, WRONGS, OR ACTS OF DEFENDANT | 3.3 |
| Disputed | ACTIVITES NOT CHARGED (Government Version) | 6.10 |
| Disputed | ACTIVITES NOT CHARGED (Defense Version) | 6.10 (modified) |
| | CHARTS AND SUMMARIES ADMITTED INTO EVIDENCE | 3.17 |
| | CHARTS AND SUMMARIES NOT ADMITTED INTO EVIDENCE | 3.16 |
| | IMPEACHMENT EVIDENCE - WITNESS | 3.8 |
| Disputed | CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES (COUNT ONE) (Government Version) | N/A |
| Disputed | CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES (COUNT ONE) (Defense Version) | N/A |
| | CONSPIRACY – KNOWLEDGE OF AND ASSOCIATION WITH OTHER CONSPIRATORS | 11.4 |
| Disputed | DISTRIBUTION OF A CONTROLLED SUBSTANCE (COUNTS TWO THROUGH FIVE) (Government Version) | N/A |

| Disputed | DISTRIBUTION OF A CONTROLLED SUBSTANCE (COUNTS TWO THROUGH FIVE) (Defense Version) | N/A |
|---|---|---|
| Disputed | CONTROLLED SUBSTANCES ACT (Defense Version) | N/A |
| Disputed | MODEL GUIDELINES, STATE LAWS, AND REGULATIONS (Government Version) | N/A |
| Disputed | AIDING AND ABETTING (18 U.S.C. § 2(a)) (Government Version) | 4.1 |
| Disputed | AIDING AND ABETTING (18 U.S.C. § 2(a)) (Defense Version) | 4.1 (modified) |
| Disputed | AIDING AND ABETTING (18 U.S.C. § 2(b)) | 4.2 |
| Disputed | CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE COMMITTED BY CO-CONSPIRATOR (PINKERTON CHARGE) (COUNTS TWO THROUGH FIVE) (Government Version) | 11.6 |
| Disputed | CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE COMMITTED BY CO-CONSPIRATOR (PINKERTON CHARGE) (COUNTS TWO THROUGH FIVE) (Defense Version) | 11.6 |
| Disputed | CONSPIRACY TO COMMIT HEALTH CARE FRAUD (COUNT SIX) (Government Version) | 11.1 |
| Disputed | CONSPIRACY TO COMMIT HEALTH CARE FRAUD (COUNT SIX) (Defense Version) | 11.1 (modified) |
| Disputed | HEALTH CARE FRAUD (18 U.S.C. § 1347) (OBJECT OF COUNT SIX) (Government Version) | 15.42 |

| Disputed | HEALTH CARE FRAUD (18 U.S.C. § 1347) (OBJECT OF COUNT SIX) (Defense Version) | 15.42 |
|---|---|---|
| Disputed | CONSPIRACY TO OBSTRUCT JUSTICE (COUNT SEVEN) (Government Version) | 11.1 |
| Disputed | CONSPIRACY TO OBSTRUCT JUSTICE (COUNT SEVEN) (Defense Version) | 11.1 (modified) |
| Disputed | OBSTRUCTION OF JUSTICE (OBJECT OF COUNT SEVEN) (Government Version) | N/A |
| Disputed | OBSTRUCTION OF JUSTICE (OBJECT OF COUNT SEVEN) (Defense Version) | N/A |
| Disputed | CONSPIRACY TO OBSTRUCT JUSTICE – OFFICIAL PROCEEDING | N/A |
| Disputed | CONSPIRACY TO OBSTRUCT JUSTICE – "CORRUPTLY" DEFINED (Government Version) | N/A |
| Disputed | CONSPIRACY TO OBSTRUCT JUSTICE – "CORRUPTLY" DEFINED (Defense Version) | N/A |
| Disputed | KNOWINGLY (Government Version) | 4.8 |
| Disputed | KNOWINGLY (Defense Version) | 4.8 (modified) |
| Disputed | WILLFULLY (Defense Version) | 4.6 (modified) |
| Disputed | WILLFULLY (Government Version) | 4.6 (modified) |
| Disputed | DELIBERATE IGNORANCE | 4.9 |
| | INTENT TO DEFRAUD | 4.13 |
| Disputed | GOOD FAITH (Defense Version) | N/A |
| Disputed | MULTIPLE CONSPIRACIES (Defense Version) | 11.3 |
| Disputed | GUILTY KNOWLEDGE FROM CLANDESTINE BEHAVIOR (Government Version) | N/A |
| Disputed | SPOLIATION (Government Version) | N/A |

| Disputed | MERE PRESENCE (Defense Version) | 5.12 |
|---|---|---|
| | "IN OR AROUND" OR "ON OR ABOUT" - DEFINED | 6.18 |
| | SEPARATE CONSIDERATION OF MULTIPLE COUNTS – MULTIPLE DEFENDANTS | 6.13 |
| | COMMUNICATION WITH COURT | 6.24 |

## 1 – PRELIMINARY INSTRUCTIONS AT BEGINNING OF CASE

### 1.12 JURY TO BE GUIDED BY ENGLISH TRANSLATION/INTERPRETATION

### [If Applicable]

Languages other than English will be used for some evidence during this trial. When a witness testifies in another language, the witness will do so through an official court interpreter. When recorded evidence is presented in another language, there will be an official court translation of the recording.

The evidence you are to consider and on which you must base your decision is only the English-language translation provided through the official court interpreter. Although some of you may know the non-English language used, you must disregard any meaning of the non-English words that differs from the official translation.

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**1.13 SEPARATE CONSIDERATION FOR EACH DEFENDANT**

Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against the other defendant. The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to the other defendant.

## 1.16  BENCH CONFERENCES AND RECESSES

During the trial, I may need to take up legal matters with the attorneys privately, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or what your verdict should be.

# 2 – INSTRUCTIONS DURING COURSE OF TRIAL

## 2.1 CAUTIONARY INSTRUCTION

### FIRST RECESS[2]

We are about to take our first break. Remember, until the trial is over, do not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, and do not allow others to discuss the case with you. This restriction includes discussing the case in person, in writing, by phone, tablet, or computer, or any other means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. If anyone tries to communicate with you about the case, please let me know about it immediately. Do not read, watch, or listen to any news reports or other accounts about the trial or anyone associated with it, including any online information. Do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own. Finally, keep an open mind until all the evidence has been presented and you have heard the arguments of counsel, my instructions on the law, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the clerk to give to me.

### AT THE END OF EACH DAY OF THE CASE:

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case.

---

[2] This sub-section is adapted from portions of Instructions 1.8 (Conduct of the Jury) and 6.20 (Consideration of Evidence – Conduct of the Jury).

And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

### AT THE BEGINNING OF EACH DAY OF THE CASE:

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

## 2.2 STIPULATED TESTIMONY

### [If Applicable]

The parties have agreed what [name of witness]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

## 2.3 STIPULATIONS OF FACT

### [If Applicable]

The parties have agreed to certain facts that have been stated to you. Those facts are now conclusively established.

## 2.6 TRANSCRIPT OF RECORDING IN ENGLISH

### [If Applicable]

You [are about to [hear] [watch] [have [heard] [watched]] a recording that has been received in evidence. [Please listen to it very carefully.] Each of you [has been] [was] given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording. However, bear in mind that the recording is the evidence, not the transcript. If you [hear] [heard] something different from what [appears] [appeared] in the transcript, what you [hear] [heard] is controlling. [[After] [Now that] the recording has been played, the transcript will be taken from you.]

1

## 2.10 OTHER CRIMES, WRONGS, OR ACTS OF DEFENDANT[3]

2        You are about to hear evidence that [Defendant He/Defendant Brody] [*summarize other act*

3  *evidence*]. This evidence of other acts will be admitted only for limited purposes. You may consider

4  this evidence only for the purpose of deciding whether [Defendant He/Defendant Brody]:

5        [had the state of mind, knowledge, or intent necessary to commit the crime(s) charged in the

6        Indictment;] [or]

7        [had a motive or the opportunity to commit the acts charged in the Indictment;] [or]

8        [was preparing or planning to commit the acts charged in the Indictment;] [or]

9        [acted with a method of operation as evidenced by a unique pattern [*describe pattern*];] [or]

10       [did not commit the acts for which the defendant is on trial by accident or mistake;] [or]

11       [*describe other purpose for which other act evidence was admitted*].

12       Do not consider this evidence for any other purpose.

13       Of course, it is for you to determine whether you believe this evidence and, if you do believe it,

14  whether you accept it for the purpose offered. You may give it such weight as you feel it deserves, but

15  only for the limited purpose(s) that I described to you.

16       [Defendant He/Brody] is not on trial for committing these other acts. You may not consider the

17  evidence of these other acts as a substitute for proof that [Defendant He/Brody] committed the crime(s)

18  charged. You may not consider this evidence as proof that [Defendant He/Brody] has a bad character or

19  any propensity to commit the crimes.  Specifically, you may not use this evidence to conclude that

20  because [Defendant He/Brody] may have committed the other act(s), s/he must also have committed the

21  acts charged in the Indictment.

22       Remember that the defendants are on trial here only for conspiracy to distribute controlled

23  substances, distribution of controlled substances, conspiracy to commit health care fraud, and

24  conspiracy to obstruct justice, not for these other acts. Do not return a guilty verdict unless the

25  government proves the crime(s) charged in the Superseding Indictment beyond a reasonable doubt.

26

27  ───────────────

28       [3] Defendants note that they have objected to the admission of FRE 404(b) evidence and would
propose this instruction only to the extent that the Court admits any such evidence.

1

## 2.12 EVIDENCE FOR LIMITED PURPOSE

**[If Applicable]**

You are about to hear evidence that *[describe evidence to be received for limited purpose]*. I instruct you that this evidence is admitted only for the limited purpose of *[describe purpose]* and, therefore, you must consider it only for that limited purpose and not for any other purpose.

1

2

### 3.15 DUAL ROLE TESTIMONY (Disputed; Government Version)

### [If Applicable]

3    You are about to hear testimony from [name], who will testify about facts and [his] [her]

4 opinions and the reasons for those opinions. Fact testimony is based on what the witness personally

5 saw, heard, or did. Opinion testimony is based on the specialized knowledge, skill, experience, training,

6 or education of the witness.

7    As to the testimony about facts, it is your job to decide which testimony to believe and which

8 testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

9    As to the testimony about the witness's opinions, this testimony is allowed because of the

10 specialized knowledge, skill, experience, training, or education of this witness. Opinion testimony

11 should be judged like any other testimony. You may accept all of it, part of it, or none of it. You should

12 give it as much weight as you think it deserves, considering the witness's knowledge, skill, experience,

13 training, or education, the reasons given for the opinion, and all the other evidence in the case.

14    You also should pay careful attention as to whether the witness is testifying to personal

15 observations or involvement as a fact witness or testifying to an opinion based on specialized

16 knowledge, skill, experience, training, or education. When a witness provides opinion testimony based

17 on knowledge, skill, experience, training, or education, that person might rely on facts that are not

18 based on his or her personal observations or involvement, but that opinion cannot serve as proof of the

19 underlying facts.

20    You should also consider the factors discussed earlier in these instructions that were provided to

21 assist you in weighing the credibility of witnesses.

22    Also, the fact that a witness is allowed to express opinions based on that person's specialized

23 knowledge, skill, experience, training, or education should not cause you to give that witness undue

24 deference for any of aspect of that person's testimony or otherwise influence your assessment of the

25 credibility of that witness.

26

27

28

1     **GOVERNMENT'S AUTHORITY FOR DUAL ROLE TESTIMONY INSTRUCTION:** Ninth

2     Circuit Model Criminal Jury Instruction 3.15 (Option 1, unmodified).

3            As the government has explained, several of the percipient witnesses that it intends to call are

4     medical professionals, and the government provided an expert notice as to these witnesses out of an

5     abundance of caution because their testimony will necessarily draw upon their medical education,

6     training, and professional experience.  *See* Government's Response to Defendant Ruthia He's Motion to

7     Exclude Expert Witness and Lay Witness Testimony, ECF No. 343, at 1.  As the government explained

8     there, "not all testimony about medical topics or the operations of Done is expert testimony just because

9     it involves the health care industry or prescriptions drugs."  *Id.*  The government nonetheless proposes

10    this jury instruction in an abundance of caution, in the event that the Court deems the percipient

11    witnesses' testimony also embraces expert opinions.

12           The government respectfully submits that Defendant He's proposed variant of this instruction,

13    which also addresses "lay opinions," is unnecessary at this time.  As the Ninth Circuit has noted,

14    drawing lines between lay opinion testimony and expert testimony "is a particularly difficult task"

15    where a percipient witness's testimony relates to scientific matters.  *United States v. Holmes*, 129 F. 4th

16    636, 649 (9th Cir. 2025).  The government respectfully submits that if the Court does not view the

17    percipient witnesses' testimony as expert in nature, this instruction will not be necessary.  And if the

18    Court does deem the testimony expert in nature, then the proposed jury instruction will adequately

19    inform the jury about how to consider the witnesses' opinion testimony.  To the extent that a witness

20    genuinely offers both lay opinion testimony and expert opinion testimony, the Court can offer an

21    updated instruction with the benefit of context at the appropriate time, rather than confusing the jury

22    with an abstract instruction about drawing lines between lay and expert opinion testimony generally.

23

24

25

26

27

28

**3.15 DUAL ROLE TESTIMONY (Disputed; Defense Version)**

**[If Applicable]**

You [have heard] testimony from [insert names] who [testified] to both facts and two types of opinions and the reasons for those opinions. I will describe all three types of testimony. The first is fact testimony. Fact testimony is based on what the witness personally saw, heard, or did.  The second is opinion testimony based on the specialized knowledge, skill, experience, training, or education of the witness. The third is what is called "lay opinion testimony."

As to the testimony about facts, it is your job to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

As to the opinion testimony based on the witness's specialized knowledge, skill, experience, training, or education, you should judge this testimony like any other testimony. You may accept all of it, part of it, or none of it. You should give it as much weight as you think it deserves, considering the witness's knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.  However, the fact that a witness is allowed to express opinions based on that person's specialized knowledge, skill, experience, training, or education should not cause you to give that witness undue deference for any of aspect of that person's testimony or otherwise influence your assessment of the credibility of that witness.

As to the lay opinion testimony, this testimony is based on inferences drawn from the witness's direct perceptions and must be rationally based on those perceptions and not on speculation or what someone else has said. You should judge this testimony like any other testimony. You may accept all of it, part of it, or none of it. You should give it as much weight as you think it deserves. When considering lay opinion testimony, however, you should not give it any extra credence based on the specialized knowledge, skill, experience, training, or education of this witness.

You also should pay careful attention as to whether the witness testified to personal observations or involvement as a fact witness, testifying about a lay opinion based on the witness's perceptions, or testifying to an opinion based on specialized knowledge, skill, experience, training, or education. When a witness provides opinion testimony based on knowledge, skill, experience, training,

19

or education, that person might rely on facts that are not based on his or her personal observations or involvement, but that opinion cannot serve as proof of the underlying facts.

You should also consider the factors discussed earlier in these instructions that were provided to assist you in weighing the credibility of witnesses.

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED DUAL ROLE**

2    **TESTIMONY INSTRUCTION:** Ms. He has sought to exclude certain percipient witnesses from

3    offering expert testimony. *See* ECF No. 333 (Ms. He's Motion to Exclude). If the Court denies that

4    motion and permits these witnesses to present expert testimony, Ms. He requests that the Court provide

5    the proposed instruction, which is pulled verbatim from the Model Instruction 3.15, at "Option 3,"

6    which is intended to be used when a witness has testified to facts, lay opinion, and expert opinions that

7    are based on the witness's knowledge, skill, experience, training, or education. Defendant He has also

8    incorporated into this instruction the "optional" cautionary language that is set forth in the Model

9    Instruction, that is, "the fact that a witness is allowed to express opinions based on that person's

10   specialized knowledge, skill, experience, training, or education should not cause you to give that

11   witness undue deference for any of aspect of that person's testimony or otherwise influence your

12   assessment of the credibility of that witness."

13       Given the number of percipient witnesses that the Government has noticed as likely to provide

14   expert testimony, there is good reason to give this instruction, should Defendant He's motion to exclude

15   not be granted. As the Comments to the Model Instruction describe,

16       [T]rial courts should endeavor to explain clearly the differences between lay percipient
         testimony, lay opinion testimony (as governed by Rule 701), and expert opinion testimony (as
17       governed by Rule 702) in settings where all three arise. In many cases, designating an umbrella
         category of 'opinion testimony' may fail to provide an appropriate level of nuance to guide the
18       jury's evaluation of dual role testimony. Glossing over this three-way distinction may lead to the
         jury applying the instructions that they were given about 'opinion' testimony to lay opinion
19       even though it was intended for expert testimony. In doing so, the jury would consider the
         witness's experience, training, and specialized knowledge in evaluating lay opinion – exactly
20       the kind of bolstering of lay opinion with expert credentials about which we have warned.

21
22   *See* Comment, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit

23   (2025), Instruction No. 3.15 (citing *United States v. Holguin*, 51 F.4th 841 (9th Cir. 2022)). The

24   proposed instruction will assist in ensuring that the jury does not mistakenly "bolster" lay opinion

25   testimony with expert testimony, which is a mistake likely to occur if this instruction is not given.

26

27

28

### 3 – INSTRUCTIONS AT END OF CASE

### 6.9 CREDIBILITY OF WITNESSES (Disputed; Government Version)

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account the following:

1.  The opportunity and ability of the witness to see or hear or know the things testified to;

2.  The witness's memory;

3.  The witness's manner while testifying;

4.  The witness's interest in the outcome of the case, if any;

5.  The witness's bias or prejudice, if any;

6.  Whether other evidence contradicted the witness's testimony;

7.  The reasonableness of the witness's testimony in light of all the evidence; and

8.  Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

You must avoid bias[, conscious or unconscious,] based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOVERNMENT'S AUTHORITY FOR ITS PROPOSED CREDIBILITY OF WITNESSES**

**INSTRUCTION:**   Ninth Circuit Model Criminal Jury Instruction 6.9

     The government respectfully submits that the Court should instruct the jury using the unmodified Model Criminal Jury instruction.   The standard instruction provides important guidance regarding how a juror can weigh witness testimony, including the extent to which they can credit witness testimony and how the juror can consider potential inconsistencies across witness testimony. Omitting these portions of the standard instruction will not meaningfully streamline the jury charge, and it risks leaving the jury with a mistaken impression about the extent to which they can assess witness testimony.

**6.9 CREDIBILITY OF WITNESSES (Disputed; Defense Version)**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account the following:

1.  The opportunity and ability of the witness to see or hear or know the things testified to;

2.  The witness's memory;

3.  The witness's manner while testifying;

4.  The witness's interest in the outcome of the case, if any;

5.  The witness's bias or prejudice, if any;

6.  Whether other evidence contradicted the witness's testimony;

7.  The reasonableness of the witness's testimony in light of all the evidence; and

8.  Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**<u>DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED CREDIBILITY</u>**

**<u>OF WITNESSES INSTRUCTION:</u>** The Government's proposed instruction reflects the Model

Instruction at 6.9.  Defendant He has proposed this condensed version of the Ninth Circuit's Model

Instructions, which is pulled from the "Credibility of the Witnesses" instruction given by Your Honor

in *Napoli*, Dkt. No. 1056.

**3.9 TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES –**

**IMMUNITY, BENEFITS, ACCOMPLICE, PLEA (Disputed; Government Version)**

You have heard testimony from [name of witness], a witness who pleaded guilty to a crime arising out of the same events for which the defendant is on trial. This guilty plea is not evidence against the defendant, and you may consider it only in determining this witness's believability.

For this reason, in evaluating the testimony of [name of witness], you should consider the extent to which or whether his or her testimony may have been influenced by this factor. In addition, you should examine the testimony of [name of witness] with greater caution than that of other witnesses.

1  **GOVERNMENT'S AUTHORITY FOR ITS TESTIMONY OF WITNESSES INVOLVING**

2  **SPECIAL CIRCUMSTANCES INSTRUCTION:** Ninth Circuit Model Criminal Jury Instruction 3.9

3        The government respectfully submits that Defendant He's proposed modification is unnecessary

4  at this time.  In the event that a witness who has not pleaded guilty but has otherwise received a benefit

5  from the government testifies in this case, the instruction can be modified at that time.  In the absence

6  of such testimony, the modified instruction would only confuse the jury.

**3.9 TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES –
IMMUNITY, BENEFITS, ACCOMPLICE, PLEA (Disputed; Defense Version)**

You have heard testimony from [name of witness], a witness who [*choose one or more as applicable*]:

- received a benefit from the government in connection with this case;
- pleaded guilty to a crime arising out of the same events for which the defendant Ms. He and Dr. Brody are on trial. This guilty plea is not evidence against Ms. He or Dr. Brody, and you may consider it only in determining this witness's believability.

For this reason, in evaluating the testimony of [name of witness], you should consider the extent to which or whether his or her testimony may have been influenced by this factor. In addition, you should examine the testimony of [name of witness] with greater caution than that of other witnesses.

**DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR TESTIMONY OF WITNESSES INVOLVING SPECIAL CIRCUMSTANCES INSTRUCTION**:  Defendant He's only modification from the Government's proposed instruction is to include the underlined text, which is pulled directly from the portion of Ninth Circuit's Model Instructions applicable to witnesses who "[received [benefits] [compensation] [favored treatment] from the government in connection with this case]."  *See* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025), Instruction No. 3.9.

**3.14 OPINION EVIDENCE, EXPERT WITNESS**

You have heard testimony from [*expert names*], who testified to their opinions and the reasons for their opinions. This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of [this witness/these witnesses].

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**3.1 STATEMENTS BY DEFENDANT (Disputed; Government Version)**

You have heard testimony that the defendants made statements. It is for you to decide (1) whether each defendant made the respective statement, and (2) if so, how much weight to give to it. In making those decisions, you should consider all the evidence about the statement, including the circumstances under which the defendant may have made it.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS STATEMENTS OF THE**

2    **DEFENDANT INSTRUCTION:** Ninth Circuit Model Criminal Jury Instruction 3.1 (unmodified).

3    Proposed Instruction 3.1 is both a standard instruction and one that the Court typically includes

4    in its final instructions, as contemplated by the Court's April 21, 2025 Pretrial Order (ECF No. 263).

5    The instruction is not limited to traditional "confessions" produced by interrogation, and the

6    commentary to the proposed instruction explicitly states that it uses the term "statement" rather than

7    confession simply to avoid "impl[ying] an ultimate conclusion about the significance of a defendant's

8    statement, which should be left for the jury to determine."  Manual of Model Criminal Jury Instructions

9    for the District Courts of the Ninth Circuit (2025), Instruction No. 3.1.  If this instruction was strictly

10   limited to post-arrest statements by a defendant, there would be no reason for the comment's discussion

11   of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E); after all, a defendant's

12   confession to law enforcement is not a co-conspirator statement.  *See* Comment to Instruction No. 3.1.

13   Finally, Defendant He is wrong to suggest that *United States v. Hoac* held that this instruction

14   applies *only* where the voluntariness of a confession is at issue.  *Hoac* simply notes that "where a

15   defendant raises a genuine issue at trial concerning the voluntariness of a statement, the trial court is

16   obligated by statute to instruct the jury concerning the weight to be accorded that statement," and that

17   this model instruction is adequate for that purpose.  *See* 990 F.2d 1099, 1107–08 & n.4. (9th Cir. 1993).

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANT HE'S ARGUMENT AND AUTHORITY AGAINST STATEMENTS OF THE**

2  **DEFENDANT INSTRUCTION:**:  As explained in the Ninth Circuit's Manual of Model Criminal Jury

3  Instructions (the "Model Instructions"), this "instruction uses the word 'statement' in preference to the

4  more pejorative term, 'confession."  Manual of Model Criminal Jury Instructions for the District Courts

5  of the Ninth Circuit (2025), Instruction No. 3.1.   In this case, this instruction is irrelevant and

6  unnecessary given that neither defendant made any post-arrest "statements" or "confessions" and its

7  inclusion would only serve to confuse the jury otherwise.  *Id.*; *see also United States v. Hoac,* 990 F.2d

8  1099, 1106 (9th Cir. 1993) (instruction required only where the "voluntariness of a confession is an

9  issue" under 18 U.S.C. § 3501(a)).

## 3.3 OTHER CRIMES, WRONGS, OR ACTS OF DEFENDANTS

### [If applicable]

You have heard evidence that [Defendant He/Brody] committed other crimes, wrongs, or acts not charged here. You may consider this evidence only for its bearing, if any, on the question of [Defendant He/Brody]'s intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, absence of accident, and for no other purpose. You may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial.

**6.10 ACTIVITIES NOT CHARGED (Disputed; Government Version)**

You are here only to determine whether the defendants are guilty or not guilty of the charges in the indictment. The defendants are not on trial for any conduct or offense not charged in the indictment.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS ACTIVITIES NOT CHARGED**

2    **INSTRUCTION:**  Ninth Circuit Model Criminal Jury Instructions 6.10 (unmodified).  The government

3    opposes Defendants' proposed jury instruction 6.10, which adds inapplicable argument that will simply

4    confuse the jury.  While Defendant He claims that the government proposed a similar instruction in the

5    *FedEx* case, that says nothing about whether the instruction is appropriate in this case.  Jury instructions

6    depend upon the facts introduced at trial, and there is no indication that the facts here warrant

7    Defendant He's proposed deviation from the standard instruction.[4]

8         As the government has explained in briefing before this Court, evidence that is "reasonably

9    near" the dates noted in an indictment falls within the scope of the charge and is not "post-conspiracy

10   conduct" at all.  *See* Opposition to Defendants' Motions to Exclude Evidence That May Be Offered

11   Pursuant to Federal Rule of Evidence 404(b), ECF No. 331, at 12–13; *United States v. Brewer*, 1 F.3d

12   1430, 1437 (4th Cir. 1993); *United States v. Bennett*, 74 F. App'x 201, 207 (3d Cir. 2003) (where

13   defendants charged with conspiracy to distribute methamphetamine from "in or about August 1998 to

14   on or about June 1999," rejecting claim that "evidence regarding their efforts . . . during the summer or

15   fall of 1999 . . . fell outside the scope of the conspiracy").  Evidence from two to three months after

16   January 2023 falls well within the scope of the charged conspiracy, which spanned three years.  *See*

17   *United States v. Benson*, 591 F.3d 491, 497–98 (6th Cir. 2010) (affirming admission of evidence of acts

18   eleven months before indictment's start date, as "[g]iven the large time period covered by the

19   indictment [three years] . . . the [acts] occurred 'reasonably near' the dates of the indictment").  The

20   evidence here is also substantively indistinguishable from evidence before January 2023, forming part

21   of a "single criminal episode"; it is therefore also inextricably intertwined and admissible as direct

22   proof of the charged conspiracy.  *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (Rule

23   404(b) does not apply where "offenses committed as part of a single criminal episode become other acts

24   simply because the defendant is indicted for less than all of his actions").

25

26        _____

          [4] The government also notes that *FedEx* ultimately proceeded by bench trial, and no jury
27   instructions were ever finalized (let alone given).  *See United States v. FedEx*, Case No. 14-CR-380, at
     ECF No. 318 (N.D. Cal. June 7, 2016) (consenting to proceed by bench trial).  While the government
28   has also cited to the proposed *FedEx* instructions in limited instances where applicable, the government
     respectfully submits that they do not carry the outsized weight that Defendant He seeks to ascribe.

1    The Ninth Circuit's Model Criminal Jury Instruction 6.18 — which Defendant He does not

2    dispute — makes the foregoing point amply clear.  *See* Proposed Instruction 6.18 *infra* (noting that the

3    government need only prove "that each offense was committed on a date reasonably near the dates

4    alleged in Counts One through Seven of the Indictment, [and] it is not necessary for the government to

5    prove that the offense was committed precisely on the date charged.").  Deviating from the standard

6    instruction and providing Defendant He's proposed instruction without any factual basis would only

7    confuse the issues and the jury.

**6.10 ACTIVITIES NOT CHARGED (Disputed; Defense Version)**

*You are here only to determine whether Ms. He and Dr. Brody are guilty or not guilty of the charges in the Indictment. Ms. He and Dr. Brody are not on trial for any conduct or offense not charged in the Indictment.*

In particular, you have heard evidence concerning conduct that post-dated the conspiracies charged in the Indictment. You may consider this post-conspiracy conduct only as it relates to the charged conspiracies, which is alleged to have ended: (1) in approximately January 2023 for the Conspiracy to Distribute Controlled Substances charge in Count One; (2) in approximately January 2023 for the Conspiracy to Commit Healthcare Fraud charge in Count Six, (3) in approximately June 2024 for the Conspiracy to Obstruct Health Care charge in Count Seven. You may not find either Ms. He or Dr. Brody guilty of the conspiracies charged in Count One and Count Six, based solely on conduct that occurred after January 2023, or Count Seven based solely on conduct that occurred after June 2024.

Likewise, you have heard evidence concerning conduct that pre-dated the Conspiracy to Obstruct Justice charge in Count Seven. You may consider this pre-conspiracy conduct only as it relates to the charged conspiracy, which is alleged to have begun in approximately March 2022. You may not find Ms. He or Dr. Brody guilty of the conspiracy charged in Count Seven based solely on conduct that occurred before March 2022.

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED ACTIVITIES**

2    **NOT CHARGED INSTRUCTION:** The Government has openly stated that it intends to present

3    evidence of crimes not charged in the Indictment—including, for example, "that Done was engaged in

4    HIPAA violations" (even though it concedes it does not have "evidence that any leaks of patient data

5    occurred or that any patients were harmed as a result of the HIPAA violations")—and this instruction is

6    critical to ensure that the jury does not convict Ms. He "simply because they believe she is a bad person

7    who deserves punishment for disregarding patient privacy." *See* ECF No. 335 at 1, 5 (Government

8    Opposition to Ms. He's Motion *in Limine* No. 1). The language from the Ninth Circuit's Model

9    Instruction is italicized. *See also* Manual of Model Criminal Jury Instructions for the District Courts of

10   the Ninth Circuit (2025), Instruction No. 6.10. The remainder of the instruction is adopted ***verbatim***

11   from what the ***Government*** proposed in *FedEx,* Dkt. No. 277 at 13, except that Defendant He has

12   changed the conspiracy time periods to reflect those charged in this action. *See also* Manual of Model

13   Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025), Instruction No. 6.10.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.17 CHARTS AND SUMMARIES ADMITTED INTO EVIDENCE

**[If applicable]**

Certain charts and summaries have been admitted into evidence. Charts and summaries are only as good as the underlying supporting material. You should, therefore, give them only such weight as you think the underlying material deserves.

### 3.16 CHARTS AND SUMMARIES NOT ADMITTED INTO EVIDENCE

**[If applicable]**

During the trial, certain charts and summaries were shown to you to help explain the evidence in the case. These charts and summaries were not admitted into evidence and will not go into the jury room with you. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard the charts and summaries and determine the facts from the underlying evidence.

**3.8 IMPEACHMENT EVIDENCE – WITNESS**

You have heard evidence that [name of witness], a witness, [specify basis for impeachment]. You may consider this evidence in deciding whether or not to believe this witness and how much weight to give to the testimony of this witness.

**CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES (COUNT ONE)**

**(21 U.S.C. §§ 841(a), 846) (Disputed; Government Version)**

The defendants are charged in Count One of the indictment with conspiracy to distribute Schedule II controlled substances, including amphetamine-dextroamphetamine and other stimulants, in violation of Section 841(a) and Section 846 of Title 21 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or around February 2020 and continuing through in or around January 2023, there was an agreement between two or more persons to distribute or dispense schedule II controlled substances including amphetamine-dextroamphetamine and other stimulants not for a legitimate medical purpose in the usual course of professional practice; and

Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

I will instruct you about the elements of distribution of controlled substances after I have instructed you on the nature of a conspiracy more generally.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object or purpose of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no

43

knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED CONSPIRACY**

2    **TO DISTRIBUTE CONTROLLED SUBSTANCES INSTRUCTION**:  Adapted from Ninth Circuit

3    Model Criminal Jury Instructions 11.1 and 12.5.  Defendant He's argument on the jury instructions, *see*

4    Defense Version, fundamentally misconstrues the governing legal standards.   The Supreme Court's

5    recent decision in *Ruan*, the plain language, and court of appeals decisions have long favored the

6    disjunctive rather than conjunctive interpretation.

7       **A.  The Controlled Substances Act (CSA)**

8          In 1970, Congress enacted the Controlled Substances Act (CSA), 21 U.S.C. §§ 801 *et seq.*,

9    which established a closed regulatory system for the manufacture, distribution, and dispensing of

10   controlled substances.  *See Touby v. United States*, 500 U.S. 160, 162 (1991).  "The main objectives of

11   the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled

12   substances."  *Gonzales v. Raich*, 545 U.S. 1, 12–13 (2005).  "Congress was particularly concerned with

13   the need to prevent the diversion of drugs from legitimate to illicit channels."  *Id.*  The CSA thus makes

14   it a crime for anyone to manufacture, possess, distribute, and dispense five categories (or "schedules")

15   of controlled substances.  *See Touby*, 500 U.S. at 162.  The CSA "authorizes the Attorney General to

16   add or remove substances, or to move a substance from one schedule to another."  *Id.* (citing 21 U.S.C.

17   § 811(a)).

18         The CSA categorizes controlled substances into five Schedules, based on their abuse potential

19   and medical value.  21 U.S.C. § 812.  "Violations involving schedule I substances carry the most severe

20   penalties, as these substances are believed to pose the most serious threat to public safety."  *Touby*, 500

21   U.S. at 162.  Schedule II drugs are the most powerful and dangerous drugs that can be lawfully

22   prescribed because they currently have an "accepted medical use in treatment[.]"  21 U.S.C. §

23   812(b)(2); *see Raich*, 545 U.S. at 14.  This includes amphetamine-dextroamphetamine (also known as

24   Adderall) and other stimulants at issue in this case.

25         To prevent the illegal distribution of controlled substances, the CSA regulates the activity not

26   only of drug dealers but also of medical professionals.  *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006)

27   ("[T]he CSA regulates the activity of physicians" to "prevent diversion of controlled substances with

28   medical uses[.]").  The CSA prohibits dispensing Schedule II narcotics "[e]xcept as authorized by [the

CSA]" and its implementing regulations.  21 U.S.C. §§ 828(a), 841(a)(1).  The CSA defines how to qualify as a practitioner (*see* 21 U.S.C. §§ 822, 823), and lawfully permits "practitioners" "to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research."  21 U.S.C. § 802(21).  However, the CSA also states "[i]t shall be unlawful for any person to obtain by means of order forms . . . controlled substances for any purpose other than their use, distribution, dispensing, or administration in the conduct of a lawful business in such substances or in the course of his professional practice or research."  21 U.S.C. § 828(e).  Congress thus carved out an exception to the prohibition on distributing controlled substances for doctors and other defined medical professionals—but only when they were engaged in the usual course of professional practice.  *See also* 21 U.S.C. § 829(a).  A prescription is "authorized" by the CSA "when a doctor issues it 'for a legitimate medical purpose . . . acting in the usual course of his professional practice.'"  *Ruan v. United States*, 597 U.S. 450, 454 (2022) (quoting 21 C.F.R. § 1306.04(a)).  And in *United States v. Moore*, 423 U.S. 122 (1975), the Supreme Court "h[eld] that registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice." *Id.* at 124.

**B.  The Plain Meaning of 21 C.F.R. § 1306.04(a) Is Disjunctive**

As described above, the CSA criminalizes the distribution of narcotics "except as authorized." 21 U.S.C. § 841(a).  "It does not describe when distribution is 'authorized,' but the applicable regulation" does.  *United States v. Pham*, 120 F.4th 1368, 1369 (9th Cir. 2024), *cert. denied*. Specifically, 21 C.F.R. § 1306.04(a) states:  "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  This suggests that, in order for a prescription to be authorized, it must be both (i) issued for a legitimate medical purpose *and* (ii) issued in the usual course of professional practice.  Necessarily, by the plain language, that means a physician is acting in an unauthorized manner—and thus in a manner prohibited by § 841(a)—if he or she does not issue prescriptions for a legitimate medical purpose *or* in the usual course of professional practice.

The language of the regulation further supports this interpretation by stating "[t]he responsibility for the proper prescribing and dispensing of controlled substances *is upon the prescribing practitioner*"

1    and "[a]n order purporting to be a prescription issued not in the usual course of professional treatment

2    *or* in legitimate and authorized research is not a prescription within the meaning and intent of section

3    309 of the [CSA.]"  21 C.F.R. § 1306.04(a).  Notably, this latter provision uses the disjunctive "or,"

4    indicating that a prescription fails if it lacks either element.  Once again, the plain language of the

5    regulation itself means that a prescription is not authorized if *either* it is not issued for a legitimate

6    medical purpose, *or* if it is issued outside the usual course of professional practice, or both.

7    **C. Supreme Court Precedent Supports the Disjunctive Interpretation**

8         As the Court in *Ruan* held, the Government must prove beyond a reasonable doubt that the

9    defendant knowingly or intentionally acted in an unauthorized manner.  A prescription is "authorized"

10   by the CSA only "when a doctor issues it 'for a legitimate medical purpose . . . acting in the usual

11   course of his professional practice.'" *Ruan v. United States*, 597 U.S. 450, 454 (2022) (quoting 21

12   C.F.R. 1306.04(a)).  It further observed that "Section 841 contains a general scienter provision—

13   'knowingly or intentionally'" and reasoned that, "in § 841 prosecutions [of practitioners for dispensing

14   drugs via prescription], a lack of authorization is often what separates wrongfulness from innocence."

15   The Court further held that "the scope of a doctor's prescribing authority" remains tethered to

16   "objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'"

17   While the Court in *Ruan* did not directly address the disjunctive versus conjunctive issue, the Court

18   referenced these as separate "objective criteria," not as separate elements of a conjunctive test that each

19   needed to be satisfied.

20        When presented with nearly identical regulatory language in *Moore*, the Supreme Court

21   consistently referred only to "professional practice" in describing criminal liability under § 841, *see id.*

22   at 140–42.  In *Moore*, the Supreme Court affirmed the conviction of a physician based on evidence

23   about his deficient prescription practices, which included conducting cursory or nonexistent physical

24   exams, taking inadequate precautions against diversion or misuse of drugs, and not keeping accurate

25   records. 423 U.S. at 127, 142–43.  Crucially, *Moore* upheld a conviction based solely on evidence that

26   the defendant's prescribing fell outside the usual course of professional practice, without requiring

27   additional proof that the prescriptions lacked a legitimate medical purpose.  And *Moore* ultimately

28   upheld a conviction where the jury instructions did not require multiple distinct findings about the

1    nature of the prescriptions.  *Id.* at 138–39; *see also Gonzales v. Oregon*, 546 U.S. at 285 (Scalia, J.,

2    dissenting) (explaining that, "[u]nder [this Court's] reasoning in *Moore*, writing prescriptions that are

3    illegitimate * * * is certainly not 'in the usual course of professional practice'" (brackets and citation

4    omitted)).

5    ### D. Overwhelming Circuit Authority Supports the Disjunctive Reading

6           Every published decision that has expressly addressed the issue has adopted a disjunctive

7    reading, determining that a jury may find a medical practitioner guilty of violating § 841(a) based on

8    evidence that he or she knowingly distributed or dispensed a controlled substance "outside the usual

9    course of medical practice" *or* "without a legitimate medical purpose."  *See*, *e.g.*, *United States v.

10   Lamartiniere*, 100 F.4th 625, 642–43 (5th Cir. 2024) (holding that *Ruan* did not alter "established

11   precedent that a prescription is unauthorized under § 841(a)(1) if it lacks a legitimate medical purpose

12   *or* was issued outside the usual course of professional practice." (emphasis added)), *cert. denied*; *United

13   States v. Lubetsky*, No. 23-10142, 2024 WL 577543, at *1 (11th Cir. Feb. 13, 2024) (rejecting

14   defendant's argument that the government failed to prove prescriptions were unauthorized because "the

15   government didn't prove lack of legitimate medical purpose" as "squarely foreclosed by circuit

16   precedent"), *cert. denied*; *United States* v. *Abovyan*, 988 F.3d 1288, 1308 (11th Cir. 2021) ("[T]he law

17   requires only that the jury find the doctor prescribed a drug 'not for a legitimate medical purpose' *or*

18   not 'in the usual course of professional practice.'" (emphasis added)), *overruled on other grounds by

19   Ruan*; *United States v. Bek*, 493 F.3d 790, 798–99 (7th Cir. 2007) (describing disjunctive instruction as

20   "proper"), *cert. denied*; *United States v. Nelson*, 383 F.3d 1227, 1230–33 (10th Cir. 2004), *overruled on

21   other grounds by Ruan*; *United States v. Limberopoulos*, 26 F.3d 245, 249–50 (1st Cir. 1994) (finding

22   that "well-established case law mak[es] clear that the statute [§ 841] applies to a pharmacist's (or

23   physician's) drug-dispensing activities so long as they fall outside the usual course of professional

24   practice.").[5]

25

26

27           [5] Others have left the question open.  *United States v. Oppong*, No. 21-3003, 2022 WL 1055915,
     at *5 & n.4 (6th Cir. Apr. 8, 2022) (noting prior precedent found sufficient evidence met disjunctive
28   reading but not addressing precise disjunctive versus conjunctive question, and holding "that there is no
     difference in the meanings" of the phrases).

### E. Defendant Mischaracterizes Ninth Circuit Precedent

Defendant further errs in asserting that the Ninth Circuit has settled on the conjunctive reading. The cases cited by defendant do not establish binding Ninth Circuit precedent requiring conjunctive proof. In *Feingold*, the Ninth Circuit upheld jury instructions that included the "legitimate medical purpose" and "course of professional practice" standards in the conjunctive, as well as a good-faith instruction that "require[d] the jury to find that [the defendant] intentionally acted outside the usual course of professional practice." 454 F.3d at 1008. However, the *Feingold* court's affirmance of conjunctive instructions does not preclude disjunctive instructions. Indeed, the Ninth Circuit predicted in part the ruling in *Ruan* that there must be a *mens rea* requirement attached to what makes the distribution unauthorized, but only addressed "outside the usual course of professional practice" and did not add the *mens rea* to "without a legitimate medical purpose," as *Ruan* later did in clarifying that the *mens rea* applies to the authorization clause in full. *See id.* at 1007–08. The Court repeatedly reiterated that an intentional violation would suffice to distinguish criminal liability from civil malpractice. *See id.* at 1009. However, because the district court's instruction in *Feingold* did not have a *mens rea* attached to the "other than for a legitimate medical purpose and not in the usual course of professional practice" prong, *id.* at 1006, the Court went on to analyze whether a violation of the standard of care, alone, is sufficient for criminal liability under the statute and regulation. *See id.* at 1009–13.

The Court emphasized the need to distinguish a conviction under § 841 from "a finding that [a physician] has committed malpractice." *Id.* at 1010. And the Court found that the instructions given there had sufficiently done so. *Id.* at 1012. In reaching this conclusion, the Court noted that even in the absence of a specific *mens rea* requirement for the unauthorized manner, the defendant's defense "that he believed a legitimate medical purpose existed for all of [the defendant's] prescriptions" (*id.* at 1005) failed because the Supreme Court in *Moore* required both prongs, "which unquestionably imposed a higher burden on the government than proving deliberate malpractice, [and] is also in accord with the federal regulations governing licensed practitioners." *Id.* at 1011. In short, the Court described the either requiring a *mens rea* or requiring the two prongs in conjunctive both could adequately cover the statutory and regulatory requirements. The Court did not say that was the *only* permissible reading of the statutory and regulatory requirements.

Thus, the affirmance in *Feingold* does not demonstrate established Ninth Circuit precedent requiring conjunctive proof, given the Ninth Circuit did not directly consider whether a disjunctive instruction would also satisfy the requisite "standard for criminal liability." *Id.* at 1012. Further, to the extent that the *Feingold* court was concerned that without adequate procedural safeguards, juries might convict based on purely objective standards of professional practice, essentially criminalizing medical negligence, *Ruan* now ensures that any jury instruction must include adequate *mens rea* requirements regardless of whether authorization is phrased disjunctively or conjunctively.

Since *Feingold*, it is true that courts have repeatedly used the conjunctive approach without analyzing whether a disjunctive approach is appropriate or needing to do so under the facts of those cases. *See*, *e.g.*, *United States v. Siao*, No. 24-1486, 2025 WL 1009280 (9th Cir. Apr. 4, 2025); *United States v. Motley*, No. 21-10296, 2023 WL 9014457 (9th Cir. Dec. 29, 2023); *United States v. Kabov*, No. 19-50083, 2023 WL 4585957 (9th Cir. July 18, 2023), *cert. denied*; *United States v. Wilson*, 850 F. App'x 546 (9th Cir. 2021); *United States v. Diaz*, 876 F.3d 1194, 1196 (9th Cir. 2017) (*quoting Feingold*); *accord United States v. Napoli*, No. 3:10-CR-642-CRB, Dkt. 1056 (N.D. Cal. Nov. 9, 2012), *aff'd United States v. Carozza*, 608 F. App'x 532 (9th Cir. 2015). These cases represent routine applications of instructions that were sufficient under the specific facts presented, not binding holdings that conjunctive proof is required in all cases. Thus, the Ninth Circuit has simply not yet had reason to pass on the exact question presented before the Court herein and has not considered the issue in light of the Court's decision in *Ruan*.

The same is true of the other cases cited by the defense. *See*, *e.g.*, *United States v. Smithers*, 92 F.4th 237, 250–51 & n.5 (4th Cir. 2024) (affirming use of disjunctive jury instructions on alternative grounds without resolving disjunctive versus conjunctive argument); *United States v. Chube II*, 538 F.3d 693, 697–98 (7th Cir. 2008). The absence of any circuit court explicitly holding that conjunctive proof is required demonstrates that the Defendant's reading extends *Feingold* far beyond its actual holding. Given the plain meaning of the regulation, the weight of authority from other circuits and the Supreme Court's guidance in *Ruan*, this Court should adopt the disjunctive approach that reflects the CSA's criminal prohibition.

1    **F. Even if the Court Does Not Accept the Government's Approach, it Should Reject**

2    **Defendant's Conjunctive Interpretation**

3        Even if this Court declines to adopt the government's disjunctive framework, it should

4    nonetheless reject Defendant's conjunctive interpretation.  As 9th Cir. Model Jury Instr. 12.4, cmt.

5    (2022) states: "In prosecutions involving a physician charged with distributing controlled substances

6    not 'as authorized,' if the defendant produces evidence that his or her conduct was 'authorized,' the

7    government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted

8    in an unauthorized manner."  (citing *Ruan*, 597 U.S. at 457 (2022)).  Had the Ninth Circuit determined

9    that the conjunctive approach was appropriate post-*Ruan*, it could have made that explicit in Jury

10   Instruction 12.4; instead the instructions use the "authorized" language, setting forth a unitary standard

11   consistent with *Ruan*.  Defendant's conjunctive reading artificially separates what the regulatory

12   structure presents as a unified authorization clause: the phrase "for a legitimate medical purpose by an

13   individual practitioner acting in the usual course of his professional practice" describes a standard of

14   authorized prescribing, not two independent hurdles the government must separately clear.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51

**CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES (COUNT ONE)**

**(21 U.S.C. §§ 841(a), 846) (Disputed; Defense Version) (Underlined Text Reflects**

**Defendant He's Proposed Modifications to the Government's Proposal)**

Ms. He and Dr. Brody are charged in Count One of the indictment with conspiracy to distribute Schedule II controlled substances, including amphetamine-dextroamphetamine (also known as Adderall), lisdexamfetamine (also known as Vyvanse), and methylphenidate (also known as Ritalin), in violation of Section 841(a) and Section 846 of Title 21 of the United States Code.  I will instruct you about the elements of distribution of controlled substances after I have instructed you on the nature of a conspiracy more generally.

In order for  Ms. He or Dr. Brody to be found guilty of conspiracy, the government must prove each of the following elements beyond a reasonable doubt as to that particular Defendant:

First, beginning in or around February 2020 and continuing through in or around January 2023, there was an agreement between the Defendant you are considering and one or more persons to distribute or dispense schedule II controlled substances by means of a prescription knowingly or intentionally issued by a physician or nurse practitioner not for a legitimate medical purpose and not in the usual course of professional practice.

The Government does not have to prove that this crime was committed in order for you to find that the Government has established this first element of this conspiracy charge; however, you must unanimously agree that the Government has proven beyond a reasonable doubt that there was an agreement between the Defendant you are considering and one or more persons to commit a violation of Section 841(a) and Section 846 of Title 21 of the United States Code in order for you to find that the first element has been satisfied.

Second, the Defendant you are considering joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object or purpose of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

1  **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED**

2  **MODIFICATIONS TO CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES**

3  **INSTRUCTION**:  Defendant He's proposed modifications to this instruction, as indicated using

4  underlined text, are pulled verbatim from (1) this Court's instructions in  *Napoli* (Dkt. No. 1056 at 19-

5  20) and (2) the Government's proposed jury instructions in *FedEx,* Dkt. No. 277 at 23 (advocating for

6  the *Napoli* instruction verbatim, citing *Napoli*).  The Government's attempt to eliminate the conjunctive

7  phrasing of the instruction by removing the "and" from the portion of the second element which states

8  "not for a legitimate medical purpose ***and not*** in the usual course of professional practice" is

9  unfounded, given the lack of ***any*** intervening change in this Circuit as to the Government's burden

10  since *Napoli*.

11      The Government's proposed alteration to the second element would constitute reversible error,

12  given the weight of legal authority, beyond *Napoli* itself, which confirms that a prescription is only

13  "unauthorized" where the Government can prove that it was knowingly or intentionally issued "not for

14  a legitimate medical purpose and not in the usual course of professional practice," including:

15  - *United States v. Diaz*, 876 F.3d 1194, 1196 (9th Cir. 2017) (§ 841 requires the government
16     to prove that the distribution of controlled substances was "outside the usual course of
       professional practice ***and*** without a legitimate medical purpose, and . . . that the practitioner
17     acted with intent to distribute the drugs and with intent to distribute them outside the course
       of professional practice.") (quoting *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir.
18     2006));

19  - *United States v. Feingold*, 454 F.3d 1001, 1012 (9th Cir. 2006) ("The district court
       instructed the jury that 'the government must prove beyond a reasonable doubt that the
20     defendant prescribed or distributed the controlled substance other than for a legitimate
       medical purpose ***and*** not in the usual course of professional practice.' ***These instructions***
21     ***correctly articulated the standard for criminal liability under § 841(a)***.") (citing 21 C.F.R.
22     § 1306.04) (emphasis added);

23  - *United States v. Carozza*, 2015 WL 1727269 (9th Cir. 2015) (affirming this Court's issuance
24     of precisely the same conjunctive instruction in *Napoli*);

25  - *United States v. Pham*, 120 F.4th 1368, 1371 (9th Cir. 2024) (rejecting doctor's attempt to
       withdraw his plea agreement post-*Ruan* because "Pham admitted to having the requisite
26     knowledge of the elements that made his prescriptions not authorized: he knew the
       prescriptions were not for a legitimate medical purpose, ***and*** he knew he was not acting in
27     the usual course of medical practice") (emphasis added); and

28

- Comment, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025), Instruction No. 12.4 ("[T]he government must prove beyond a reasonable doubt that [the physician or nurse-practitioner] knowingly or intentionally acted in an unauthorized manner," and citing *Pham,* 120 F.4th at 1371 to explain the Government's burden to demonstrate that the defendant had "intent to act outside the usual course of professional practice ***and*** without a legitimate medical purpose").

Nothing warrants deviating from the instructions that this Court has previously given and that the Government has previously sought.  This is especially true given that at least one court in this district has confirmed that nothing in *Ruan* overrules *Feingold*'s holding that acting in an unauthorized manner requires the Government to prove that a physician or nurse-practitioner acted "outside the usual course of professional practice ***and*** without a legitimate medical purpose."  *United States v. Siao*, No. 21-CR-00267-BLF-1, 2023 WL 7462627, at *7 (N.D. Cal. Nov. 9, 2023) (citing 21 C.F.R. § 1306.04), affirmed in No. 24-1486, 2025 WL 1009280, at *1 (9th Cir. Apr. 4, 2025) (approving jury instruction post-*Ruan* which instructed the jury that "'Unauthorized manner' means that the distribution of the controlled substance was outside of the usual course of professional practice ***and*** without a legitimate medical purpose") (emphasis added).

While the Government's proposed instruction fails to cite any authority for its deviation from this Court's instruction in *Napoli* and the binding Ninth Circuit precedent described above, Defendant He assumes the Government is relying on the same out of Circuit cases cited in its motion *in limine* to exclude defense expert testimony—that is, *United States v. Lamartiniere*, 100 F.4th 625 (5th Cir. 2024) and *United States v. Heaton*, 59 F.4th 1226 (11th Cir. 2023)—where the Fifth and Eleventh Circuits opined that *Ruan* was not sufficiently specific to overrule the pre-*Ruan* "disjunctive" jury instruction that was precedent in those Circuits.  *See Lamartiniere*, 100 F.4th at 638-642 (finding that *Ruan* was concerned only with the "*mens rea* requirement" of Section 841(a)(1) and holding that because *Ruan* did not "unequivocally overrule" the Fifth Circuit's definition of "authorization," as previously described in *United States v. Armstrong*, 550 F.3d 382 (5th Cir. 2008), the *Lamartiniere* panel did not have the authority under the Fifth Circuit's "rule of orderliness" to "overturn" or "depart" from *Armstrong*'s disjunctive instruction on "authorization."); *Heaton*, 59 F.4th at 1239, 1241, n. 17 (finding that *Ruan* was concerned only with the "*mens rea*" of Section 841(a)(1) and holding that because *Ruan* was not "clearly on point" with respect to "overruling" the Eleventh Circuit's disjunctive instruction on

authorization, as previously set forth in *United States v Abovyan*, 988 F.3d 1288, 1308 (11th Cir. 2021), the *Abovyan* instruction remained "binding" precedent on the *Heaton* panel, given the obligation under Eleventh Circuit law to abide by a "prior panel's holding. . .unless and until it is overruled or undermined to the point of abrogation by the Supreme Court" which occurs only when "the Supreme Court decision [is] clearly on point.").

In contrast to the Fifth and the Eleventh Circuits, the Ninth Circuit has long required the Government to prove that the prescription was issued "outside the usual course of professional practice ***and*** without a legitimate medical purpose," as described above. *See Feingold*, 454 F.3d 1001, 1012 (9th Cir. 2006); *Siao*, No. 24-1486, 2025 WL 1009280, at *1.

Moreover, other Circuits are in accord with the Ninth Circuit's construction. *See, e.g.*, *United States v. Smithers,* 92 F.4th 237, 248 (4th Cir. 2024) (explaining that there is a "relationship" between Section 841's "scienter requirement and whether [Section] 841" authorization requirement "is phrased disjunctively or conjunctively" and finding, on the basis of *Ruan*, that it was error for the district court to have instructed that the defendant "could be convicted if he issued a prescription that was not for a legitimate medical purpose *or* acted beyond the bounds of medical practice in issuing the prescription."); *United States v. Chube II*, 538 F.3d 693, 697–98 (7th Cir. 2008) (citing to *Feingold*, 454 F.3d at 1008 and confirming that "in order to support a violation of the CSA, the jury had to find that the Doctors knowingly and intentionally acted 'outside the course of professional practice' *and* without 'a legitimate medical purpose.'") (emphasis added); *United States v. Kraynak*, No. 4:17-CR-00403, 2022 WL 3161907, at *3 (M.D. Pa. Aug. 8, 2022), *aff'd*, No. 22-2500, 2023 WL 4636419 (3d Cir. July 20, 2023) (describing the Government's burden, post-*Ruan*, as being obligated to "prove four things: (1) that [defendant] distributed a mixture or substance containing a controlled substance; (2) that he distributed the controlled substance outside the usual course of professional practice *and* not for a legitimate medical purpose; (3) that he distributed the controlled substance while knowing or intending that the distribution was outside the usual course of professional practice and not for a legitimate medical purpose; and (4) that the controlled substance was the substance identified in the indictment.") (emphasis added).

56

The Court should not entertain the Government's attempt to alter its requisite burden of proof.[6]

---

[6] Notably, the Government cited to *FedEx* as the basis for its instruction on Counts Two through Five that "[m]edical professionals do not comply with the legal requirements if they act in an "unauthorized manner." But, as described above, under Ninth Circuit precedent, "unauthorized manner" means that the distribution of the controlled substance was outside of the usual course of professional practice ***and*** without a legitimate medical purpose." *Feingold*, 454 F.3d 1001, 1012 (9th Cir. 2006).

## 11.4 CONSPIRACY—KNOWLEDGE OF AND ASSOCIATION WITH OTHER CONSPIRATORS

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with other conspirators in the overall scheme, the defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

First, the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy;

Second, the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

Third, the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture.

It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

1    **DISTRIBUTION OF A CONTROLLED SUBSTANCE (COUNTS TWO THROUGH FIVE,**

2    **AND OBJECT OF COUNT ONE) (21 U.S.C. § 841(a), (b)(1)(C)) (Disputed; Government**

3    **Version)**

4    The Controlled Substances Act, Title 21, United States Code, Section 841(a)(1) and Title 21,

5    United States Code, Section 846 make it unlawful for any person knowingly or intentionally to

6    distribute or dispense a controlled substance or to conspire to do so.  Medical professionals registered

7    with the Attorney General, such as physicians and pharmacists, are excepted from this general

8    prohibition as long as they comply with the legal requirements of their registration.  In these

9    instructions, the term "practitioner" means such an individual licensed or registered to dispense a

10   controlled substance in the usual course of professional practice.[7]

11   Medical professionals do not comply with the legal requirements if they act in an "unauthorized

12   manner."  "Unauthorized manner" means that the distribution of the controlled substance was outside of

13   the usual course of professional practice and without a legitimate medical purpose.[8]

14   Non-practitioners may also be held accountable for violations of the Controlled Substances Act

15   if they conspire with practitioners such as doctors or pharmacists to unlawfully distribute controlled

16   substances, willfully cause the unlawful distribution of controlled substances, otherwise aid and abet

17   practitioners in the unlawful distribution of controlled substances, or engage in distribution activities

18   when they have no authority to do so.[9]

19

20   [7]  The above language is from *United States v. FedEx*, No. 14-CR-380-CRB, Dkt. 277 (N.D. Cal. May 12, 2016).

21   [8]  The above language was used at trial and approved by the Ninth Circuit in *United States v.

22   Siao*, No. 24-1486, 2025 WL 1009280, at *1 (9th Cir. Apr. 4, 2025); *see also* Comment to Ninth Circuit

23   Model Jury Instruction 12.4 ("In prosecutions involving a physician charged with distributing controlled substances not 'as authorized,' if the defendant produces evidence that his or her conduct

24   was 'authorized,' the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner.") (citing *Ruan v. United States*, 597 U.S. 450, 457

25   (2022), and *United States v. Pham*, 120 F.4th 1368, 1370-71 (9th Cir. 2024) (providing that a defendant's "admission that he prescribed controlled substances with intent to act outside the usual

26   course of professional practice and without a legitimate medical purpose" was an admission to the "requisite knowledge of the elements that made his prescriptions not authorized")).

27   [9]  The above language is adapted from *United States v. FedEx*, No. 14-CR-380-CRB, Dkt. 277

28   (N.D. Cal. May 12, 2016); *accord United States v. Wilson*, 850 F. App'x 546, 547–48 (9th Cir. 2021) ("status as a nonphysician does not undermine his conviction").

I am instructing you that amphetamine-dextroamphetamine, commonly called Adderall, as well as mixed amphetamine salts and amphetamine salt combos, are controlled substances.[10]

The defendants are charged in Counts Two through Five with distribution of controlled substances. Each count relates to a specific prescription or set of prescriptions issued on specific dates. For each count, the government must prove each of the following elements beyond a reasonable doubt:[11]

First, the defendant knowingly or intentionally distributed the controlled substance specified in the count on the date specified;

Second, the defendant knew that it was the controlled substance specified in the count or some other federally controlled substance;

Third, the defendant knowingly or intentionally distributed the substance either without a legitimate purpose, or outside the usual course of professional practice, or both.

It is not enough for the United States to prove that a practitioner committed malpractice, intentional or otherwise.

The term "intentionally" means that the act was done deliberately.

To prove that a defendant "knowingly" distributed Adderall, mixed amphetamine salts, or amphetamine salt combos, it is not necessary that the defendant knew the substance was Adderall, mixed amphetamine salts or amphetamine salt combos. It is enough that the defendant knew that it was a type of controlled substance. Further, the defendant did not have to know how much Adderall, mixed amphetamine salts or amphetamine salt combos s/he distributed. It is enough that the defendant knew that s/he distributed some quantity of a controlled substance.

---

[10] This language is from *United States v. Lubetsky*, No. 1:21-cr-20485-DMM-1, Dkt. 54 (S.D. Fla. Nov. 4, 2022), *affirmed* 2024 WL 577543 (11th Cir. Feb. 13, 2024).

[11] The following elements track recent jury instructions provided in this district. *See*, *e.g.*, *United States v. Siao*, No. 5:21-CR-267-BLF, Dkt. 94 (N.D. Cal. June 20, 2023); *United States v. Keller*, No. 3:18-CR-462-VC, Dkt. 506 (N.D. Cal. Oct. 31, 2022); *United States v. Napoli*, No. 3:10-CR-642-CRB, Dkt. 1056 (N.D. Cal. Nov. 9, 2012).

**GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED DISTRIBUTION OF A CONTROLLED SUBSTANCES INSTRUCTION:** For clarity, the government has included its authorities as footnotes corresponding to the relevant language at issue above. The government objects to the alternative instruction proposed by Defendant He, for substantially the reasons contained in the government's arguments in support of its proposed instructions regarding Conspiracy to Distribute Controlled Substances and in opposition to Defendant He's proposed instruction regarding the Controlled Substances Act.

Furthermore, the government's proposed instruction on the substantive distribution counts goes even further to address concerns raised in *Feingold*, 454 F.3d at 1009–13, by adopting this Court's prior instruction in *Napoli* and *FedEx* that "It is not enough for the United States to prove that a practitioner committed malpractice, intentional or otherwise." The government's proposed instruction also clarifies that the government's aiding and abetting theory covers both 18 U.S.C. § 2(a) or 2(b), which Defendant He's proposed instruction does not.

1   **DISTRIBUTION OF A CONTROLLED SUBSTANCE (COUNTS TWO THROUGH FIVE,**

2   **AND OBJECT OF COUNT ONE) (21 U.S.C. § 841(a), (b)(1)(C)) (Disputed; Defense Version)**

3       Ms. He and Dr. Brody are charged in Counts Two through Five of the Indictment with

4   distributing Schedule II controlled substances in violation of Section 841(a)(1) of Title 21 of the United

5   States Code.  In order for Ms. He or Dr. Brody to be found guilty of that charge, the Government must

6   prove each of the following elements beyond a reasonable doubt as to that particular Defendant:

7       First, the Defendant knowingly distributed the controlled substance listed below on or about the

8   dates listed below:

| Count | Date | Patient | Prescriber | Controlled Substance |
|---|---|---|---|---|
| Two | October 14, 2020 | H.B. | Prescriber 1 | Mixed Amphetamine Salts ER 20 mg. capsule |
| Three | July 27, 2022 | T.T. | Brody | Dextroamphetamine-Amphetamine ER 10 mg. capsule |
| Four | June 18, 2021 | V.S. | Brody | Amphetamine Salt Combo 30 mg. tablet |
| Five | October 7, 2022 | N.C. | Prescriber 2 | Amphetamine Salt Combo 20 mg. tablet, |

19       Second, the Defendant knew that it was a controlled substance or some other prohibited drug;

21       Third,  the distribution was made by means of a prescription issued by a physician or nurse-

22   practitioner not for a legitimate medical purpose and not in the usual course professional practice; and

23       Fourth, the Defendant knew and intended that the distribution be made by means of a

24   prescription issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in

25   the usual course of professional practice.

26       It does not matter whether the defendant knew that the substance was a Schedule II controlled

28   substance.  It is sufficient that the defendant knew that it was some kind of a prohibited drug.

*As I previously instructed you in connection with the Controlled Substances Act instruction, for purposes of the Third element described above ("Third,  the distribution was made by means of a prescription issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course professional practice"), it is not enough for the Government to prove that a physician or nurse-practitioner committed malpractice, intentional or otherwise.  Likewise, it is not enough for the Government to prove that a physician or nurse-practitioner is a bad or reckless provider, engages in the idiosyncratic practice of medicine, or fails to conform their conduct to what their fellow doctors or nurse practitioners would view as medical care.*

*Rather, the Government must prove that the physician or nurse-practitioner used their prescription-writing powers as a means to engage in illicit drug dealing and trafficking.  A physician or nurse-practitioner engages in illicit drug dealing and trafficking when they knowingly or intentionally issue a prescription to facilitate addiction or recreational abuse, rather than for a medical purpose.*

Further, Ms. He is not a medical provider or nurse-practitioner, and did not issue any prescription for stimulant medication. Thus, you may not find Ms. He guilty of Counts Two, Three, Four, and/or Five unless you find:

(1) that she is (a) guilty of the conspiracy charged in Count One, **and** that (b) the Government has proved each of the elements in the separate instruction for co-conspirator liability ("*Pinkerton* Charge") beyond a reasonable doubt; or

(2) that the Government has proved each of the elements in the separate instruction for aiding and abetting beyond a reasonable doubt.

I will read the co-conspirator liability instruction ("*Pinkerton* Charge") next, and the aiding and abetting instruction thereafter.

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED**

2    **MODIFICATIONS TO DISTRIBUTION OF A CONTROLLED SUBSTANCE INSTRUCTION**:

3    Defendant He's articulation of the elements of the substantive counts, coupled with the "Controlled

4    Substances Act" instruction also proposed, is a better means of conveying the law than the instruction

5    proposed by the Government.  Indeed, the articulation of each of the elements of the offense—along

6    with the instruction that "it does not matter whether the defendant knew that the substance was a

7    Schedule II controlled substance.  It is sufficient that the defendant knew that it was some kind of a

8    prohibited drug"—are pulled directly from Your Honor's instructions in *Napoli*, Dkt. No. 1056 at 27-

9    28 and the Government's proposed jury instructions in *FedEx,* Dkt. No. 277 at 28-29.

10          The italicized language set forth below the discussion of the elements reaffirms the law in the

11   Controlled Substances Act instruction, proposed by Defendant He above, and is based on the authorities

12   described by Defendant He in connection with that proposed instruction.

13          The final underlined paragraphs of the proposed instruction, starting at "Ms. He is not a medical

14   provider or nurse-practitioner" through the end is intended to clarify for the jury that unlike Dr. Brody,

15   Ms. He's status as a non-prescriber means that she can only be convicted of Counts Two through Five

16   based on accomplice liability principles, namely, (1) as an aider or abettor or (2) pursuant to the Court's

17   *Pinkerton* charge, if and only if the jury separately convicts her on Count One.

18          As this will not be evident to the jury without explicit instruction from the Court, Defendant He

19   believes that the additional proposed language is necessary.

20

21

22

23

24

25

26

27

28

**CONTROLLED SUBSTANCES ACT (Disputed; Defense Version)**

The Controlled Substances Act makes it unlawful for any person knowingly or intentionally to distribute or dispense a controlled substance or to conspire to do so.  Medical professionals registered with the Attorney General, such as physicians and nurse-practitioners, are excepted from this general prohibition as long as they comply with the legal requirements of their registration. In these instructions, the term "practitioner" means such an individual licensed or registered to dispense a controlled substance in the usual course of professional practice.

Non-practitioners may also be held accountable for violations of the Controlled Substances Act if they conspire with practitioners such as doctors or nurse-practitioner to unlawfully distribute controlled substances, or aid and abet practitioners in the unlawful distribution of controlled substances.

In this case, it is not enough for the Government to prove that a physician or nurse-practitioner committed malpractice, intentional or otherwise.  *Likewise, it is not enough for the Government to prove that a physician or nurse-practitioner is a bad or a reckless provider, engages in the idiosyncratic practice of medicine, or fails to conform their conduct to what their fellow doctors or nurse-practitioners would view as medical care.*

Rather, *to demonstrate that a doctor or nurse practitioner unlawfully distributed controlled substances*, the Government must prove that the physician or nurse-practitioner used their prescription-writing powers as a means to engage in illicit drug dealing and trafficking.  *A physician or nurse-practitioner engages in illicit drug dealing and trafficking when they knowingly or intentionally issue a prescription to facilitate addiction or recreational abuse, rather than for a medical purpose.*

*The Government must also prove beyond a reasonable doubt each of the specific elements set forth in the instructions I will read to you shortly for Counts One through Five as to Ms. He and Dr. Brody.*

1  __DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED CONTROLLED__

2  __SUBSTANCES ACT INSTRUCTION__:  The non-italicized sentences of this proposed instruction are

3  pulled directly from this Court's instructions in *Napoli*.  *See Napoli*, Dkt. No. 1056.  Moreover, in

4  *FedEx*, the *Government* proposed the *Napoli* instruction verbatim.   *See United States v. FedEx, et. al.*,

5  No. 3:14-cr-00380-CRB, Dkt. No. 277 (N.D. Cal.) (Breyer, J.) ("U.S. Proposed Jury Instructions") at

6  18 (citing *Napoli*).

7         The two additional proposed italicized sentences are supported by *Ruan*'s majority and

8  concurring opinions.  *See Ruan v. United States*, 597 U.S. 450, 479 (2022) (evidence of a doctor's

9  "idiosyncratic views about their prescribing authority" does not absolve the Government of its "burden"

10 to prove that a "defendant knew or intended that his or her conduct was unauthorized"); *id.* at 465

11 (evidence that a doctor failed to make an "objectively reasonable good-faith effort" to "conform [their]

12 conduct to something that [their] fellow doctors would view as medical care" does not absolve the

13 Government of its burden to prove that a defendant knew or intended that his or her conduct was

14 unauthorized); *id.* at  479 ("A doctor who makes negligent or even reckless mistakes in prescribing

15 drugs is still 'acting as a doctor'—he or she is simply acting as a *bad doctor*. The same cannot be said,

16 however, when a doctor *knowingly or purposefully issues a prescription to facilitate* 'addiction and

17 *recreational abuse*.' Objectives of that kind are alien to medical practice, and a doctor who prescribes

18 drugs for those purposes is not acting as a physician' in any meaningful sense.") (quoting *Gonzales v.

19 Oregon*, 546 U.S. 243, 274 (2006)) (Alito, J. concurring) (emphasis added); *see also id.* ("A doctor who

20 knows that he or she is acting for a purpose foreign to medicine—*such as facilitating addiction or

21 recreational drug abuse*—is not protected by the CSA's authorization to distribute controlled

22 substances by prescription. Such doctors may be convicted of unlawfully distributing or dispensing a

23 controlled substance under § 841(a)(1).") (Alito, J. concurring) (emphasis added).

24        The proposed italicized language in the final paragraph is also supported by Ninth Circuit

25 authority.  *See United States v. Feingold*, 454 F.3d 1001, 1006, 1008-09 (9th Cir. 2006) ("Simply put,

26 to convict a practitioner under § 841(a) . . .the jury must make a finding of intent not merely with

27 respect to distribution, but also with respect to the doctor's *intent to act as a pusher rather than a

28 medical professional*.") (emphasis added); *see also id.* at 1007 (the jury must "determine whether a

practitioner has acted not as a doctor, or even as a *bad* doctor, but as a 'pusher' whose conduct is without a legitimate medical justification") (emphasis in original); *id.* at 1011 ("[A] jury must find that a doctor has intentionally prescribed controlled substances for no legitimate medical purpose. A practitioner becomes a criminal not when he is a *bad* or *negligent* physician, but when he ceases to be a physician *at all.*) (emphasis in original).

1  **GOVERNMENT'S AUTHORITY AND ARGUMENT AGAINST DEFENDANT HE'S**
2  **PROPOSED CONTROLLED SUBSTANCES ACT INSTRUCTION**:

3  **I.    THE PROPOSED INSTRUCTION IMPROPERLY ADDS ELEMENTS NOT**
4  **REQUIRED BY LAW**

5  **A. The "Illicit Drug Dealing and Trafficking" Standard Has No Legal Basis**

6  Defendant's instruction requires the Government to prove that a physician "used their
7  prescription-writing powers as a means to engage in illicit drug dealing and trafficking."  This standard
8  appears nowhere in 21 U.S.C. § 841(a), the applicable regulations, or controlling precedent.  The
9  Supreme Court in *Ruan* made clear that the statute simply requires proof that controlled substances
10 were distributed "except as authorized," not that the defendant engaged in "drug dealing and
11 trafficking."  Defendant's formulation improperly transforms a straightforward authorization analysis
12 into a requirement to prove the Defendant was essentially operating as a drug trafficker, which is not a
13 requirement that the Government is required to prove in order for the jury to convict.

14 **B. The Instruction Conflates Different Standards of Unauthorized Conduct**

15 The proposed instruction suggests that unauthorized prescribing occurs only when a physician
16 "knowingly or intentionally issue[s] a prescription to facilitate addiction or recreational abuse."  This
17 erroneously limits criminal liability to cases involving intentional facilitation of abuse, ignoring that
18 prescriptions can be unauthorized for numerous other reasons — including intentionally prescribing
19 outside professional practice standards in order to make money, making inaccurate diagnoses, or
20 issuing a prescription without conducting any assessment to establish a legitimate medical purpose.

21 **II.    THE INSTRUCTION MISCHARACTERIZES NINTH CIRCUIT PRECEDENT**

22 **A. *Feingold* Does Not Require Proof of "Drug Dealing"**

23 While Defendant correctly quotes *Feingold*'s language about acting as a "pusher," this language
24 was used metaphorically to distinguish criminal conduct from mere malpractice, not to establish "drug
25 dealing" as a separate element.  *Feingold* did not hold that the government was required to prove "illicit
26 drug dealing."  Specifically, the Ninth Circuit grappled in *Feingold* with the very question that the
27 Supreme Court ultimately answered in *Ruan*—how to distinguish mere civil malpractice liability from
28 criminal liability—and predicted the outcome in part by requiring a *mens rea* requirement for what

1    makes the distribution unauthorized. *Feingold*, 454 F.3d at 1007–13. The Court held that requiring

2    juries to find that the defendant acted "*with intent to distribute [prescriptions] outside the course of*

3    *professional practice*" would safeguard against mere civil malpractice being criminalized. *Id.* at 1008.

4    The Court also held that requiring "without a legitimate medical purpose" provided another safeguard.

5    *Id.* at 1009–13. The Court emphasized the need to distinguish a conviction under § 841 from "a finding

6    that [a physician] has committed malpractice." *Id.* at 1010. And the Court found that the instructions

7    given there had sufficiently done so. *Id.* at 1012.

8          Notably, the instructions reviewed by the Ninth Circuit in *Feingold* did not include any of the

9    language that defense is now proposing. *See id.* at 1006. And, as explained above, *Feingold* analyzed

10   one set of instructions and found them sufficient, but did not assert that was the *only* interpretation that

11   aligned with the statutory and regulatory requirements. No Ninth Circuit case has squarely addressed

12   whether the disjunctive—in combination with a *mens rea* requirement as required by *Ruan*—suffices,

13   but other Circuits have done so and affirmed such instructions.

14         **B. *Feingold*'s Concerns Have Been Addressed by *Ruan***

15         *Feingold*'s emphasis on distinguishing criminal liability from malpractice was driven by pre-

16   *Ruan* concerns about objective liability standards. The court worried that without adequate *mens rea*

17   requirements, physicians could be convicted based on "malpractice, intentional or otherwise," as there

18   was no controlling Supreme Court precedent in this area. *Ruan* has now resolved this concern by

19   establishing that the Government must prove defendants "knowingly or intentionally acted in an

20   unauthorized manner." With *Ruan*'s express subjective *mens rea* requirement, the risk of conviction

21   based on objective professional standards—*Feingold*'s core concern—has been eliminated.

22         Furthermore, the government's proposed instruction on the substantive distribution counts goes

23   even further to address concerns raised in *Feingold*, 454 F.3d at 1009–13, by adopting this Court's prior

24   instruction in *Napoli* and *FedEx* that "It is not enough for the United States to prove that a practitioner

25   committed malpractice, intentional or otherwise."

26

27

28

                                              69

1    III.    **THE INSTRUCTION MISAPPLIES *RUAN* BY RELYING ON JUSTICE ALITO'S**

2            **CONCURRENCE**

3            The majority opinion in *Ruan* closely tracked the authorization standard, which remains whether

4    prescriptions were issued "for a legitimate medical purpose by an individual practitioner acting in the

5    usual course of his professional practice." 21 C.F.R. § 1306.04(a). Defendant relies on Justice Alito's

6    concurrence discussing prescriptions "to facilitate addiction and recreational abuse," but this language

7    described one example of unauthorized conduct, not an exclusive test. Justice Alito's concurrence

8    advocated for a good-faith defense that was not adopted by the majority and, in any event, does not

9    even on its own terms support limiting criminal liability only to cases involving intentional facilitation

10    of drug abuse.

11    IV.    **THE PROPOSED INSTRUCTION WOULD CREATE AN IMPERMISSIBLE SAFE**

12            **HARBOR**

13            Defendant's instruction would allow physicians to escape liability even when they knowingly

14    prescribe outside professional practice standards, so long as they can claim some medical

15    justification—no matter how pretextual. This would frustrate Congress's intent to prevent drug

16    diversion while permitting obviously inappropriate prescribing to proceed unpunished.

17    V.    **ALTERNATIVE INSTRUCTION**

18            The government does not believe that any additional instruction is necessary here as these issues

19    are addressed sufficiently in the standard instructions. However, to the extent that the Court is inclined

20    to give an instruction, it should instead adopt an instruction that reflects the actual legal standard:

21    "A prescription is authorized under the Controlled Substances Act when it is issued for a legitimate

22    medical purpose by an individual practitioner acting in the usual course of professional practice. The

23    Government must prove beyond a reasonable doubt that the defendants knew or intended that the

24    prescribing was unauthorized—that is, that the defendant knew or intended that the prescriptions were

25    either not for a legitimate medical purpose or not issued in the usual course of professional practice, or

26    both. It is not sufficient for the Government to prove mere malpractice or negligent prescribing.

27    However, the Government need not prove that the defendant was engaged in 'drug dealing' or that

28

70

prescriptions were issued solely to facilitate addiction or recreational abuse." *See supra* Government's

Authority and Argument Against Defendant He's Proposed Controlled Substances Act Instruction.

1    **MODEL GUIDELINES, STATE LAWS, AND REGULATIONS (Disputed; Government**

2    **Version)**

3          You have heard evidence of various model guidelines, regulations and state laws that were in

4    effect when the conduct charged in the indictment is alleged to have occurred.  The defendants are

5    charged with violating federal, not state, law; however, whether a practitioner is acting within the usual

6    course of professional practice may be informed by the model guidelines, state laws, and regulations

7    that govern these professions.  Therefore, you may consider the model guidelines, state law, and

8    regulations, along with all other evidence, when determining whether or not the practitioners in this

9    case prescribed or distributed controlled substances other than for a legitimate medical purpose and not

10   in the usual course of professional practice.  In assessing the usual course of professional practice you

11   may give the model guidelines, state laws and regulations whatever weight you deem appropriate.

1   **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED MODEL**

2   **GUIDELINES INSTRUCTION:**  The above language was used in *United States v. Napoli*, No. 3:10-

3   CR-642-CRB, Dkt. 1056 (N.D. Cal. Nov. 9, 2012), *affirmed United States v. Carozza*, 608 F. App'x

4   532, 536 (9th Cir. 2015).

1   **DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST GOVERNMENT'S**

2   **PROPOSED MODEL GUIDELINES INSTRUCTION:**  Defendant He does not agree that this

3   instruction will be helpful to the jury because, as the jury will hear at trial, there are no "model

4   guidelines, regulations and state laws" that mandate how ADHD is to be diagnosed or treated in adults.

5   This instruction is likely to only confuse and mislead the jury.

### 4.1 AIDING AND ABETTING (18 U.S.C. § 2(a)) (Disputed; Government Version)

A defendant may be found guilty of distributing controlled substances as charged in Counts Two through Five of the Indictment even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime. To prove a defendant guilty of distributing controlled substances by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

First, someone else committed the conduct charged in Counts Two, Three, Four, and/or Five of the Indictment;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of Counts Two, Three, Four, and/or Five of the Indictment;

Third, the defendant acted with the intent to facilitate Counts Two, Three Four, and/or Five of the Superseding Indictment; and

Fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit Counts Two, Three, Four, and/or Five of the Indictment.

A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime.

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

75

1  **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED AIDING AND**

2  **ABETTING INSTRUCTION:**  Ninth Circuit Model Criminal Jury Instruction 4.1

3      As Defendant He concedes, the government's proposed instruction tracks the Ninth Circuit's

4  model instructions.  The Court should follow the standard instructions, which are fully applicable

5  without need for deviation.

6      Critically, the Court should reject Defendant He's argumentative insertion of an entire

7  paragraph setting forth her theory of the case.  *See* italicized insertion in Defendant's proposed

8  instruction (beginning "*The fact that Ms. He and/or Dr. Brody could have adopted measures to reduce*

9  *unlawful activity by bad actors on the Done platform, but did not, is not sufficient to find that either*

10 *Defendant constitutes an aider and abettor for Counts Two through Five.*").  Defendant He's proposed

11 insert lacks any basis in prior jury charges, and instead relies on an inapt citation to *Smith & Wesson*

12 *Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025).  But Defendant He's argument relies

13 on the strained analogy that the relationship between Defendant He and Done's providers is even

14 remotely comparable to the relationship between the federal government of Mexico and independent,

15 third party firearm manufacturers like Smith & Wesson.  That is patently untrue.  Defendant He was the

16 CEO of Done, and Done contracted with providers to prescribe controlled substances to Done

17 subscribers.  This relationship is far more direct than the one at issue in *Smith & Wesson*, where Mexico

18 attempted to hold gun manufacturers liable for sales to middlemen distributors, who in turn sold

19 firearms to rogue gun dealers, who in turn sold guns to criminal traffickers.  *See id.* at 295–96.

20      If anything, the Supreme Court made clear that Defendant He's proposed theory is affirmatively

21 *inappropriate*.  In rejecting Mexico's claim, the Supreme Court cited its prior decision in *Direct Sales*

22 *Co. v. United States*, 319 U.S. 703 (1943), as an example of a circumstance where an aiding and

23 abetting theory was justified.  The Supreme Court described *Direct Sales* as a case in which "a mail-

24 order pharmacy could be convicted for assisting a small-town doctor's illegal distribution of narcotics"

25 where the pharmacy "actively stimulated" the doctor's narcotics purchases "by giving him special

26 discounts for his most massive orders and using 'high-pressure sales methods'" to induce his purchases

27 of narcotics, "all [] against the backdrop of law enforcement warnings" that the pharmacy was sourcing

28 lawbreaking doctors.  *Smith & Wesson*, 605 U.S. at 292–93.

The government's theory is even more direct than the one approved in *Direct Sales*. The government is not proceeding on a theory of nonfeasance, i.e. that Defendants simply failed to stop bad providers. The government has always alleged that Defendants intentionally encouraged Done providers' wrongful prescribing practices, including through incentives comparable to the "special discounts" and restrictive policies comparable to the "high-pressure sales-methods" in *Direct Sales*. *See, e.g.*, Indictment (ECF No. 1) ¶ 62 (Defendants "hired Done Prescribers who they believed were not overly concerned about drug-seeking patients and willing to prescribe Adderall and other stimulants at an initial telemedicine encounter."); ¶ 66 (Defendants "and others paid and caused lucrative payments to be made to Done Prescribers to cause them to sign prescriptions that were not for a legitimate medical purpose in the usual course of professional practice."); ¶ 67 (Defendants "pressured Done Prescribers and caused them to prescribe Adderall and other stimulants that were not for a legitimate medical purpose in the usual course of professional practice"); *see also*, e.g. ¶¶ 68–70 (noting other ways in which Defendants "caused Done Prescribers to write prescriptions that were not for a legitimate medical purpose in the usual course of professional practice"). Failure to discipline or regulate wrongful providers is relevant not as nonfeasance, but as a complement to Defendants' intentional steps to hire and reward wrongful providers. Defendant He's proposed instruction lacks a basis in fact and would simply mislead the jury.

With respect to the remainder of the instruction, Defendant He's proposed deletion of the standard instruction that the government "is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted" the crime also risks providing the jury with a mistaken impression about what the government must prove on an aiding and abetting theory. Defendant He provides no basis to deviate from the tried-and-true standard instruction, and her proposed deletion should likewise be rejected.

Finally, the remainder of Defendant He's underlined additions are unnecessary and duplicative, as there are separate instructions regarding the standard for drug distribution in this context. Repeating the ultimate language that the Court decides upon for that standard here will only waste time and unduly lengthen the jury charge.

**4.1 AIDING AND ABETTING (18 U.S.C. § 2(a)) (Disputed; Defense Version) (Strikethrough and All Underlined Text, Including Italicized Underlined Text, Reflects Proposed Modifications by Defendant He)**

A defendant may be found guilty of distributing controlled substances as charged in Counts Two through Five of the Indictment even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime.

In order for Ms. He or Dr. Brody to be found guilty of distributing controlled substances by aiding and abetting, the Government must prove each of the following beyond a reasonable doubt as to that particular Defendant.

First, ~~someone else~~ a physician or nurse-practitioner committed the drug trafficking crimes of distributing a Schedule II controlled substance by means of a prescription knowingly or intentionally issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course professional practice ~~conduct~~ charged in Counts Two, Three, Four, and/or Five of the Indictment;

Second, the Defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that ~~person~~ physician or nurse-practitioner with respect to at least one element of Counts Two, Three, Four, and/or Five of the Indictment;

Third, the Defendant acted with the intent to facilitate the distribution of that Schedule II controlled substances by means of a prescription knowingly and intentionally issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course professional practice charged in Counts Two, Three Four, and/or Five of the ~~Superseding~~ Indictment; and

Fourth, the Defendant acted before the crime was completed.

It is not enough that the Defendant *knows of and acquiesces in the physician or nurse practitioner's illegal conduct, or* merely associated with the ~~person~~ physician or nurse-practitioner committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the

defendant acted with the knowledge and intention of helping that person commit Counts Two, Three, Four, and/or Five of the Indictment.

*The fact that Ms. He and/or Dr. Brody could have adopted measures to reduce unlawful activity by bad actors on the Done platform, but did not, is not sufficient to find that either Defendant constitutes an aider and abettor for Counts Two through Five. Neither Ms. He nor Dr. Brody can be found to have aided and abetted in a prescriber's issuance of an unauthorized prescription simply because the Defendant you are considering knew, generally, that some bad actors were engaged in prohibited practices and chose not to cut them off from the Done platform. Failure to monitor or supervise the improper practices of others is not enough. In considering whether either Defendant can be found guilty as an aider and abettor for each of Counts Two through Five, you should consider whether the conduct of Ms. He and/or Dr. Brody in connection with the prescriber who is alleged to have issued the unauthorized prescription was the same as their conduct with other prescribers using the Done platform or whether they gave special treatment to, encouraged, solicited or advised the prescribers at issue in Counts Two through Five to engage in unlawful conduct.*

Finally, in order to find that Ms. He and/or Dr. Brody acted as an aider and abettor, you must find that the Defendant you are considering actively participated in a criminal venture, as just explained, with advance knowledge of the crime—that is, with advance knowledge that the medical practitioner would write the specific prescription charged in Counts Two, Three, Four, and/or Five of the indictment knowing or intending that it would be without a legitimate medical purpose and outside the usual course of professional practice—and having acquired that knowledge when the defendant still had a realistic opportunity to withdraw from the crime.

~~The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.~~

79

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED AIDING AND**

2    **ABETTING INSTRUCTION**:  The instruction, as initially proposed by the Government, largely

3    tracks the Ninth Circuit's Model Instructions.  All underlined (but not italicized) text reflects a

4    modification sought by Defendant He in order to bring the Model Instruction closer in line with the

5    actual charges in this case, which should assist the jury and reduce confusion.  The proposed addition,

6    in the second element, of "knowingly and intentionally" and the addition, in the third element, that the

7    Government prove "the distribution of that Schedule II controlled substances by means of a prescription

8    knowingly and intentionally issued by a physician or nurse-practitioner not for a legitimate medical

9    purpose and not in the usual course professional practice" are both based on Your Honor's articulation

10   of the charged offense in *Napoli*, Dkt. No. 1056 at 27-28 and 29, and the Government's proposed jury

11   instructions in *FedEx,* Dkt. No. 277 at 28-29.

12          *Underlined and italicized* text reflects additions based on the Supreme Court's recent decision in

13   *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556 (2025), where the

14   Supreme Court articulated the high bar that is required to find aiding and abetting under 18 U.S.C. § 2.

15   In *Smith & Wesson,* the Government of Mexico ("Mexico") attempted to bring suit against American

16   gun manufacturers under the Protection of Lawful Commerce in Arms Act, which prohibited such suits,

17   except in certain circumstances, including when a plaintiff can demonstrate that a gun manufacturer has

18   aided and abetted, consistent with 18 U.S.C. § 2, in the illegal sale of guns by a gun dealer.  *Id*. at 1562-

19   65.  As evidence of the manufacturers' aiding and abetting, Mexico alleged that the manufacturers (i)

20   "supply firearms to retail dealers whom they know illegally sell [guns]" in "order to boost their own

21   profits;" (ii) have "failed to impose the kind of controls" or "common sense restraints" on their

22   distribution networks that would "prevent illegal sales" but instead "embrace a see-no-evil, hear no-

23   evil, speak-no-evil approach" to their distribution systems, which has the effect of "funnel[ing[ arms to

24   the cartels;" and (iii) make "design and marketing decisions intended to stimulate cartel members'

25   demand" for guns.  *Id.* at 1564-65.

26          The Supreme Court dismissed Mexico's complaint in its entirety, finding that it had failed to

27   even *allege* that the manufacturers "aided and abetted" illegal gun sales under 18 U.S.C. § 2.  In so

28   holding, the Supreme Court articulated what it means to "conscious[ly] and culpab[ly] participat[e] in

80

1   another's wrongdoing" as required in order to establish aiding and abetting liability under federal

2   criminal law.  *Id*.  The Supreme Court explained that "aiding and abetting usually requires misfeasance

3   rather than nonfeasance" and thus, absent an "independent duty to act," a person's "failures, omissions,

4   or inactions, even if in some sense blameworthy, will rarely support aiding and abetting liability."  *Id*. at

5   1566; *see also id*. at 1568 (explaining the difference between "assistance" in an another's unlawful act

6   and "indifference" to another's unlawful act and holding that "indifference" to unlawful activity is

7   insufficient for aiding and abetting liability.).  The Supreme Court stated, explicitly, that where a

8   defendant merely "knows that some bad actors are taking advantage of its products for criminal

9   purposes, it does not aid and abet," and "that is so, *even if* the [defendant] could adopt measures to

10  reduce their users downstream crimes" but chose not to do so.  *Id*. at 1566; *see also* 1569 (an allegation

11  that a defendant "declined to suitably regulate" the practices of those using its product, even if not what

12  a "responsible manufacturer might well impose" constitutes "passive non-feasance" or a "failure to

13  stop" others which is "rarely the stuff of aiding and abetting liability.").

14          Instead, if Mexico wanted to properly allege that the manufacturers aided and abetted in

15  unlawful gun sales, under 18 U.S.C. § 2, it needed to allege that there was "special treatment" or

16  "informed and interested cooperation, stimulation [and] instigation" on the part of the manufacturers

17  towards the "bad apple" dealers in particular.  *Id*. at 1567 (internal citations omitted).  Where a

18  manufacturer treat[s] "rouge dealers" just the same as they do law abiding ones, and on "equivalent

19  terms," there is no aiding and abetting of unlawful conduct.  *Id.* at 1567-68.   Instead, liability on an

20  aiding and abetting theory requires proof that the defendant has "joined both mind and hand" with the

21  "lawbreakers" to engage in unlawful conduct—a standard that Mexico's factual allegations could not

22  satisfy. *Id*. at 1569.

23  Given the similarities between the Government's theory of criminal wrongdoing in this case and

24  Mexico's allegations in *Smith & Wesson*, it is appropriate for the Court to more fully explain the

25  contours of aiding and abetting liability, as articulated by the Supreme Court in *Smith & Wesson*.  The

26  Model Instruction, which has not been updated since the Supreme Court's decision in *Smith & Wesson*

27  was handed down in June 2025, does not appropriately reflect the nuances of aiding and abetting law, in

28  a case like this, and the jury is entitled to hear the relevant law as *just* expressed by the Supreme Court.

81

## 4.2 AIDING AND ABETTING (18 U.S.C. § 2(b))

A defendant may be found guilty of the crime charged even if the defendant did not personally commit the act constituting the crime if the defendant willfully caused an act to be done that if directly performed by him would be an offense against the United States. A defendant who puts in motion or causes the commission of an indispensable element of the offense may be found guilty as if he had committed this element himself.

## <u>GOVERNMENT'S AUTHORITY FOR PROPOSED INSTRUCTION 4.2</u>

The government's proposed instruction is the unmodified, standard instruction drawn directly from the Ninth Circuit Manual of Model Criminal Jury Instructions. As noted above with respect to Standard Instruction 4.1, the government has charged Defendants with conspiracy to distribute controlled substances based on a variety of acts that caused Done providers to unlawfully prescribe Adderall for Done's subscribers. *See* Indictment ¶¶ 62–70 (listing several ways in which Defendant He and others "caused Done Prescribers to write prescriptions that were not for a legitimate medical purpose in the usual course of professional practice"); ¶¶ 75–76 (citing 18 U.S.C. § 2 for substantive distribution counts Two through Five). This standard instruction is not only appropriate, but necessary for the jury to fully understand the government's theories of liability in this case.

Defendant He's objection to this instruction boils down to her claim that "the act of prescribing 'not for a legitimate medical purpose' is an act solely in the control of the prescriber." That is simply argument that Defendant He can make in summation. But it is not the law, and it is no basis to refuse to give the jury a standard instruction that is directly applicable in this case.

## **DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST GOVERNMENT'S PROPOSED 4.2 AIDING AND ABETTING/WILLFULLY CAUSING INSTRUCTION:**

Defendant He objects to the Government's proposed "willful causation" instruction as inappropriate to the circumstances of this case. The willful causation statute, 18 U.S.C. § 2(b), requires the Government to prove that the defendant "willfully cause[d]" a third party (here, a prescriber) to "commit *the act criminalized by th[e] offense*."   As described in Defendant He's Proposed Instruction concerning the Controlled Substances Act, the "act" criminalized by the offense is distributing a Schedule II controlled substance by means of a prescription knowingly or intentionally issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course professional practice.  Moreover, as at least one Circuit has explained, Section 2(b) "is based on the precept that an individual with the requisite criminal intent may be held liable as a principal if he is *a cause in fact* in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediaries." *United States v. Blackmon,*  839 F.2d 900, 905 (2d Cir. 1988) (emphasis added).  Because, for example, the act of prescribing "not for a legitimate medical purpose" is an act solely in the control of the prescriber, since it is the prescriber's intention that create the distinction between a lawful  prescription and an unlawful prescription, a "willful causation" theory of liability does not make sense in this case and the Court should not give the proposed instruction.

**11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE COMMITTED BY CO-CONSPIRATOR (PINKERTON CHARGE) (COUNTS TWO THROUGH FIVE) (Disputed; Government Version)**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find a defendant guilty of distributing controlled substances as charged in Counts Two, Three, Four, and/or Five of the Indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, a co-conspirator committed the crime of distribution of controlled substances as alleged in Counts Two, Three, Four, and/or Five;

Second, the person was a member of the conspiracy charged in Count One of the Indictment;

Third, the person committed the crime of distribution of controlled substances in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offense charged in Count Two, Three, Four and/or Five was committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.


Authority:  Ninth Circuit Model Criminal Jury Instruction 11.6.  The government respectfully submits that Defendant He's proposed additions will simply waste time and risk confusing the jury.  The parties have already proposed separate instructions regarding the distribution of controlled substances, and there is no reason to repeat aspects of the legal standard in an instruction focused on explaining *Pinkerton* liability.  To the extent that Defendant He feels the draw a connection between the legal standard for the substantive distribution counts and the legal standard for *Pinkerton* liability, she can set forth her theory in her closing arguments.

**11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE COMMITTED BY CO-CONSPIRATOR (PINKERTON CHARGE) (COUNTS TWO THROUGH FIVE) (Disputed; Defense Version) (Underlined Text Reflects Defendant He's Proposed Modifications to the Government's Proposal)**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

In order for Ms. He or Dr. Brody to be found guilty of distributing controlled substances as charged in Counts Two, Three, Four, and/or Five of the Indictment under this theory of liability, the Government must prove each of the following elements beyond a reasonable doubt as to that particular Defendant. As described below, you may not consider this theory of liability as to Ms. He or Dr. Brody unless you first determine that the particular Defendant is guilty of Count One (Conspiracy to Distribute Controlled Substances) on which I have already instructed you.

First, a person named in Counts Two, Three, Four, and/or Five committed the crime of distributing Schedule II controlled substances by means of a prescription knowingly or intentionally issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course of professional practice as alleged in Counts Two, Three, Four, and/or Five;

Second, the person was a member of the conspiracy charged in Count One of the Indictment;

Third, the person committed the crime of distributing Schedule II controlled substances by means of a prescription knowingly or intentionally issued by a physician or nurse-practitioner not for a legitimate medical purpose and not in the usual course of professional practice in furtherance of the conspiracy;

Fourth, the Defendant was a member of the same conspiracy at the time the offense charged in Count Two, Three, Four and/or Five was committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

87

1   **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR MODIFICATIONS TO**

2   **CONSPIRACY-PINKERTON INSTRUCTION**:  Defendant He's proposed modifications are

3   intended to align this instruction with the actual charges in this case, rather than relying solely on

4   Model Instruction 11.6, which is aimed at any case in which a *Pinkerton* instruction will be given.  In

5   particular, where the Model Instructions instruct the Court to insert language for the "specif[ic] crime,"

6   Defendant He has proposed inserting the description of the crime of distribution of controlled

7   substances, as set forth by this Court in *Napoli*, Dkt. No. 1056, at 19 and as proposed by the

8   Government in *FedEx*, at Dkt. No. 277 as 22.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**11.1 CONSPIRACY TO COMMIT HEALTH CARE FRAUD (COUNT SIX) (Disputed;**

**Government Version)**

The defendants are charged in Count Six of the Indictment with conspiring to commit health care fraud in violation of Section 1349 of Title 18 of the United States Code. For the defendants to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or around February 2020, and ending in or around January 2023, there was an agreement between two or more persons to commit at least one crime as charged in the Superseding Indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

I have already instructed you on the law of conspiracy with respect to Count One. You should follow those instructions with respect to the conspiracy charged in Count Six as well.

<u>Authority</u>:  Ninth Circuit Model Criminal Jury Instruction 11.1.

**11.1 CONSPIRACY TO COMMIT HEALTH CARE FRAUD (COUNT SIX) (Disputed; Defense Version) (Strikethrough and All Underlined Text Reflects Defendant He's Proposed Modifications to the Government's Proposal)**

Ms. He and Dr. Brody ~~The defendants~~ are charged in Count Six of the Indictment with conspiring to commit health care fraud in violation of Section 1349 of Title 18 of the United States Code. For Ms. He or Dr. Brody ~~the defendants~~ to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt, as to each particular Defendant:

First, beginning in or around February 2020, and ending in or around January 2023, there was an agreement between the Defendant you are considering and one ~~two~~ or more persons to commit the crime of health care fraud in violation of Section 1347 of Title 18 of the United States Code. I will describe the elements of that crime shortly ~~at least one crime as charged in the Superseding Indictment~~;

The Government does not have to prove that the crime was committed in order for you to find that the Government has established this first element of this conspiracy charge; however, you must unanimously agree that the Government has proven beyond a reasonable doubt that there was an agreement between the Defendant you are considering and one or more persons to commit health care fraud in order for you to find that the first element has been satisfied.

Second, the Defendant you are considering ~~defendant~~ became a member of the conspiracy knowing that its object was to commit health care fraud in violation of Section 1347 of Title 18 of the United States Code ~~of at least one of its objects~~ and intending to help accomplish it.

I have already instructed you on the law of conspiracy with respect to Count One. You should follow those instructions with respect to the conspiracy charged in Count Six as well.

1  **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR PROPOSED CONSPIRACY TO**

2  **COMMIT HEALTH CARE FRAUD INSTRUCTION:**  The Government's proposed instruction is

3  based on Model Instruction 11.1.  The government respectfully submits that Defendant He's proposed

4  modifications to this instruction, as well as the other conspiracy instructions, are unnecessary and

5  confusing.  First, neither *Napoli* nor *FedEx* featured instructions on conspiracy to commit healthcare

6  fraud, rendering Defendant He's citations to those instructions inapposite.  Moreover, neither *FedEx*

7  nor *Napoli* featured Defendant He's proposed modifications to replace references to the defendants with

8  phrases such as "the defendant you are considering" and "as to each particular defendant."  Defendant

9  He's proposed edits would simply confuse the jury, particularly considering the parties have jointly

10  proposed standard instructions that the jury is to consider the evidence and charges against each

11  defendant separately, both in the Court's opening and final instructions.  *See* Joint Proposed Jury

12  Instructions 1.13 and 6.13.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR MODIFICATIONS TO**

2   **GOVERNMENT'S PROPOSED CONSPIRACY TO COMMIT HEALTH CARE FRAUD**

3   **INSTRUCTION:** Defendant He has proposed the modifications that are indicated in underlined text in

4   order to bring the Model Instruction into alignment with this Court's instruction on "conspiracy" as set

5   forth by this Court in *Napoli*, Dkt. No. 1056, at 19 and as proposed by the Government in *FedEx,* at

6   Dkt. No. 277 as 22.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**15.42 HEALTH CARE FRAUD (OBJECT OF COUNT SIX) (18 U.S.C. § 1347) (Disputed;**

**Government Version)**

The object of the conspiracy charged in Count Six of the indictment is health care fraud in violation of Section 1347 of Title 18 of the United States Code.  The elements of health care fraud are as follows:

First, the defendant knowingly and willfully executed or attempted to execute a scheme or plan to defraud health care benefit programs and to obtain money and property owned by, and under the custody and control of, those health care benefit programs by means of material false or fraudulent pretenses, representations, and promises;

Second, the defendant acted with the intent to defraud;

Third, Medicare, Medicaid, and the Commercial Insurers referenced in the indictment were each a health care benefit program; and

Fourth, the scheme was executed in connection with the delivery of, and payment for, health care benefits, items and services.

A "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. 18 U.S.C. § 24(b).[12]

---

[12] This definition is from the Comment to Instruction 15.42.

1   **GOVERNMENT'S AUTHORITY FOR HEALTH CARE FRAUD INSTRUCTION:**:  Ninth

2   Circuit Model Criminal Jury Instruction 15.42.  The government respectfully submits that Defendant

3   He's proposed addition is unnecessary, as this instruction directly follows the prior instruction

4   referenced.

1

2

**15.42 HEALTH CARE FRAUD (OBJECT OF COUNT SIX) (18 U.S.C. § 1347) (Disputed; Defense Version)**

3       As I just instructed you, Ms. He and Dr. Brody are charged in Count Six of the indictment with

4   conspiring commit health care fraud, in violation of Section 1349 of Title 18 of the United States Code.

5   In order to prove that Ms. He or Dr. Brody conspired to commit this offense, the Government must

6   prove beyond a reasonable doubt that the particular Defendant agreed with one or more person to

7   commit the crime of health care fraud in violation of Section 1347 of Title 18 of the United States

8   Code. The elements of health care fraud are as follows:

9       First, Ms. He and/or Dr. Brody knowingly and willfully executed or attempted to execute a

10  scheme or plan to defraud health care benefit programs and to obtain money and property owned by,

11  and under the custody and control of, those health care benefit programs by means of material false or

12  fraudulent pretenses, representations, and promises;

13      Second, Ms. He and/or Dr. Brody acted with the intent to defraud;

14      Third, Medicare, Medicaid, and the Commercial Insurers referenced in the indictment were

15  each a health care benefit program; and

16      Fourth, the scheme was executed in connection with the delivery of, and payment for, health

17  care benefits, items and services.

18      A "health care benefit program" means any public or private plan or contract, affecting

19  commerce, under which any medical benefit, item, or service is provided to any individual, and

20  includes any individual or entity who is providing a medical benefit, item, or service for which payment

21  may be made under the plan or contract. 18 U.S.C. § 24(b).[13]

22

23  Authority:  Defendant He's only deviation from the Government's proposed instruction and the Ninth

24  Circuit's Model Instructions is underlined, and is necessary to ensure jury understands that this

25  instruction pertains to the conspiracy charged in Count Six of the Indictment.  The definition of "health

26  care benefit program" is taken verbatim from the Comment to Instruction 15.42.

27

28

[13] This definition is from the Comment to Instruction 15.42.

**11.1 CONSPIRACY TO OBSTRUCT JUSTICE (COUNT SEVEN)**

**(18 U.S.C. §§ 1512(c), 1512(k)) (Disputed; Government Version)**

The defendants are charged in Count Seven of the indictment with conspiracy to obstruct justice, in violation of Section 1512(c) and Section 1512(k) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or around 2022 and ending in or around June 2024, there was an agreement between two or more persons to obstruct justice; and

Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

I have already instructed you on the law of conspiracy with respect to Counts One and Six of the indictment. You should follow those instructions with respect to the conspiracy charged in Count Seven as well.

**GOVERNMENT'S AUTHORITY AND ARGUMENT FOR OBSTRUCTION OF JUSTICE**

**INSTRUCTION:**  Ninth Circuit Model Criminal Jury Instruction 11.1.

**11.1 CONSPIRACY TO OBSTRUCT JUSTICE (COUNT SEVEN)**

**(18 U.S.C. §§ 1512(c), 1512(k)) (Disputed; Defense Version) (Strikethrough and All Underlined Text Reflects Defendant He's Proposed Modifications to the Government's Proposal))**

Ms. He and Dr. Brody ~~The defendants~~ are charged in Count Seven of the indictment with conspiracy to obstruct justice, in violation of Section 1512(c) and Section 1512(k) of Title 18 of the United States Code. For Ms. He or Dr. Brody ~~each defendant~~ to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt, as to each particular Defendant:

First, beginning in or around March 2022 and ending in or around June 2024, there was an agreement between the Defendant you are considering and one ~~two~~ or more persons to  commit the crime of obstruction of justice in violation of Section 1512(c) of Title 18 of the United States Code.  I will describe the elements of that crime shortly. ~~obstruct justice; and~~

The Government does not have to prove that the crime was committed in order for you to find that the Government has established this first element of this conspiracy charge; however, you must unanimously agree that the Government has proven beyond a reasonable doubt that there was an agreement between the Defendant you are considering and one or more persons to commit the crime of obstruction of justice in order for you to find that the first element has been satisfied.

Second, the Defendant you are considering ~~the defendant~~ joined in the agreement knowing that its object was to commit the crime of obstruction of justice and corruptly ~~of its purpose~~ and intending to help accomplish that purpose.

I have already instructed you on the law of conspiracy with respect to Counts One and Six of the indictment.  You should follow those instructions with respect to the conspiracy charged in Count Seven as well.

98

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED CONSPIRACY**

2    **TO OBSTRUCT JUSTICE INSTRUCTION:**  The Government's proposed instruction is based on

3    Model Instruction 11.1.  Defendant He has proposed the modifications that are indicated in underlined

4    text in order to bring the Model Instruction into alignment with this Court's instruction on "conspiracy"

5    as set forth by this Court in *Napoli*, Dkt. No. 1056, at 19 and as proposed by the Government in *FedEx,*

6    at Dkt. No. 277 as 22 (although this instruction was not ultimately given because the case proceeded

7    without a jury trial).   Your Honor's instruction is more specific and less vague than the instruction

8    proposed by the Government and therefore will be more useful to the jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **GOVERNMENT'S AUTHORITY FOR AND OPPOSITION TO DEFENDANT'S**

2  **CONSPIRACY TO OBSTRUCT JUSTICE INSTRUCTION:** The government respectfully submits

3  that the standard instruction is appropriate here, and Defendant He's proposed modifications would

4  confuse the jury by misstating the law.  Specifically, Defendant He proposes that the instruction be

5  modified to state that the defendant must have "joined in the agreement knowing <u>that its object was to</u>

6  <u>commit the crime of obstruction of justice and corruptly</u> intending to help accomplish that purpose."

7  The requirement that a defendant act "corruptly" applies to the object of the conspiracy under Section

8  1512(c), rather than the elements of the Section 1512(k) conspiracy itself.  Neither *Napoli* nor *FedEx*

9  featured an instruction of conspiracy to obstruct justice, rendering Defendant He's citations to those

10  examples inapposite as well.  And as noted above with respect to the proposed instruction for

11  conspiracy to commit health care fraud, neither *Napoli* nor *FedEx* featured Defendant He's proposed

12  modifications to replace references to defendants with phrases such as "each particular defendant" and

13  "the defendant you are considering."  As explained above, these proposed modifications would simply

14  confuse the jury and are unnecessary in light of the multiple, undisputed standard instructions informing

15  the jury of its duty to consider the evidence and charges against each defendant separately.

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBSTRUCTION OF JUSTICE (OBJECT OF COUNT SEVEN) (Disputed; Government Version)**

The object of the conspiracy charged in Count Seven of the indictment is obstruction of justice, in violation of Section 1512(c) of Title 18 of the United States Code.  Section 1512(c) provides that a defendant may obstruct justice in two different ways, as set forth in Subsections (c)(1) and (c)(2).  The elements of obstruction of justice under Subsection (c)(1) are as follows:

First, that the defendant altered or destroyed or mutilated or concealed any record, document or tangible object, or attempted to do so, as alleged in the Indictment;

Second, the defendant acted with the intent to impair the object's integrity or availability in an official proceeding; and

Third, that the defendant acted corruptly.

The elements of obstruction of justice under Subsection (c)(2) are as follows:

First, that the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so, by means other than those specified in Subsection (c)(1).  These other means include impairing the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1), as well as impairing the availability or integrity of other things used in an official proceeding beyond the records, documents, or objects enumerated in (c)(1), such as witness testimony or intangible information.  For example, it is possible to violate Subsection (c)(2) by creating false evidence or altering incriminating evidence;

Second, the defendant acted with the intent to impair the object's integrity or availability in an official proceeding; and

Third, that the defendant acted corruptly.

Authority;  Adapted from 2 Modern Federal Jury Instructions, Instructions 46-64 and 46-69; Ninth Circuit Model Criminal Jury Instructions 19.5; *Fischer v. United States*, 603 U.S. 480, 490–91 (2024).

**OBSTRUCTION OF JUSTICE (OBJECT OF COUNT SEVEN) (Disputed; Defense Version)**

**(Strikethrough and All Underlined Text Reflects Defendant He's Proposed Modifications to the**

**Government's Proposal)**

The object of the conspiracy charged in Count Seven of the indictment is obstruction of justice, in violation of Section 1512(c) of Title 18 of the United States Code.  Section 1512(c) provides that a defendant may obstruct justice in two different ways, as set forth in Subsections (c)(1) and (c)(2).  The elements of obstruction of justice under Subsection (c)(1) are as follows:

First, that the defendant obstructed, influenced or impeded an official proceeding, here, the federal criminal grand jury investigation in the Northern District of California, by altering, destroying, mutilating, or concealing altered or destroyed or mutilated or concealed any record, document or tangible object, or attempted to do so, as alleged in the Indictment;

Second, the defendant acted with the intent to impair the object's integrity or availability in an the official proceeding, here the grand jury investigation I just described; and

Third, that the defendant acted corruptly, which I will define for you separately.

The elements of obstruction of justice under Subsection (c)(2) are as follows:

First, that the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so, by otherwise impairing the availability or integrity of records, documents, objects or other things used by the federal criminal grand jury in its investigation by means other than those specified in Subsection (c)(1), by means other than those specified in Subsection (c)(1).  These other means include impairing the availability or integrity of records, documents, or objects used in an official proceeding in ways other than those specified in (c)(1), as well as impairing the availability or integrity of other things used in an official proceeding beyond the records, documents, or objects enumerated in (c)(1), such as witness testimony or intangible information.  For example, it is possible to violate Subsection (c)(2) by creating false evidence or altering incriminating evidence.

Second, the defendant acted with the intent to impair the object's integrity or availability in in an the official proceeding, here the grand jury investigation; and

1    Third, that the defendant acted corruptly;.[14]

2    <u>Fourth, that the defendant knew or should have known that grand jury investigation was pending</u>

3    <u>or likely to be instituted when she or he engaged in the obstructive conduct.</u>

4    <u>The Government must show a nexus between the obstructive act and the grand jury</u>

5    <u>investigation.  In other words, the government must show that the defendant had knowledge that his</u>

6    <u>actions were likely to affect the grand jury investigation in order to have the requisite intent to obstruct.</u>

7    <u>If you find that the defendant only engaged in lawful, bona fide, activities in connection with or</u>

8    <u>in anticipation of the grand jury investigation, in relation to this Count, you must find the defendant not</u>

9    <u>guilty of this crime.</u>

---

[14] Adapted from 2 Modern Federal Jury Instructions, Instructions 46-64 and 46-69; Ninth Circuit Model Criminal Jury Instructions 19.5; *Fischer v. United States*, 603 U.S. 480, 490–91 (2024).

1  **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED OBSTRUCTION**

2  **OF JUSTICE INSTRUCTION**: The Ninth Circuit does not have a model instruction on this offense,

3  *see* Comment to Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit

4  (2025), Instruction No. 19.5, and the Government's proposed instruction lacks important elements of the

5  offense or misstates the law in several key respects. The underlined text reflects Defendant He's proposed

6  modifications, which are intended to ensure that the instruction reflects Ninth Circuit authority and the

7  Supreme Court's decision in *Fischer v. United States*, 603 U.S. 480, 490–91 (2024).

8     First, because the "official proceeding" here is the grand jury's investigation, an instruction that

9  specifically refers to that investigation rather than the non-specific term "official proceeding" ensures

10  that the jury is not mistaken about which proceeding is at issue. Second, the Government's proposed

11  instruction with respect to Subsection (c)(2) is too broad, because it suggests, through the use of the word

12  "include" that impairing the "availability or integrity of records, documents, or objects" or "other things"

13  used by the grand jury is one of several ways that a defendant can violate Subsection (c)(2), when in fact,

14  under *Fisher*, those are the *only* ways in which the statute can be violated. *See* 603 U.S. 480, 490-92

15  (2024) (holding that even under Section 1512(c)'s broader clause—subsection (c)(2)—the statute reaches

16  only "forms of evidence" and those "means of impairing [that evidence]'s integrity or availability" in the

17  official proceeding alleged to have been obstructed which go "beyond" the methods already specified in

18  subsection (c)(1), namely, "alter[ing], destroy[ing], "mutilat[ing] or "conceal[ing]" a "record, document

19  or other object."). Given that Defendant He anticipates that the Government is likely to present evidence

20  of actions that it will argue are "obstructionist" but which did not impair the availability or integrity" of

21  "evidence" "used" in the "grand jury investigation," it is especially important that the instructions in this

22  case describe the boundaries of Section 15(c). Furthermore, there is no need for the Government's

23  proposed "example"—the Government does not propose "examples" elsewhere in its instructions, nor do

24  the Model Instructions, and it is up to the jury to decide what specific conduct constitutes impairment of

25  the "availability or integrity of records, documents, or objects" or "other things" used by the grand jury.

26     Finally, the Government's proposed instruction does not sufficiently apprise the jury of binding

27  Ninth Circuit law, including that regarding the defendant's knowledge of the existence of the grand jury

28  investigation. *United States v. Cervantes, et al.,* Case No. 4:12-cr-00792-YGR (N.D. Cal. 2016), Dkt.

No. 1437 at Instruction No. 31.17 ("In order to find an individual guilty of obstructing an official proceeding, in violation of Title 18, United States Code, Section 1512," the government must show, among other things, "a nexus between the obstructive act and the official proceeding. In other words, the government must show that the defendant had knowledge that his actions were likely to affect the official proceeding in order to have the requisite intent to obstruct."), *aff'd*, No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021); *United States v. Johnson*, No. 14-CR-00412-TEH, 2015 WL 1967239, at *4 (N.D. Cal. Apr. 30, 2015) ("The Government must still prove that Defendant foresaw, knew, or contemplated the particular proceeding that he is charged with obstructing."); *see also United States v. Colar, et al.*, Case No. 4:21-cr-00163-HSG (N.D. Cal. 2023), Dkt. No. 248 ("United States' Proposed Jury Instructions") at 69 ("First, the defendant obstructed or impeded an official proceeding, namely the grand jury investigation and criminal proceeding of the defendant. Second, the defendant did so corruptly. Third, the defendant knew or should have known that the official proceeding was pending or likely to be instituted when he engaged in the obstructive conduct.").

Likewise, Defendant He believes that an instruction similar to that issued by the Court in *United States v. Lonich, et al et al.*, Case No. 3:14-00139-SI (N.D. Cal. 2017) is appropriate here, confirming that where the defendant only engaged in "lawful, bona fide" activities, there has been no obstruction.  *See, e.g., United States v. Lonich, et al.*, Case No. 3:14-00139-SI (N.D. Cal. 2017), Dkt. No. 607 at 21 (issuing instruction on 1512(c) charge that if "you find that the defendant only provided lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding, namely, a federal criminal grand jury investigation in the Northern District of California, in relation to this Count, you must find the defendant not guilty of this crime.").

1    **GOVERNMENT'S OBJECTION TO DEFENDANT HE'S PROPOSED OBSTRUCTION OF**

2    **JUSTICE INSTRUCTION**

3          Defendant He's proposed jury instructions would delete key guidance that would help the jury

4    understand the nature of obstruction of justice under Section 1512(c)(2).  Contrary to Defendant He's

5    assertions, the government's information accurately restates the explanations provided by the Supreme

6    Court in *Fischer v. United States*, 603 U.S. 480, 490–91 (2024).  As the Supreme Court explained in

7    *Fischer*, "subsection (c)(2) makes it a crime to impair the availability or integrity of records,

8    documents, or objects used in an official proceeding in ways other than those specified in (c)(1)" and

9    "ensures that liability is still imposed for impairing the availability or integrity of *other* things used in

10   an official proceeding beyond the 'record[s], document[s], or other object[s]' enumerated in (c)(1), such

11   as witness testimony or intangible information." *Id.*  And the Supreme Court provided an example to

12   illustrate the point:  "For example, it is possible to violate (c)(2) by creating false evidence—rather than

13   altering incriminating evidence." *Id.* at 491.

14         The government's proposed instruction directly tracks *Fischer*:  "First, that the defendant

15   obstructed, influenced, or impeded an official proceeding, or attempted to do so, by means other than

16   those specified in Subsection (c)(1).  These other means include impairing the availability or integrity

17   of records, documents, or objects used in an official proceeding in ways other than those specified in

18   (c)(1), as well as impairing the availability or integrity of other things used in an official proceeding

19   beyond the records, documents, or objects enumerated in (c)(1), such as witness testimony or intangible

20   information.  For example, it is possible to violate Subsection (c)(2) by creating false evidence or

21   altering incriminating evidence."

22         Defendant He's proposed deletion would simply deprive the jury of valuable guidance on the

23   nature of obstruction under subsection (c)(2), provided by the Supreme Court itself in light of

24   ambiguity over the subsection's scope.  Indeed, the government's proposed instruction provides clarity

25   to help ensure that the jury does not convict based on a mistaken understanding of subsection (c)(2).

26   The government also respectfully submits that the proposed edits regarding the official proceeding at

27   issue are unnecessary in light of the following "official proceeding" instruction, which is dedicated to

28   explaining the official proceeding requirement for the obstruction of justice object.  That instruction

1    explicitly covers the nexus and foreseeability requirements, and adhering to the standard text of the

2    Modern Federal Jury Instructions will better inform the jury of what the law requires.

3         Finally, the government opposes Defendant He's proposed insertion of a "legal, bona fide

4    services" instruction because the facts here do not warrant it.  In *Lonich*, the court instructed jurors that

5    it must find Lonich not guilty if he "only provided lawful, bona fide, legal representation services in

6    connection with or anticipation of an official proceeding" because Lonich was a lawyer who

7    specifically told another individual what to say to a federal grand jury.  *See United States v. Lonich*,

8    Case No. 3:14-CR-139, ECF No. 395 at ¶¶ 8, 41 (allegations in Second Superseding Indictment) and

9    ECF No. 607 at 21 (jury instruction).  That instruction was accordingly appropriate to effectuate the

10   dictates of 18 U.S.C. § 1512(e), which provides that "it is an affirmative defense, as to which the

11   defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely

12   of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other

13   person to testify truthfully").  In this case, it is not clear how any of the unspecified "lawful, bona fide

14   services" by Defendant He relate to an official proceeding, or how they reflect that Defendant He's

15   "sole intention was to encourage, induce, or cause [another] person to testify truthfully."  There is no

16   factual basis for this atypical addition to the instructions, and it would only confuse the jury.

**CONSPIRACY TO OBSTRUCT JUSTICE – OFFICIAL PROCEEDING (Disputed, Government Version)**

The second element of obstruction of justice is that the defendant acted with the intent to impair the object's integrity or availability in an official proceeding.  An official proceeding means a proceeding before a judge, court, magistrate judge, grand jury, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal grand jury investigation and a federal criminal trial are official proceedings.

The law does not require that the federal proceeding be pending or about to be instituted at the time of the defendant's actions as long as the proceeding was foreseeable such that the defendant knew that his or her actions were likely to affect the proceeding. In addition, the government does not have to prove that the defendant knew that the proceeding would be before a federal grand jury or in a federal criminal court.

**Authority**: The government's proposed instruction is adapted from 2 Modern Federal Jury Instructions, Instructions 46-66 and 46-70, as well as the language of 18 U.S.C. §§ 1512(f), (g).  Defendant's objection is premised largely on her claim that this should not be a separate instruction, and that details regarding the "official proceeding" element should simply be mixed in with the preceding instruction that also defines the element of "obstruction."  Perplexingly, Defendant He nonetheless agrees with breaking out a separate instruction for the third element (that the defendant acted "corruptly").

The Modern Federal Jury Instructions logically break out instructions for each element of obstruction of justice.  Combining the instructions on the first element with the instructions on the second element (as well as Defendant He's proposed "fourth element," which is typically captured by instructions on the second element) will only serve to confuse the jury.  Instructing on each of the three elements, one at a time, is the usual and most effective way to ensure the jury understands each element.

Ultimately, the government agrees that there "is no need for protracted argument about what an official proceeding is." But the government disagrees that providing standard instructions on each element of the obstruction object will invite such protracted argument.  If Defendant He wishes to

add detail on the allegations in the indictment, the Court could simply add a sentence noting that the indictment alleges that Defendants conspired to obstruct "investigations by federal law enforcement agents and the Grand Jury."  ECF No. 1 ¶¶ 87, 89.

**DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST CONSPIRACY TO**

**OBSTRUCT JUSTICE – OFFICIAL PROCEEDING INSTRUCTION:**

Defendant He objects to a separate instruction concerning an official proceeding and believes that the formulation described in Defendant He's obstruction instruction appropriately describes the relevant law for the jury. There is no need for protracted argument about what an official proceeding is, because the official proceeding alleged to be at issue here is the grand jury's investigation and the jury can be told that directly.  The remainder of the Government's proposed objection is already encompassed in Defendant He's proposed instruction.

**CONSPIRACY TO OBSTRUCT JUSTICE – "CORRUPTLY" DEFINED (Disputed; Government Version)**

The third element of obstruction of justice is that the defendant acted corruptly. To act corruptly means to act with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or influence the due administration of justice.

1  **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR CONSPIRACY TO OBSTRUCT**

2  **JUSTICE – "CORRUPTLY" DEFINED INSTRUCTION**:  Adapted from 2 Modern Federal Jury

3  Instructions, Instructions 46-67, 46-71; Ninth Circuit Model Criminal Jury Instructions 4.12.

4          The government's instructions are drawn directly from the Modern Federal Jury instructions,

5  and Defendant He's proposed instructions would raise the government's burden in two distinct ways

6  that the law does not require.

7          *First*, Defendant He's language that the government must prove the defendants acted corruptly

8  "beyond a reasonable doubt" misstates the law.  While the government must prove beyond a reasonable

9  doubt that the defendants *conspired* to obstruct justice, the government need not prove each element of

10  the *object* of the conspiracy beyond a reasonable doubt.

11          *Second*, Defendant He's proposed language, which equates acting "corruptly" with acting "with

12  consciousness of wrongdoing," requires more than the law does.  While the Ninth Circuit has affirmed

13  the use of this formulation before, the Court explicitly stated that "if anything, the [consciousness of

14  wrongdoing] instruction place[s] a higher burden of proof on the government than section

15  1512(c) demands."  *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013).  The Ninth Circuit has

16  accordingly affirmed jury instructions that do not require this heightened standard for obstruction of

17  justice.  *See United States v. Baca*, 761 F. App'x 724, 728 (9th Cir. 2019) ("The district court properly

18  instructed the jury that in order to convict Baca for obstruction of justice, the government had to prove

19  beyond a reasonable doubt that Baca acted 'corruptly,' meaning that he knew of the federal grand jury

20  investigation and acted with an intent to obstruct it. . . . The Supreme Court's decision in *Arthur*

21  *Andersen* . . . did not require the government to prove that Baca acted with a consciousness of

22  wrongdoing or that his conduct was wrongful, immoral, depraved, or evil."); *see also, e.g.*, *Eastman v.*

23  *Thompson*, 594 F. Supp. 3d, 1156, 1191 (C.D. Cal. 2022) ("The Ninth Circuit has not defined

24  'corruptly' for purposes of this statute.  However, the court has made clear that the threshold for acting

25  'corruptly' is lower than 'consciousness of wrongdoing,' meaning a person does not need to know their

26  actions are wrong to break the law.").

27

28

1  **CONSPIRACY TO OBSTRUCT JUSTICE – "CORRUPTLY" DEFINED (Disputed; Defense**
2  **Version)**

3      The third element of obstruction of justice is that Ms. He and Dr. Brody acted corruptly.  The
4  following instruction applies to the definition of "corruptly."

5      In order to establish that Ms. He and Dr. Brody acted "corruptly," the Government must prove
6  beyond a reasonable doubt that that Ms. He and Dr. Brody (1) acted with the intent to obstruct, impede,
7  or influence an official proceeding by impairing the use of the evidence; and (2) did so with
8  consciousness of wrongdoing.

1    **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR CONSPIRACY TO OBSTRUCT**

2    **JUSTICE – "CORRUPTLY" DEFINED INSTRUCTION**:  Ms. He's proposed instruction is

3    supported by a weight of authority.  *See* Manual of Model Criminal Jury Instructions for the District

4    Courts of the Ninth Circuit (2025), Instruction No. 4.12; *id.,* Instruction No. 19.5.; *United States v.*

5    *DeCarlo, et. al.*, Case No. 1:21-cr-00073-BAH (D.D.C. 2021), Dkt. No. 58 at 21 n.4 (Government

6    opposition to motion to dismiss arguing that "acting 'corruptly' requires the intent to obstruct as well as

7    consciousness of wrongdoing"); *see also id.* at 20 (same, collecting cases); *id.* at 23 (arguing that

8    "corruptly, for purposes of Section 1512(c)(2), requires an intent to obstruct an official proceeding and

9    consciousness of wrongdoing"); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding

10   jury instruction defining "corruptly" as acting with "consciousness of wrongdoing" (internal quotation

11   marks omitted)); *United States v. Cervantes*, *et al.,* Case No. 4:12-cr-00792-YGR (N.D. Cal. 2016),

12   Dkt. No. 1437 at Instruction Nos. 31.16, 31.17, 38 ("To act corruptly means to act with an improper

13   purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or

14   influence the due administration of justice."), *aff'd*, No. 16-10508, 2021 WL 2666684 (9th Cir. June 29,

15   2021); *United States v. Lonich*, *et al.*, Case No. 3:14-00139-SI (N.D. Cal. 2017), Dkt. No. 607 at 21

16   ("Acting 'corruptly' as used in this [1512(c)] instruction means to knowingly and dishonestly act with

17   the specific intention to obstruct, influence or impede the specific official proceeding presented."), *aff'd*

18   23 F.4th 881, 905 (9th Cir. 2022); *United States v. Montgomery*, 578 F. Supp. 3d 54, 83 (D.D.C. 2021)

19   (explaining the "predominant view among the court of appeals is that the 'corruptly' standard [in

20   1512(c)] requires proof of an 'improper purpose' and an 'intent to obstruct,'" and noting "the

21   government concedes that it will be required to prove that Defendants acted with 'consciousness of

22   wrongdoing.'"); *United States v. Johnson*, No. 14-CR-00412-TEH, 2015 WL 1967239, at *4 (N.D. Cal.

23   Apr. 30, 2015) ("The Government must still prove that Defendant foresaw, knew, or contemplated the

24   particular proceeding that he is charged with obstructing.  If Defendant testifies that he did not

25   contemplate or foresee the instant proceeding, which he is charged with obstructing, he offers important

26   testimony regarding the intent element of the obstruction count.").

27

28

**4.8 KNOWINGLY (Disputed; Government Version)**

An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his or her acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

**Authority**:  Ninth Circuit Model Criminal Jury Instruction 4.8.

The government opposes Defendant He's proposed deletion of the sentence "The government is not required to prove that the defendant knew that his or her acts or omissions were unlawful."  While Defendant He is correct that this sentence is inapplicable where the government must prove that the defendant "knowingly and willfully" committed an offense, as with a substantive charge of healthcare fraud under 18 U.S.C. § 1347, that is not the case here.  As an initial matter, the removing this language from the general "knowingly" instruction is overbroad, as the indictment charges other offenses that require a defendant to act "knowingly" but not "willfully."  *See, e.g.* Proposed Instructions for Conspiracy to Distribute Controlled Substances (elements including that "the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose"); Proposed Instructions for Distribution of a Controlled Substance (elements including that "the defendant knowingly or intentionally distributed the controlled substance either without a legitimate medical purpose, or outside the usual course of professional practice, or both"); Proposed Instructions for Conspiracy to Obstruct Justice (element that "the defendant in the agreement knowing of its purpose and intending to help accomplish that purpose").

The proposed modification is also inappropriate even as to the remaining count.  While healthcare fraud is an object of the conspiracy charged in Count Six, proving that a defendant conspired to commit an offense does not require proving that the defendant actually committed the offense that is the object of the conspiracy.  And bearing in mind that both parties have proposed separate instructions for "willfully," the jury will still understand the elements of the object of the health care fraud conspiracy charged in Count Six.  *See United States v. Schena*, 2025 WL 1918267, at * 2 (9th Cir. July

115

11, 2025) (affirming district court's use of model instruction including the relevant sentence in health care fraud case, as the "jury was instructed that it had to find that Schena acted both knowingly and willfully," the jury was instructed that "as to the counts in question, 'willfully' required the government to prove that Schena knew his conduct was unlawful," and the court reminded jurors that the government "must prove each element of the offense" when the jurors submitted questions regarding mens rea).  The government's proposed instruction for "willfully" closely tracks the one given in *Schena*, further reducing the likelihood of any impermissible juror confusion.

**4.8 KNOWINGLY (Disputed; Defense Version) (Strikethrough and All Underlined Text Reflects Proposed Modifications by Defendant He)**

An act is done knowingly if Ms. He and/or Dr. Brody ~~the defendant~~ is aware of the act and does not act or fail to act through ignorance, mistake, or accident. ~~The government is not required to prove that the defendant knew that his or her acts or omissions were unlawful~~. You may consider evidence of ~~the defendant's~~ Ms. He's and Dr. Brody's words, acts, or omissions, along with all the other evidence, in deciding whether the particular Defendant you are considering acted knowingly.

117

1  **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR MODIFICATIONS TO**

2  **GOVERNMENT'S PROPOSED KNOWINGLY INSTRUCTION**:  Where, as here, "the

3  government is required to prove that the defendant knew his conduct was unlawful" in connection with

4  the health care fraud charges, Ninth Circuit "model jury instructions direct district courts to omit from

5  the 'knowingly' instruction certain language stating that the 'government is not required to prove that

6  the defendant knew that his acts or omissions were unlawful." *See United States v. Schena,* No. 23-

7  2989, 2025 WL 1918267, at *2 (9th Cir. July 11, 2025) (citing Ninth Cir. Model Jury Inst. 4.8 cmt)

8  (explaining the "healthcare fraud charges" in 18 U.S.C. § 1347(a) "required the government to prove

9  that [defendant] acted 'knowingly and willfully'"); *see also* Manual of Model Criminal Jury

10  Instructions for the District Courts of the Ninth Circuit (2025), Instruction No. 4.8 (this "sentence of

11  this instruction should not be given when an element of the offense requires the government to prove

12  that the defendant knew that what the defendant did was unlawful") (collecting cases).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**4.6 WILLFULLY (Disputed; Defense Version)**

2      As I have previously described to you, part of your deliberation in connection with the

3  Conspiracy to Commit Healthcare Fraud charged in Count Six requires you to determine whether Ms.

4  He and Dr. Brody acted "willfully."  The following instruction applies to the definition of "willfully."

5      In order to establish Ms. He and Dr. Brody acted "willfully," the Government must prove

6  beyond a reasonable doubt that the Ms. He and Dr. Brody knew their behavior was illegal or unlawful.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED WILLFULLY**

2   **INSTRUCTION:** Substantial authority supports Ms. He's proposed instruction.  *See* Manual of Model

3   Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025), Instruction No. 15.42

4   (Instruction No. 4.6 (Willfully) is appropriate in the context of "a charge of healthcare fraud"); *id.,*

5   Instruction No. 4.6; *United States v. Schena,* No. 23-2989, 2025 WL 1918267, at *2 (9th Cir. July 11,

6   2025) ("Both the EKRA and healthcare fraud charges required the government to prove that Schena

7   acted 'knowingly and willfully.' 18 U.S.C. § 220(a), 1347(a)," which means "the government is

8   required to prove that the defendant knew his conduct was unlawful."); *United States v. Kim*, 267 F.

9   App'x 712, 713 (9th Cir. 2008) (18 U.S.C. § 1347 requires that the defendant act 'knowingly and

10  willfully' and 'with the intent to defraud.'  To prove that Kim acted willfully, 'the Government must

11  prove that the defendant acted with knowledge that his conduct was unlawful.'" (cleaned up) (citing

12  *Bryan v. United States*, 524 U.S. 184, 192 (1998)) (collecting additional cases); *United States v. Singh*,

13  No. 24-3655, 2025 WL 2268031, at *4 (6th Cir. Aug. 8, 2025) ("[T]he jury instructions did not state that

14  the government was required to prove that Singh 'acted with knowledge that [her] conduct was

15  unlawful.' The district court instead instructed the jury that '[a]n act is done 'knowingly and willfully'

16  if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason.'

17  This instruction failed to convey the scienter that the government must prove to secure a conviction

18  under 18 U.S.C. § 1347.") (citation omitted); *United States v. Ganesh*, No. 16-CR-00211-LHK, 2018

19  WL 905941, at *6 (N.D. Cal. Feb. 15, 2018) (in the criminal context acting "willfully" means an act is

20  "undertaken with a bad purpose") (cleaned up) (collecting cases).

21

22

23

24

25

26

27

28

1  **GOVERNMENT'S ARGUMENT AGAINST DEFENDANT HE'S PROPOSED WILLFULLY**

2  **INSTRUCTION**:  Again, Defendant He's proposed instruction confuses the elements of *conspiracy* to

3  commit health care fraud with the elements of health care fraud, which is not substantively charged in

4  this case.  Even Defendant He's proposed jury instruction for the healthcare fraud conspiracy count

5  concedes that "The Government does not have to prove that the crime was committed in order for you

6  to find that the Government has established this first element of this conspiracy charge."  Defendant's

7  proposed willfulness instruction, which states that the government "must prove beyond a reasonable

8  doubt that the Ms. He and Dr. Brody knew their behavior was illegal or unlawful," cannot be reconciled

9  with her own jury instructions.

10      Proving a conspiracy to commit healthcare fraud does not require proof that the defendants

11  actually committed healthcare fraud, and therefore does not require proof beyond a reasonable doubt

12  that they acted willfully.  As the Modern Federal Jury Instructions note, it is axiomatic that commission

13  of a conspiracy offense does not require commission of the object of the conspiracy:

14      "The crime of conspiracy to violate a federal law is an independent offense. It is separate and

15  distinct from the actual violation of any specific federal laws, which the law refers to as 'substantive

16  crimes.'  Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense

17  against the United States even though the substantive crime that was the object of the conspiracy was

18  not actually committed."  Leonard B. Sand, 1 Modern Federal Jury Instructions 19-2.

19      Defendant He's proposed instruction should accordingly be denied.

20

21

22

23

24

25

26

27

28

121

**4.6 WILLFULLY (Disputed; Government Version)**

With respect to the term "willfully" as used in the instructions for the object of health care fraud, an act is done willfully if done with a bad purpose, that is, with general knowledge that the conduct was unlawful. The government need not prove that Defendants were aware of the specific provision of the law that rendered the conduct unlawful.

1    **GOVERNMENT'S ARGUMENT AND AUTHORITY FOR PROPOSED WILFULLY**

2    **INSTRUCTION**:  *United States v. Schena*, Final Jury Instructions, ECF No. 216 at 31 (filed Sept. 6,

3    2022); *see also United States v. Awad*, 551 F.3d 930, 939 (9th Cir. 2009) (in health care fraud case,

4    "willful" act is one undertaken with "bad purpose" with knowledge that conduct was unlawful).

## 4.9 DELIBERATE IGNORANCE (Disputed) (Government Version)

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that:

First, the defendant was aware of a high probability that controlled substances were being distributed by means of a prescription issued by a practitioner not for a legitimate medical purpose and not in the usual course of professional practice; and

Second, the defendant deliberately avoided learning the truth.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED DELIBERATE**

2    **IGNORANCE INSTRUCTION:**  Ninth Circuit Model Criminal Jury Instruction 4.9; *Napoli*, Dkt. No.

3    1056, at 32; *United States v. Stanton*, 103 F.4th 1204, 1212–13 (6th Cir. 2024), *cert. denied sub nom.*

4    *Stanton v. United States*., 145 S. Ct. 1058, 220 L. Ed. 2d 385 (2025), *reh'g denied*, 145 S. Ct. 1348, 221

5    L. Ed. 2d 431 (2025).

6          The cases that Defendant He cites to oppose this standard instruction, as well as Defendant He's

7    proposed instructions more generally, affirmatively establish that a deliberate ignorance instruction is

8    appropriate here.  First, "whether an instruction should be given . . . depends on the theories and

9    evidence presented at trial."  *United States v. Heredia*, 483 F.3d 921, 922 (9th Cir. 2007).  "In deciding

10   whether to give a particular instruction, the district court must view the evidence in the light most

11   favorable to the party requesting it."  *Id.* at 922.  And "[i]n deciding whether to give a willful blindness

12   instruction, in addition to an actual knowledge instruction, the district court must determine whether the

13   jury could rationally find willful blindness even though it has rejected the government's evidence of

14   actual knowledge."  *Id.*

15         Against this backdrop, the instruction is more than warranted.  The Government agrees that the

16   jury instructions must be based on the trial evidence, but the parties' pretrial arguments reveal that

17   deliberate ignorance is nearly certain to be at issue at trial.  Even in this filing alone, Defendant He's

18   own proposed instructions plainly reveal that she will contest that she had actual knowledge of

19   wrongdoing at Done.  For example, she has proposed a defense instruction implying that she was

20   "merely present" at the scene of a crime, and a good faith defense instruction that would tell the jury

21   "Ms. He and Dr. Brody maintain that at all times their actions were done with a good faith belief that

22   the controlled substances [were legitimately distributed]."  Defendant He's theory of the defense places

23   the potential that she deliberately ignored wrongdoing directly at issue.  And while the jury could

24   rationally find that Defendant He acted with actual knowledge, viewed in the light most favorable to the

25   government, the evidence will also readily permit the jury to infer that she acted with deliberate

26   ignorance when creating a practice model that encouraged and inevitably resulted in unlawful

27   prescribing practices.  The evidence plainly warrants a deliberate ignorance instruction.

28

**DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST GOVERNMENT'S PROPOSED DELIBERATE IGNORANCE INSTRUCTION:** This instruction is premature until the Court has the opportunity to assess the trial evidence. The Ninth Circuit has been clear that a willful blindness instruction should not be issued absent a determination that "the jury could rationally find willful blindness." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) ("In cases where the government does not present a deliberate ignorance theory, the judge might conclude that the instruction will confuse the jury. The same may be true where a defendant disputes only identity. Concerns of this nature are best dealt with by the district judge, whose familiarity with the evidence and the events at trial is necessarily superior to our own.") In fact, even where such a factual predicate exists, the court has discretion to reject a deliberate indifference instruction. *Id.* ("Even if the factual predicates of the instruction are present, the district judge has discretion to refuse it."). The Ninth Circuit has provided detailed guidance on the "comparatively rare" circumstances that warrant a deliberate ignorance instruction. *United States v. Sanchez-Robles*, 927 F.2d 1070, 1073-1075 (9th Cir. 1991) (improper deliberate indifference instruction was reversible error where evidence of actual knowledge was not "so overwhelming as to compel a guilty verdict"). Generally speaking, the instruction is proper in cases involving "facts and circumstances creating a high probability of criminal activity that the defendant then ignored." *Id.* at 1073. For example, the instruction was proper against a defendant who accepted money to drive a car across the border because the offer was made by a stranger who earlier offered to sell the defendant marijuana, and when driving the car, the defendant noticed secret compartments that he then ignored. *Id.* Cases such as this warrant a deliberate ignorance instruction because the defendant chooses to remain ignorant after learning facts that would lead <u>any reasonable person</u> to investigate further, and the facts giving rise to the suspicion do not amount to direct evidence of illegality.

By contrast, the instruction is inappropriate in cases involving "no suspicious circumstances surrounding the activity beyond direct evidence of the illegality itself, which goes only to actual knowledge." *Id.* at 1073. For example, in *Sanchez-Robles*, the defendant drove into Mexico from California in a van that her friend left at her apartment. 1075. On her return trip, a border inspector noticed the strong smell of marijuana coming from the van and discovered marijuana in several

compartments.  The defendant claimed not to recognize the smell.  At trial, the court gave the deliberate ignorance instruction.  The Ninth Circuit reversed the conviction because the only evidence warranting the defendant's suspicion was the powerful smell of marijuana, which only pointed to actual knowledge: "If [defendant] recognized the smell as that of marijuana, then she knew that there was marijuana in the van . . . .  If [defendant] did not . . . then she had no reason to be suspicious . . . .  In this case, [defendant] either had actual knowledge of the illegality or she had no knowledge at all."  *Id.* at 1075.

Defendant He respectfully requests that the Court, at a minimum, defer ruling on the appropriateness of this instruction until it has an opportunity to weigh "the evidence and [] events at trial" and determine whether such an instruction is appropriate.

## 4.13 INTENT TO DEFRAUD

An intent to defraud is an intent to deceive and cheat.

**GOOD FAITH (Disputed; Defense Version)**

Ms. He and Dr. Brody maintain that at all times their actions were done with a good faith belief that the controlled substances or prescription drugs were being distributed by means of a prescription issued by a physician or nurse-practitioner for a legitimate medical purpose and in the usual course of professional practice.

In other words, the Government must prove that Ms. He and Dr. Brody did not have an honest belief that prescriptions were issued by a physician or nurse-practitioner for a legitimate medical purpose and in the usual course of professional practice.

When you consider this "good faith" defense, it is Ms. He's and Dr. Brody's belief that is important. It is the sincerity of the belief that determines if it acted in good faith. If Ms. He's or Dr. Brody's belief is unreasonable, you may consider that in determining the sincerity of the belief, but an unreasonable belief sincerely held is good faith.

The burden is on the Government to prove, beyond a reasonable doubt, that Ms. He and Dr. Brody did not act in good faith. Unless you find beyond a reasonable doubt that the conduct charged against Ms. He and Dr. Brody was not done in good faith, you must find Ms. He and Dr. Brody not guilty of these charges.

The Government does not have to prove that Ms. He and Dr. Brody knew they were violating the law. Ms. He's or Dr. Brody's belief, even in good faith, that their conduct did not violate the law or that the government lacked the authority to enforce the law in a particular way is not, standing alone, a defense. It Ms. He's and Dr. Brody's good faith belief regarding whether physicians and nurse-practitioners were issuing prescriptions for a legitimate medical purpose and in the usual course of professional practice and that you must consider.

In determining whether or not Ms. He and Dr. Brody acted in good faith you may consider all the evidence in the case which relates to that conduct.

1   **DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED GOOD FAITH**

2   **INSTRUCTION**:  With one deletion, this proposed instruction is pulled directly from this Court's

3   instructions in *Napoli* and *FedEx*.  *See Napoli*, Dkt. No. 1056; *see also United States v. FedEx, et. al.*,

4   No. 3:14-cr-00380-CRB (N.D. Cal.) (Breyer, J.).   Moreover, in *FedEx*, the *Government* also advocated

5   for the *Napoli* instruction verbatim.   *See id.*, Dkt. No. 277 ("U.S. Proposed Jury Instructions") at 18

6   (same) (citing *Napoli*).  Ms. He's only modification from this Court's previous instruction was to

7   remove language providing "[g]ood faith means an honest belief that the physicians issued the

8   prescriptions for a patient's condition in accordance with the standard of medical practice generally

9   recognized in the country," consistent with the Supreme Court's guidance in *Ruan* that this may

10  incorrectly suggest an objective standard of guilt.  *Ruan v. United States*, 597 U.S. 450, 456 (2022)

11  (instruction that suggested the jury that "the Government can convict by proving beyond a reasonable

12  doubt that [the defendant] did not even make an objectively reasonable attempt to ascertain and act

13  within the bounds of professional medicine" improperly imposed an objective standard).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT AGAINST DEFENDANT'S PROPOSED**

2    **GOOD FAITH INSTRUCTION:**:   While the government does not necessarily oppose a good faith

3    instruction, the government respectfully submits that the appropriateness and contours of the instruction

4    will depend upon the evidence presented at trial.  The government additionally notes that various

5    aspects of the proposed language may be inappropriate as a broader matter.  For example, the proposed

6    claim that "an unreasonable belief sincerely held is good faith" is at odds with the Supreme Court's

7    observation in *Ruan* that "'the more unreasonable' a defendant's 'asserted beliefs or misunderstandings

8    are,' especially as measured against objective criteria, 'the more likely the jury . . . will find that the

9    Government has carried its burden of proving knowledge.'"  *Ruan v. United States*, 597 U.S. 450, 467

10    (2022) (quoting *Cheek v. United States*, 498 U.S. 192, 203–204 (1991)).  The government therefore

11    objects, noting that Defendant He's proposed instruction is premature at this time.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 11.3 MULTIPLE CONSPIRACIES (Defense Version)

2      You must decide whether each of the conspiracies charged existed, and, if any one of them did,

3 who at least some of its members were.

4      If you find that the conspiracy charged *in Count One, Count Six, and/or Count Seven* did not

5 exist, then you must return a not guilty verdict *as to that conspiracy*, even though you may find that

6 some other conspiracy existed.

7      Similarly, if you find that either Ms. He and/or Dr. Brody was not a member of the charged

8 conspiracy *in Count One, Count Six, and/or Count Seven*, then you must find that particular Defendant

9 not guilty *as to that conspiracy*, even though she or he may have been a member of some other *charged*

10 *or uncharged* conspiracy.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **<u>DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR PROPOSED MULTIPLE</u>**

2    **<u>CONSPIRACIES INSTRUCTION</u>**:  This proposed instruction is pulled verbatim from the "Multiple

3    Conspiracies" instruction given by Your Honor in *Napoli*, Dkt. No. 1056 and the Ninth Circuit's Model

4    Instructions, with only minor revisions in italics to reflect the specific conspiracies charged in this case.

5    *See* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025),

6    Instruction No. 11.3 (modified); *United States v. Napoli, et al.*, No. C 10-0642 CRB (N. D. Cal.)

7    (Breyer, J.), Dkt. No. 1056, *affirmed United States v. Carozza*, 2015 WL 1727269 (9th Cir. 2015).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **GOVERNMENT'S AUTHORITY AND ARGUMENT AGAINST DEFENDANT'S PROPOSED**

2  **MULTIPLE CONSPIRACIES INSTRUCTION**: Defendants' proposed instruction is inapplicable

3  and would serve only to confuse the jury, as this is not a case where the indictment charges a single

4  conspiracy while the evidence indicates two or more conspiracies. *See* Comment to Ninth Circuit

5  Model Criminal Jury Instruction 11.3 (noting that instruction only applies "when the indictment charges

6  a single conspiracy, and the evidence indicates two or more possible conspiracies.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GUILTY KNOWLEDGE FROM CLANDESTINE BEHAVIOR (Disputed; Government's Version)**

Willful intent or guilty knowledge may be inferred from the secretive or irregular manner in which a transaction is carried out.

1    __GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED CLANDESTINE__

2    __BEHAVIOR INSTRUCTION:__  This Instruction is from 1 Modern Federal Jury Instructions,

3    Instruction 6-19.

4            Despite Defendant He's assertion that this instruction is inappropriate, the decision that she cites

5    positively establishes that it is proper.  Less than two months ago, the Fourth Circuit affirmed the use of

6    the precise instruction proposed here in a precedential decision, noting that "construed as a whole, and

7    in light of the whole record, [the instruction] adequately informed the jury of the controlling legal

8    principles without misleading or confusing the jury to the prejudice of the objecting party." *United*

9    *States v. Sanders*, 146 F.4th 372, 378 (4th Cir. 2025).  Defendant He omits to mention that the Fourth

10   Circuit only said that this instruction could arguably run a risk "if read in isolation." *Id.*  As in *Sanders*,

11   the extensive jury instructions proposed here will provide the jury with a thorough and accurate

12   understanding of the relevant law regarding *mens rea*, such that this instruction poses little to no risk of

13   prejudice to Defendant He.

14           And contrary to Defendant He's implication that this instruction is rarely used, the instruction

15   has been included in a wealth of final jury instructions in courts across the country as recently as this

16   year.  *See, e.g.*, *United States v. Valentin*, Case No. 23-CR-292, at ECF No. 215 (E.D.N.Y. June 30,

17   2025); *United States v. Chalwell*, Case No. 24-CR-72, at ECF No. 191 (D.P.R. Aug. 30, 2024); *United*

18   *States v. Aborisade*, Case No. 21-CR-299, at ECF No. 148 (D. Md. Apr. 11, 2024); *United States v.*

19   *Rowe*, Case No. 16-CR-144, at ECF No. 47-1 (D.D.C. July 20, 2017).  The evidence at trial will support

20   the giving of this instruction, particularly given the indictment's clear allegation that Defendants

21   "refrain[ed] from using company email and messaging platforms" and used "encrypted messaging

22   platforms, personal email accounts, and personal devices to communicate about company business" in

23   "anticipation of a subpoena being issued to Done." ECF No. 1 ¶ 87.  While the Ninth Circuit may

24   disfavor permissive inference instructions as a general matter, they may be appropriate where

25   warranted, and the Ninth Circuit has specifically observed that attempts to conceal evidence raise an

26   inference of consciousness of guilt.  *See, e.g.*, *United States v. Castillo,* 615 F.2d 878, 885 (9th

27   Cir.1980) ("An attempt by a criminal defendant to suppress evidence is probative of consciousness of

28   guilt and admissible on that basis.").

136

1  **DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST GOVERNMENT'S**

2  **PROPOSED CLANDESTINE BEHAVIOR INSTRUCTION:**  Defendant He objects to this

3  instruction.  To the extent the legal treatise cited by the Government is binding on this Court (which it

4  clearly is not), it is directly at odds with the Ninth Circuit's Jury Instruction Committee's instructions.

5  *See* Comment to Manual of Model Criminal Jury Instructions for the District Courts of the Ninth

6  Circuit (2025), Instruction No. 1.15 (explaining in instruction for "Direct and Circumstantial Evidence"

7  that the "Committee believes that an instruction on circumstantial evidence generally eliminates the

8  need to explain the same principle in terms of inferences, and that matters such as flight, resistance to

9  arrest, etc., are generally better left to argument of counsel as examples of circumstantial evidence from

10  which the jury may find another fact"); *see also United States v. Beltran–Garcia,* 179 F.3d 1200, 1206

11  (9th Cir. 1999) (in discussing jury instruction regarding inferring intent to possess for distribution from

12  quantity of drugs, the Ninth Circuit stated that "[a]lthough the instructions in this case were not

13  delivered in error, we do not hesitate to point out the 'dangers and inutility of permissive inference

14  instructions.'") (citations omitted); *see also United States v. Rubio–Villareal,* 967 F.2d 294, 300 (9th

15  Cir. 1992) (en banc) (disapproved instructing jury that knowledge of presence of drugs in vehicle may

16  be inferred from defendant being driver).  The only authority that Ms. He has located implicitly

17  authorizing this instruction is non-binding on this Court, and actually acknowledged the exact risk

18  articulated by the Ninth Circuit's guidance.  *United States v. Sanders*, 146 F.4th 372, 378 (4th Cir.

19  2025) ("We acknowledge that the challenged instruction [] could run the risk of confusing the jury" into

20  equating "irregularity with willfulness" and finding no error only because instructions "coming

21  immediately before and after this one instruction, adequately explained the requisite intent").  And, the

22  *only* authority the Modern Federal Jury Instruction No. 6-19 cites in support of this instruction is non-

23  binding on this Court *and is more than a century old*.  *See Borman v. United States,* 262 F. 26 (2d Cir.

24  1919).

25           The Government fails to demonstrate even a single compelling reason why this Court should

26  deviate from the Ninth Circuit's guidance that, when "an instruction on circumstantial evidence" is

27  given—such as Instruction No. 1.5 ("Direct and Circumstantial Evidence")—there is no "need to

28

1  explain the same principle in terms of inferences."   Manual of Model Criminal Jury Instructions for the

2  District Courts of the Ninth Circuit (2025), Introductory Comment to Chapter 3.

**SPOLIATION (Disputed; Government's Version)**

If you find that Defendant He and/or Defendant Brody destroyed, obliterated, or failed to produce a document that he or she knew would be relevant to a contested issue in this case and knew at the time he or she did so that there was a potential for prosecution, then you may infer (but you are not required to infer) that the contents of the destroyed or withheld evidence were unfavorable to Defendant He and/or Defendant Brody.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT FOR ITS PROPOSED SPOLIATION**

2    **INSTRUCTION**:  Adapted from First Circuit Pattern Criminal Jury Instructions 2.13; *United States v.*

3    *Santana-Perez*, 619 F.3d 117, 123–24 (1st Cir. 2010); *United States v. Nelson*, 481 F. App'x 40, 42 (3d

4    Cir. 2012).

5           While Defendant He claims that the Ninth Circuit model instructions do not contain a specific

6    spoliation instruction, it is well established that a defendant's spoliation of evidence raises an inference

7    that they believed the evidence could incriminate them, and an instruction is justified if there is an

8    adequate evidentiary foundation.  *See Santana-Perez*, 619 F.3d at 124 ("Although the particulars of the

9    required showing vary from situation to situation, the basic thrust is always the same: the circumstances

10   must be such that a reasonable jury could conclude that the evidence in question was unfavorable to the

11   non-producing party."); *Nelson*, 481 F. App'x at 42 ("When the contents of a document are relevant to

12   an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or

13   destruction as evidence that the party that has prevented production did so out of the well-founded fear

14   that the contents would harm him.").  Defendant He's claim that the instruction was refused in *Santana-*

15   *Perez* and *Nelson* rings hollow in the face of the legal standard.  The indictment in this case specifically

16   alleges that Defendants conspired to obstruct justice by "causing documents not to be provided to the

17   Grand Jury."  ECF No. 1 ¶ 89.  Evidence to support these allegations will amply establish a foundation

18   for the requested instruction.

19          Finally, while it is true that the Ninth Circuit Model Instructions typically favor arguments about

20   inferences to be drawn from matters such as "flight, resistance to arrest, a missing witness, failure to

21   produce evidence, false or inconsistent exculpatory statements, failure to respond to accusatory

22   statements, and attempts to suppress or tamper with evidence," rather than specific instructions, that

23   does not mean the instructions are categorically inappropriate.  On the contrary, the evidence here

24   warrants a departure from typical practice for this specific instruction.  *See United States v. Castillo,*

25   615 F.2d 878, 885 (9th Cir.1980) ("An attempt by a criminal defendant to suppress evidence is

26   probative of consciousness of guilt and admissible on that basis.").

27

28

1  **DEFENDANT HE'S AUTHORITY AND ARGUMENT AGAINST GOVERNMENT'S**

2  **PROPOSED SPOLIATION INSTRUCTION:**:  The Government's own authorities demonstrate the

3  impropriety of this instruction in this case.  In *United States v. Santana-Perez*, the trial court and First

4  Circuit *refused* to issue "a missing evidence instruction, which would have advised the jury to infer that

5  [a specific document] would have been unfavorable to the government based on the government's

6  failure to produce it" because the "party seeking the instruction has the burden of laying an appropriate

7  evidentiary foundation," and on these facts "there is no basis for such an inference" that "the evidence

8  in question was unfavorable to the non-producing party."  619 F.3d 117, 123–24 (1st Cir. 2010).

9  Similarly, the *United States v. Nelson* court "***denied*** the requested jury instruction" as to a ***specific piece***

10  ***of evidence*** because the defendant failed to establish that "the evidence in question be within the party's

11  control" and "that there had ***been an actual suppression or withholding of the evidence***."  481 F.

12  App'x 40, 42 (3d Cir. 2012) ("[N]o unfavorable inference arises when the circumstances indicate that

13  the document or article in question has been lost or accidentally destroyed, or where the failure to

14  produce it is otherwise properly accounted for.") (cleaned up).  Where the Government has not

15  identified a specific piece of evidence it feels this instruction should attach to, let alone that the

16  purportedly concealed document is both (1) helpful to its case and (2) was willfully suppressed, this

17  instruction is entirely unwarranted.

18  　　　And, consistent with the cases cited by the Government, the only somewhat applicable Ninth

19  Circuit model jury instruction on this issue contemplates telling the jury how to weigh the

20  ***Government's*** intentional destruction of evidence—not a ***defendant's*** purported spoliation.  *See*

21  Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025),

22  Instruction No. 3.19 ("If you find that ***the government intentionally destroyed [evidence] . . .***").  The

23  Court should follow Ninth Circuit guidance and decline to issue "instructions on matters such as"

24  Defendants' purported "failure to produce evidence . . . and attempts to suppress or tamper with

25  evidence."  *Id.*, Introductory Comment to Chapter 3 ("These matters are generally better left to

26  argument of counsel as examples of circumstantial evidence from which the jury may find another

27  fact.") (collecting cases).

28

141

**5.12 MERE PRESENCE (Disputed; Defense Version)**

Mere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient to establish that Ms. He or Dr. Brody committed the crimes charged in the Indictment. Ms. He and/or Dr. Brody must be a participant and not merely a knowing spectator. Ms. He's and/or Dr. Brody's presence may be considered by the jury along with other evidence in the case.

**DEFENDANT HE'S AUTHORITY AND ARGUMENT FOR HER PROPOSED MERE PRESENCE INSTRUCTION:** Defendant He's proposed instruction is pulled directly from Instruction 5.12 of the Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2025). This instruction, and in particular, its explanation that "mere knowledge that a crime is being committed is not sufficient to establish that Ms. He or Dr. Brody committed the crimes charged in the Indictment" is a key concept in this case, given that the Government has brought this case against Ms. He, even though she is not a prescriber herself and given the Government's stated intention to present evidence of alleged "red flags" that the Government argues should have put Ms. He on notice that users on the Done platform were using it for unlawful purposes. Given the Government's evidentiary presentation and likely arguments to the jury, it is important for the jury to be instructed, explicitly, that Ms. He's "knowledge that a crime [was] being committed" with respect to prescriber conduct is not sufficient to establish that she committed those crimes.

1    **GOVERNMENT'S AUTHORITY AND ARGUMENT AGAINST DEFENDANT HE'S**

2    **PROPOSED MERE PRESENCE INSTRUCTION:**  Defendants' proposed instruction is

3    inapplicable and would serve only to confuse the jury, as the government's case against each defendant

4    is not solely based on their presence.  *See* Comment to Ninth Circuit Model Criminal Jury Instruction

5    5.12 ("Such a 'mere presence' instruction is unnecessary if the government's case is not solely based on

6    the defendant's presence and the jury has been instructed on the elements of the crime.").  The

7    government intends to present evidence that each defendant actively joined and furthered the charged

8    conspiracies, which will render the proposed instruction inappropriate.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 6.18 "IN OR AROUND" OR "ON OR ABOUT" - DEFINED[15]

The Indictment charges that the offenses alleged in Counts One, Six, and Seven were committed "in or around" a certain date, and that the offense alleged in Counts Two through Five were committed "on or about" a certain date.

Although it is necessary for the government to prove beyond a reasonable doubt that each offense was committed on a date reasonably near the dates alleged in Counts One through Seven of the Indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

---

[15] Adapted from Ninth Circuit Model Criminal Jury Instruction 6.18, "On or About – Defined."

## 6.13 SEPARATE CONSIDERATION OF MULTIPLE COUNTS – MULTIPLE DEFENDANTS

A separate crime is charged against the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant on each crime charged against that defendant separately. Your verdict on any count as to any defendant should not control your verdict on any other count or as to any other defendant.

All the instructions apply to each defendant and to each count [unless a specific instruction states that it applies only to a specific [defendant] [count]].

1

### 6.24 COMMUNICATION WITH COURT

2     If it becomes necessary during your deliberations to communicate with me, you may send a note

3  through the clerk, signed by any one or more of you. No member of the jury should ever attempt to

4  communicate with me except by a signed writing, and I will respond to the jury concerning the case

5  only in writing or here in open court. If you send out a question, I will consult with the lawyers before

6  answering it, which may take some time. You may continue your deliberations while waiting for the

7  answer to any question. Remember that you are not to tell anyone—including me—how the jury stands,

8  numerically or otherwise, on any question submitted to you, including the question of the guilt of the

9  defendant, until after you have reached a unanimous verdict or have been discharged.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


CRAIG H. MISSAKIAN
United States Attorney


LORINDA I. LARYEA
Acting Chief, Fraud Section
U.S. Department of Justice
_____/s/_____
JACOB FOSTER
Principal Assistant Chief
EMILY GURSKIS
Assistant Chief


_____

KRISTINA GREEN
Assistant United States Attorney


_____

KOREN BELL
MICHAEL SCHACHTER
STEVEN BALLEW
Counsel for Ruthia He


_____

VALERY NECHAY
Counsel for David Brody