WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
mschachter@willkie.com
sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S OPPOSITION TO THE GOVERNMENT'S MOTION TO PRECLUDE HER FROM ASSERTING AN ADVICE OF COUNSEL DEFENSE.** |

# TABLE OF CONTENTS


Page

INTRODUCTION ........................................................................ 1

FACTUAL BACKGROUND ........................................................................ 3

ARGUMENT ........................................................................ 5

I. THE GOVERNMENT MISSTATES THE LAW AND IGNORES LONG STANDING PRECEDENT CONFIRMING THE PROPRIETY OF A LIMITED SUBJECT MATTER DISCLOSURE. ........................................ 5

II. THE GOVERNMENT'S ABILITY TO PROSECUTE THIS CASE IS NOT PREJUDICED BY MS. HE'S WAIVER OF LEGAL ADVICE REGARDING SEVEN DISCRETE TOPICS. ........................................ 9

CONCLUSION ........................................................................ 11

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524 (S.D.N.Y. 2022)....5

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992)....5

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995)....7, 8

*In re Grand Jury Proc.*, 219 F.3d 175 (2d Cir. 2000)....7

*Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926 (N.D. Cal. 1976)....9

*Hernandez v. Tanninen*. 604 F.3d 1095 (9th Cir. 2010)....8

*Inmuno Vital, Inc. v. Telemundo Grp., Inc.* 203 F.R.D. 561 (S.D. Fla. 2001)....6

*Loguidice v. McTiernan*, No. 114CV1323TJMCFH, 2018 WL 4011584 (N.D.N.Y. Aug. 22, 2018)....7

*Medimmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590JF(HRL), 2010 WL 2925390 (N.D. Cal. July 26, 2010)....9

*In re OM Sec. Litig.*, 226 F.R.D. 579 (N.D. Ohio 2005)....8

*Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB, 2022 WL 1747811 (D. Ariz. May 31, 2022)....9

*SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566 (N.D. Cal. 1999)....9

*United States v. Carver*, No. 22-CR-80022, 2023 WL 5916561 (S.D. Fla. Aug. 1, 2023),....6, 7

*United States v. Dougherty*, No. 22-80022-CR, 2023 WL 5620715 (S.D. Fla. Aug. 31, 2023)....6

*United States v. Mendelsohn*,
896 F.2d 1183 (9th Cir. 1990) ....................................................................................7

*United States v. Patel*,
9:19-cr-80181, ECF No. 290 (S.D. Fla. Oct. 11, 2022)....................................................10, 11

*Weil v. Investment/Indicators*,
647 F.2d 18 (9th Cir. 1981) ..........................................................................................5

**Other Authorities**

Fed. R. Evid. § 404 ..........................................................................................................2

**INTRODUCTION**

The Government's motion to preclude the jury from learning that Ms. He sought and received legal advice on *specific* Done policies and practices that the Indictment and the Government's exhibits expressly place at issue at trial should be denied. *See* Ind. at ¶¶ 65–74 (alleging that enumerated Done policies and practices "caused" and "pressured" licensed medical professionals to issue controlled stimulant prescriptions for no legitimate medical purpose and outside the usual course of professional practice). In her September 15, 2025 Notice of Intent to Raise Advice of Counsel Defense, *see* Dkt. 399-1 (hereafter, the "Notice"), Ms. He described seven specific subjects of legal advice that she relied on, and concurrently disclosed over 5,000 pages of material that she identified as being related to the legal advice she received on each of the topics in her disclosure. That is what the law, and this Court's order, *see* Dkt. 281, required of her.

The Government offers two arguments in support of the relief it seeks—both baseless. *See* Dkt. 399 ("Mot."). First, it suggests—*contrary to all applicable law*—that there is no such thing as a limited subject-matter waiver. It invites reversible error by urging the Court to find that if Ms. He wishes to rely on and waive privilege over a *specific subject* of legal advice—for example, all privileged communications concerning Done's implementation of a "30 minute" initial appointment time, one of the specific policies that that Indictment places at issue, *see* Ind. at ¶ 2—she is required to waive privilege over *every subject* to which she or Done sought legal advice, if any of those subjects happen to fall within the broad topic that the Government would have preferred Ms. He to waive on, that is, "compliance with laws, rules, and regulations regarding the prescribing of controlled substances, including via an online telehealth platform." (Mot. 1.) The Government simply misstates the law, which is why even the cases it cites do not support the arguments made in its Motion.

Second, the Government claims that because Ms. He's Notice was provided on September 15—*the Court-ordered deadline, see* Dkt. 281—she should be precluded from presenting an advice of counsel evidence, as the Notice was "too close to the trial date." (Mot. 11.) This too is baseless. As the Government knows, this issue was litigated and the Court sided with Ms. He's

position that disclosure of an advice of counsel defense and related discovery should not be required sooner than two weeks before trial. *See* Dkt. 271; 281. Once that Court-ordered deadline was set, Ms. He did not take the waiver of privilege that results from the asserting of an advice of counsel defense lightly, and utilized the intervening time to make the decision to raise the defense. As counsel told the Court at the September 9 pretrial conference, the decision to raise an advice of counsel defense was truly a game-time decision.

Moreover, even though Ms. He was under no obligation to disclose earlier than September 15, the Government only complicated the already-consequential decision to raise an advice of counsel defense. The Government's filings this summer, including its "everything, plus the kitchen sink" Rule 404(b) Notice, and its near-constant changes and amendments to its *massive* Trial Exhibit and Trial Witness list have undercut Ms. He's ability to arrive at a clear and comprehensive understanding of which specific "policies" or "practices" the Government actually intends to meaningfully challenge at trial. Even as trial has loomed, the Government has made myriad assertions about a swath of topics that might be at play during trial, from purported violations of HIPAA that have no antecedent anywhere in the Indictment to specific clinical care issues that Ms. He had nothing to do with. Ms. He has done her best to get through the Government's latest Exhibit and Witness list (as well as the tens of millions of pages of material produced in discovery), and on that basis, make the consequential decision set forth in her Notice.

The reality—although the Government does not like it—is that Ms. He sought legal guidance regarding certain of the very practices that the Government points to as evidence of her intent to run Done as a drug-trafficking operation. The jury is entitled to know that these policies were not the machinations of a criminal conspiracy, but instead were brought to the attention of experienced healthcare lawyers who considered them and gave them the green light. The fact that this evidence powerfully refutes the Government's narrative, and undermines its case against Ms. He, does not make the evidence inadmissible. The Government's motion is nothing but a thinly-veiled effort to interfere with Ms. He's constitutional right to defend herself at trial against the accusations, and should be rejected outright.

**FACTUAL BACKGROUND**

The Government has accused Ms. He of conspiring to run her telehealth company, Done, as an illegal drug dealing operation in violation of 21 U.S.C. § 846. Specifically, the Government alleges that several of Done's policies and practices "caused" and "pressured" licensed medical professionals to issue controlled stimulant prescriptions for no legitimate medical purpose and outside the usual course of professional practice. *See, e.g.*, Ind. at ¶¶ 65–74. The allegations in the Indictment include that:

1. "Ms. He initially owned, controlled, and operated Done Global in violation of California's corporate practice of medicine law, and R. He, Brody, and others concealed and disguised the scheme by creating Done Health P.C. to create the false appearance that it was an independent company in compliance with California law," Ind. ¶ 59;

2. Ms. He "instruct[ed] Done Prescribers to prescribe Adderall and other stimulants even if the Done member did not qualify, and mandate[ed] that initial encounters would be under 30 minutes—thereby causing Done Prescribers . . . to write prescriptions that were not for a legitimate medical purpose in the usual course of professional practice," Ind. ¶ 65;

3. Ms He "caused Done Prescribers to write prescriptions that were not for a legitimate medical purpose in the usual course of professional practice by discouraging follow-up medical care for Done members," Ind. ¶ 68;

4. "Done Prescribers were able to obtain lucrative pay for minimal work, sometimes hundreds of thousands of dollars a year in exchange for writing prescriptions for Adderall and other stimulants without much, if any, in-person or audio-visual telemedicine consultation with the Done members," Ind. ¶ 68;

5. Done "paid Done Prescribers solely based on 'patient load' (the number of patients to whom Done Prescribers wrote prescriptions each month), and refused to pay for patient consultation, time, or medical services that Done Prescribers provided to Done members after an initial consultation," and "use[ed] the comp structure to dis-encourage follow-up" Ind. ¶ 68; and

6. Ms. He "persisted in the unlawful practices described [in the Indictment] after being made aware that," among other things "Done members had overdosed and died." Ind. ¶ 72.

In addition to the allegations in the Indictment, the Government's exhibit list makes clear that the Government intends to argue that Done terminated certain clinicians that raised concerns about the Company's policies, including N.E., M.O., I.H, and S.R.

After a careful review of the evidence, on September 15, the Court-ordered deadline for Ms. He to assert or forfeit an advice of counsel defense, Ms. He notified the Government that she intends to argue at trial that she relied on the advice of counsel based on communications about the below subject matters that are relevant to the Government's specific charges against her.

1. Done's organization under a friendly PC structure pursuant to a Master Services Agreement drafted between May and August 2020;
2. Done's implementation of a 30 minute initial appointment time;
3. Federal guidance and regulations during the Public Health Emergency declared in or around March 2020, and state laws/regulations, regarding the minimum required follow-up frequency;
4. Federal guidance during the Public Health Emergency declared in or around March 2020 regarding the use of asynchronous[1] follow-up;
5. Done's panel pay model memorialized in clinician contracts drafted in October 2020 and revised in September 2021;
6. Done's response to H.B.[2] mother's request for her adult son's medical records; and
7. Done's terminations of N.E., M.O., I.H., and S.R.

In addition to identifying the above subject matters that relate to Ms. He's advice of counsel defense, Ms. He disclosed over 5,000 pages of material that would otherwise be privileged, but that she had identified as being related to the subject matters implicated by her defense.

[1] "Asynchronous" follow up means follow up that is not an in-person or real-time audio-visual consultation.

[2] H.B. is a Done patient who died of a fentanyl overdose—a drug that he obtained **<u>outside</u>** of his treatment at Done.

## ARGUMENT

### I. THE GOVERNMENT MISSTATES THE LAW AND IGNORES LONG STANDING PRECEDENT CONFIRMING THE PROPRIETY OF A LIMITED SUBJECT MATTER DISCLOSURE.

The primary contention in the Government's Motion is that Ms. He has made a "selective disclosure." (Mot. at 1, 2, 5, 11). Ordinarily, a selective disclosure refers to a circumstance in which a litigant has waived privilege over a certain topic but has not produced *all communications* related to *that topic*, instead producing only *favorable* communications. Selective disclosure of this sort is not permitted. This basic proposition is all that *Chevron* and *Weil,* the two Ninth Circuit cases cited by the Government, stand for. *See Weil v. Investment/Indicators*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications *on the same subject*.") (emphasis added); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1157 (9th Cir. 1992) (where litigant, Pennzoil, defended its purchase of Chevron stock by claiming that it bought the stock "upon the advice of counsel" rather than in bad-faith, Pennzoil was required to produce the communications where counsel advised Pennzoil to purchase the Chevron shares, as otherwise, legal advice was being utilized as both a "sword," in that Pennzoil argued that its actions were motivated by the legal advice rather than bad-faith, but also a "shield," because Pennzoil refused to disclose the actual advice).

There has been no "selective disclosure" by Ms. He. With respect to the seven discrete subjects described in Ms. He's Notice, she has provided *all* privileged communications that she has identified, including with *every attorney* who gave advice on these subjects in the time period of the alleged drug trafficking conspiracy. The Government's vague insinuation that there might be other communications, with other counsel or other law firms, regarding these seven subjects, *see* Mot. at 8, 10, is complete speculation and more to the point, is simply incorrect—a fact which Ms. He would have happily confirmed, had the Government bothered to ask. Accordingly, several of the cases cited by the Government in its Motion are clearly inapposite here. *See In re Actos*

*Antitrust Litig.*, 628 F. Supp. 3d 524, 535-36 (S.D.N.Y. 2022) (where the defendant sought to waive legal advice concerning only "pre-2003 regulations," fairness required a disclosure that comprised advice on those regulations without limitation by specific year); *Inmuno Vital, Inc. v. Telemundo Grp., Inc*. 203 F.R.D. 561, 564 (S.D. Fla. 2001) (defendant could not waive privilege only as to advice "rendered by [in-house general counsel]" while "assert[ing] the attorney client privilege with respect to questions about whether [d]efendants sought or received advise from outside counsel on the issue") (emphasis in original).

In most instances, however, when the Government uses the phrase "selective disclosure" in its Motion, it is actually referring to something *different* than the ordinary meaning discussed above. The Government uses "selective disclosure" to seemingly refer to a new principle of law that the Government has made up, in which disclosure of legal advice regarding *one specific topic* opens the door and necessitates disclosure and waiver of legal advice on *every* topic, so long as the opposing party can articulate some sweeping category under which all the advice might fall, such as, the Government posits, the category of "legal compliance." *See* Mot. at 8. This is not the law and the cases cited by the Government, once reviewed, only demonstrate how willing the Government is to risk reversible error in this case in order to prevent Ms. He from presenting important evidence in her own defense.

For example, *United States v. Carver*, the Florida case relied on by the Government in support of its claim that the Court must broaden Ms. He's waiver to encompass the entire field of "compliance" with all "laws, rules, and regulations governing the prescription of controlled substances," *see* Mot. at 11-12, has no precedential value whatsoever, since in *Carver*, the defendants themselves agreed that they were seeking to waive privilege over "legal advice [regarding] [their] compliance with healthcare laws, rules, and regulations in the running of the business operations described in the Superseding Indictment." No. 22-CR-80022, 2023 WL 5916561, at *2 (S.D. Fla. Aug. 1, 2023), *report and recommendation adopted sub nom. United States v. Dougherty*, No. 22-80022-CR, 2023 WL 5620715 at *2 n.5 (S.D. Fla. Aug. 31, 2023) ("Neither Defendant objected to the Report's characterization of the subject matter underlying their

advice-of-counsel defense."). In other words, *Carver* stands only for the unremarkable proposition that in some cases, certain defendants will seek to waive privilege over a broad swath of topics and advice. *Carver* does not, however, stand for the proposition that *every* privilege waiver *must* be as broad as the one sought by the defendants there.

Nor could *Carver* stand for this proposition, because that is not the law and especially not in the Ninth Circuit. *See, e.g.*, *United States v. Mendelsohn*, 896 F.2d 1183, 1189 (9th Cir. 1990) (approving of the district court's rulings in a "limited waiver" situation, specifically because the district court restricted the attorney who had provided the advice to testimony only about the single topic on which waiver had occurred and distinguishing that proper approach from cases in which district courts erred by taking a "limited waiver" as a "ground for opening a much larger field," which was improper); *see also In re Grand Jury Proc.*, 219 F.3d 175, 190 (2d Cir. 2000) (in case cited by the Government, *see* Mot. at 7, admonishing district court that a "subject matter" waiver "can be defined narrowly or broadly"); *Loguidice v. McTiernan*, No. 114CV1323TJMCFH, 2018 WL 4011584, at *4, 7-8 (N.D.N.Y. Aug. 22, 2018) (holding, in case cited by the Government, *see* Mot. at 7, that "where a defendant raises the [so-called] *Mount Healthy* defense" in an adverse employment suit and "it is clear that he relied on counsel's advice in taking *certain actions*, where the specific legal advice is relevant to the defendants' decision, the attorney-client privilege is waived with respect to advice sought and received in making *that* decision.") (emphasis added).

The Third Circuit's decision in *Glenmede Trust Co. v. Thompson,* also cited by the Government, *see* Mot. at 6, likewise does not stand for the proposition that as long as a litigant discloses legal advice on one specific topic, he must waive privilege as to all advice given in connection with any subject that happens to falls within the same broad field. To the contrary, *Glenmede* involved the disclosure of a privileged "Opinion Letter" that had been prepared by counsel for a reputable Trust company, which served as Trustee for various private charitable trusts, regarding a particular buy-back transaction in the securities of a single issuer. 56 F.3d 476, 480 (3d Cir. 1995). In assessing the scope of the privilege waiver, the Court explained that the Opinion Letter "related to the structure of the buy-back transaction" broadly, including advice

concerning the "identity of the parties" and which of the Trust Company's clients could lawfully participate, the amount of shares to be "repurchased" through the transaction, tax advice about the buyback, as well as "a number of issues in addition to tax advice, including insider trading concerns and the financial ramifications of the transaction." *Id*. at 480, 486-487. Given the broad scope of the Opinion Letter, the Third Circuit agreed that the Trust Company had waived privilege over legal advice relating to the general subject of the "buy-back transaction." *Id*. at 480, 486-487. The Third Circuit, however, did *not* suggest, as the Government does here, that because the Trust Company had placed advice as to the buy-back transaction at issue, it was necessarily required to *also* waive privilege over all advice ever received regarding these same clients, separate and apart from the discrete issue of the buy-back transaction.

Moreover, given that Ms. He's case is being tried in the Northern District of California, the case that should guide the Court is not the Third Circuit's decision in *Glenmede* but rather the Ninth Circuit's decision in *Hernandez v. Tanninen*. 604 F.3d 1095, 1100 (9th Cir. 2010). In *Hernandez,* the Ninth Circuit considered a litigant's voluntary disclosure of his former attorney's communications with a particular witness. *Id*. While the district court had found that this voluntary disclosure opened the door to a "blanket waiver" as to "all" advice given by the attorney to the litigant regarding his case, the Ninth Circuit disagreed, finding that the district court had committed "clear[] err[or]" in so ruling. *Id*. The Ninth Circuit confirmed that because the litigant had only "waived privilege with respect" to one discrete topic, that is "his communications with [his former attorney] about [the particular witness]," his waiver was limited to those specific communications "as well as [his former attorney's] communications and work product relating to [the attorney's] interaction with [the witness]." *Id*. In other words, the Ninth Circuit expressly rejected the premise advanced by the Government here, and found, consistent with Ms. He's position, that where a litigant waives privilege over advice received in connection with a specific and discrete topic, that waiver does *not* open the door to a broad waiver of *all* advice received, on every purportedly "related" topic. *Id*.; *see also In re OM Sec. Litig.*, 226 F.R.D. 579, 593 (N.D. Ohio 2005) (in case cited by the Government, *see* Mot. at 6, finding scope of waiver encompassed

the specific "documents underlying the presentation" pertaining to the at-issue restatement, but refusing to "construe[] the subject matter waiver [so] broadly" as "pertaining to the entire investigation that relates to a restatement of earnings"); *Medimmune, LLC v. PDL Biopharma, Inc*., No. C08-05590JF(HRL), 2010 WL 2925390, at *2 (N.D. Cal. July 26, 2010) (holding, in case cited by the Government, *see* Mot at 6, "the disclosure of one email discussing a particular deal point. . . does not justify a broad foray into all of [defendant's] privileged communications concerning the [deal discussed in the disclosed email]").[3]

## II. THE GOVERNMENT'S ABILITY TO PROSECUTE THIS CASE IS NOT PREJUDICED BY MS. HE'S WAIVER OF LEGAL ADVICE REGARDING SEVEN DISCRETE TOPICS.

The Government spends the last few pages of its Motion unsuccessfully attempting to describe how Ms. He's subject matter waiver on seven discrete topics prejudices its ability to try its case. *See* Mot. at 9-12. As a threshold matter, the Government is simply wrong when it tries to predict how Ms. He will use the disclosed advice. Ms. He does not intend to argue that she sought out attorney advice in order to "compliantly operat[e] Done," writ large, while simultaneously limiting evidence of consultations with attorneys to only these seven topics. *See* Mot. at 8, 10. Instead, Ms. He's arguments as to the import of counsel's advice will be limited to refuting the Government's *specific* claims concerning the seven *specific* topics for which she has waived privilege. Ms. He has no intention of trying to suggest that her reliance on counsel extended to any other topics beyond those enumerated in her Notice.

[3] The only other cases from this district cited by the Government, *Handgards* and *SNK Corp. of Am*. (Mot. at 6-7) are wholly inapposite because the defense asserted an advice-of-counsel defense to allegations that they brought *entire* patent infringement lawsuits in bad faith, which necessarily meant that the "communications and documents relating *to the advice*" required producing "*entire* litigation files." *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976); *SNK Corp. of Am. v. Atlus Dream Ent. Co*., 188 F.R.D. 566, 57, 573 (N.D. Cal. 1999). The Government's only other Ninth Circuit authority, *see* Mot. at 6, stands for the non-controversial proposition that "a party relying on the advice of counsel defense waives both the attorney-client privilege and work product protection for documents falling *within the subject matter of the waiver*." *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB, 2022 WL 1747811, at *1, 3 (D. Ariz. May 31, 2022).

It is for this reason that the Government's arguments about prejudice ring hollow. For example, Ms. He has now disclosed *all* privileged communications she has identified concerning advice that she received about changes to federal law concerning "follow up frequency" and the use of "asynchronous" communications to conduct follow ups. *See* Notice at ¶¶ 3, 4. The Government asserts that this waiver is unfair because Ms. He did not waive privilege about advice she received concerning changes to federal law concerning a completely different subject: "state licenses." Mot. at 10. The latter, however, has *nothing to do with the other subject on which Ms. He disclosed* and Ms. He does not intend to argue to the jury that she relied on attorney advice in connection with any "state license" issue. *See United States v. Patel*, 9:19-cr-80181, ECF No. 290 at 1, 3 (S.D. Fla. Oct. 11, 2022) (in case cited by the Government, *see* Mot. at 12, rejecting the Government's "issue with what it describes as [defendant's] selective assertion of the attorney-client privilege," and holding that the defense "has no legal obligation to produce" evidence outside the scope of the waiver unless defendant "intends to rely on that evidence to support an advice-of-counsel defense."). For the same reason, the Court should reject the Government's complaint that because Ms. He waived privilege with respect to the termination of four nurse practitioners, she must now waive privilege regarding any advice given in connection with any (and every) person affiliated with Done. Mot. at 10.

Likewise, although its argument on this point is largely incomprehensible, it appears that the Government believes that it will now be prejudiced in its ability to argue that Ms. He defied corporate formalities and sought to control "Done Health," even though she is not a doctor, because of Ms. He's disclosure of the advice she received regarding the need for a separate medical corporation to be formed, distinct from the operational entity that controlled the technological platform. *See* Mot. at 9. This complaint is also specious. Nothing about the advice disclosed by Ms. He prevents the Government from arguing that Ms. He disregarded corporate formalities or from introducing the exact evidence that the Government intended to introduce on this point all along.

Finally, the Court should dismiss the Government's grumblings about "delay." Mot. at 11. Ms. He, after reviewing the Government's evidence, made the weighty decision to raise an advice of counsel defense by the September 15 deadline set by the Court. As such, there is absolutely no basis for an order precluding Ms. He from raising her advice of counsel defense on the grounds that her Notice was served too "close to the trial date." *Id.* As for the Government's complaint that Ms. He did not submit a written "waiver," like the one utilized in *United States v. Patel*, *see* Mot. at 12, the Government cites no authority for its claim that Ms. He was required to provide such a document and the fact that the Government had to cite to a case in the Southern District of Florida only underscores that point.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Government's motion to preclude Ms. He from asserting an advice of counsel defense.

Dated: September 21, 2025 WILLKIE FARR & GALLAGHER LLP

By: */s/ Koren Bell*
Koren Bell
Michael S. Schachter
Steven J. Ballew

*Attorneys for Defendant*
RUTHIA HE