WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
  kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
  mschachter@willkie.com
  sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY, <br><br> Defendants. | CASE NO. 3:24-cr-00329-CRB <br><br> **DEFENDANT RUTHIA HE'S TRIAL BRIEF CONCERNING THE GOVERNMENT'S TRIAL EXHIBITS 61, 72, 77, 80, 83, 88, 95, 100, 113, 255, AND 260** |

On September 25, 2025, the Government served Defendant Ruthia He with the exhibits it intends to introduce on the first day of trial through witness Nwamaka Emeruem, a nurse practitioner who performed as an independent contractor utilizing Done's online telehealth platform. Ms. He wishes to alert the Court, in advance, to her likely objection, on hearsay grounds, to at least eleven of the Government's proffered trial exhibits (Exhs. 61, 72, 77, 80, 83, 88, 95, 100, 113, 255, 260). Each is a transcript of private text messages exchanged between Emeruem and multiple other independent contractors who also utilized the Done telehealth platform for their personal nurse practitioner medical practices (the "Emeruem Private Text Messages," referring collectively to Exhs. 61, 72, 77, 80, 83, 88, 95, 100, 113, 255, 260). The Emeruem Private Text Messages were exchanged on the *personal phones* of these contractors—*not* on the Done platform, Done "Slack" channel, or Done email system. Some of the nurse practitioner participlants in these conversations continued to participate on the text threads about Done *after* their association with the company ended. Neither Ms. He nor Dr. Brody is a participant in any of the Emeruem Private Text Messages, none of the Emeruem Private Text Messages were shared with either of them, and neither Defendant had any ability to access the Emeruem Private Text Messages during the course of the relevant period.

In substance, the Emeruem Private Text Messages consist of griping and gossiping about Ms. He and Dr. Brody by a handful—out of the approximately 400—independent contractors who utilized the Done technology platform as part of their medical practices. The only marginal relevance to the Emeruem Private Text Messages is if the gossip and grievances aired therein are admitted for "truth." But, as out-of-court statements for which no exception to the bar against hearsay applies, the Emeruem Private Text Messages cannot be admitted for their truth.

Defendants suspect that the Government plans to argue that the Emeruem Private Text Messages can be admitted for truth because they constitute "agent admissions" of Ms. He and Dr. Brody, pursuant to Federal Rule of Evidence 801(d)(2)(D). The Court should reject this argument. As the Emeruem Private Text Messages *themselves* make perfectly clear, the nurse practitioners participating in these Text Messages were, and always considered themselves to be, *independent*

*contractors* utilizing the Done platform for their own private medical practices. They were not, and did not consider themselves to be, "agents" of Ms. He or Dr. Brody. In fact, the primary subject of the Emeruem Personal Text Messages is a discussion of how these independent contractors had decided *not* to adhere to the suggested Done "policy" concerning prescription refills. It is axiomatic that a person who refuses to abide by anyone's rules but their own is not an agent—of anyone. Moreover, even if there was some credible argument to be made that these independent contractors constituted "agents" of Ms. He and Dr. Brody, personally—which there isn't—gossiping and griping on a personal cell phone, during one's personal time, cannot constitute statements within the "scope" of whatever "agency" relationship the Government contends existed. Further, in addition to their inadmissibility as hearsay, these messages should not be admitted under Rule 403 because whatever marginal probative value these Messages might have, that value is clearly outweighed by the risk of prejudice in this criminal trial.

### I. THE EMERUEM PRIVATE TEXT MESSAGES ARE INADMISSIBLE HEARSAY AND CANNOT BE ADMITTED AS "AGENT ADMISSIONS" OF MS. HE OR DR. BRODY.

An out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement" is inadmissible hearsay. Fed. R. Evid. 801(d). Defendants assume that the Government intends to argue, as it previewed in its previously-filed Motion *in Limine* No. 4, that the Emeruem Private Text Messages constitute "agent admissions" of Ms. He and Dr. Brody and thus can be admitted for their "truth" pursuant to Federal Rule of Evidence 801(d)(2)(D). "The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by *substantial evidence*." *Stewart v. Wachowski*, 574 F.Supp.2d 1074, 1095 (C.D. Ca. 2005) (citation omitted) (emphasis added); *Jackson v. Fed. Express*, No. CV1001760MMMCWX, 2011 WL 13268046, at *11 n.108 (C.D. Cal. May 11, 2011) (sustaining hearsay objection to statements offered under FRE 801(d)(2)(C)-(D) because the proponent failed to meet its burden to demonstrate that the declarant made the statement within the scope of an agency relationship).

The independent nurse practitioners participating in the Emeruem Personal Text Messages were not the "agents" of Ms. He or Dr. Brody. They contracted with a company called Okay Health—a precedessor entity to what ultimately became known as Done Global and Done Health PC. Moreover, even putting aside what company the nurse practitioneers contracted with, it is clear that, even in employee/ employer contexts, employees serve as agents of the *corporation*, not as personal agents to company executives or company owners. *Meyer v. Holley*, 537 U.S. 280, 286 (2003)("A corporate employee typically acts on behalf of the corporation, not its owner or officer.").

Moreover, Emeruem and the other nurse practitioners participating in the Emeruem Private Text Messages were **not** employees but rather *independent contractors*. *See* Ex. 1505 (attached hereto) (nurse practitioner contract, which has been marked as a Government trial exhibit, and which provides at Section 9, entitled "**Independent Contractors; No Partnership,**" that "**nothing herein shall be construed to create a partnership or principal-agent, employer-employee, master-servant, partner or joint venture relationship between the parties**. Except as otherwise set forth herein, **neither party shall have the authority to bind the other party**. The parties hereto expressly disclaim any intent to create a partnership or joint venture and nothing in this Agreement shall be construed as evidence that a partnership has or will be created."). The Ninth Circuit has confirmed that "unlike employees, *independent contractors are not ordinarily agents*." *United States v. Bonds*, 608 F.3d 495, 503 (9th Cir. 2010) (excluding statements from athletic trainer who took Barry Bond's urine samples for steroid testing because he "was an independent contractor, rather than an employee"); *see also Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1440 (9th Cir. 1990) (excluding statements because proponent "did not establish that the [declarants] were 'agents' of the [party opponent] as opposed to independent contractors; nor did [the proponent] show that [the declarants'] statements . . . concerned a matter within the scope of their agency").

In prior briefing, the Government argued that the fact that these nurse practitioners contracted to work as "independent contractors" is not determinative, but rather is one factor to be

considered among others, namely: (1) the control exerted by the [alleged] "employer," (2) whether the one "employed" is engaged in a distinct occupation, (3) whether the work is normally done under the supervision of an "employer," (4) the skill required, (5) whether the "employer" supplies tools and instrumentalities, (6) the length of time "employed," (7) whether payment is by time or by the job, (8) whether the work is in the regular business of the "employer," (9) the subjective intent of the parties, and (10) whether the employer is or is not in business. *See Bonds*, 608 F.3d at 504.

There should be no dispute on most of these factors. The nurse practitioners here were *highly specialized* medical professionals. Each was a Psychiatric-Mental Health Nurse Practitioner (often referred to as a PMHNP), meaning that they not only had to become a registered nurse, *i.e.,* a R.N., but also had to obtain a graduate degree—either a Masters or a Doctorate—in nursing. At that point, they had to pass a rigorous examination known as the NCLEX-RN examination, and if they passed, could only then apply to certain accredited Psychiatric-Mental Health Nurse Practitioner programs. In those programs, they were required to complete 500 relevant, faculty-supervised clinical hours and only at that point did they even qualify to *sit* for the psychiatric-mental health nurse practitioner exam. If they were able to pass that exam, they could then apply for state-specific PMHNP certifications. In other words, these independent contractors were highly skilled professionals working in a "distinct occupation." *Bonds*, 608 F.3d at 504.

Generally, "[i]f a worker is engaged in a distinct occupation or business, then that would suggest that the worker is an *independent contractor* rather than an employee" and, specifically, occupations that require "state licenses" that the individual uses for "separate companies" tends to "suggest[]" a distinct occupation," thereby further suggesting that the person is an independent contractor. *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1102 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016); *see Brohmer v. United States*, No. 1:02-CV-5649 OWW DLB, 2006 WL 3300398, at *35 (E.D. Cal. Nov. 14, 2006) ("California courts have recognized that a worker is more likely to be an "independent contractor" if his or her occupation requires a particularized skill and/or the exercise of judgment in its execution.").

Likewise, these independent contractors did not work under the "supervision" of Ms. He, who was the CEO of the separate *technology company*, that contracted with the nurses. But even Dr. Brody, who served as the President of Done Health P.C., which was formed after the nurses entered into their contracts, did not "supervise" or "control" these independent medical providers. Indeed, the fact that these nurse practitioners were **always** entitled to make their *own* clinical decisions and did *not* need to abide by practices suggested by Dr. Brody, Ms. He or anyone in Done's Medical Leadership Team is a point that is made *repeatedly*, **by the nurse practitioners themselves**, in the Emeruem Private Text Messages:

- Ex. 61, at 3 ("Our contract also states that ***they are not authorized to tell us how/when to prescribe for our patients***. This is from our contract: . . . Company shall neither have nor exercise any control or discretion over the methods by which the Practitioner shall practice medicine, or provide ancillary services.");

- Ex. 61 at 2 ("I have already personally told them that ***I will NOT be doing the refill system*** and need to see my patients on my schedule.");

- Ex. 72 at 4: ("***I don't do them***," in response to a message regarding a conversation with Done Medical Director, Dr. Leslie Tsang " about the Refill policy . . . .");

- Ex. 80 at 1 ("***I think I'm going to flat our refuse any further refills as well***.");

- Ex. 80 at 3 ("All of my patient knows [*sic.*] that I will not do any refills for a C2, period.");

- Ex. 80 at 4 ("Ladies let's preserve our energy on this. They are ignorant and they will learn. ***Tell every patient on every visit and don't do it by any means***.");

- Ex. 83 at 1 ("I'm now telling every patient I see that, ***despite any messages they may receive from Done, they will need to schedule appointments with me for refills…NOT request them through the app***.")

Several of the Emeruem Private Text Messages specifically demonstrate that the practitioners clearly viewed themselves as independent contractors—*i.e.*, that they did not "work for" Done, much less Ms. He or Dr. Brody:

- Ex. 88 at 2 ("***Done needs to remember that they are NOT in the practice of medicine*** . . . they are ***only the software platform*** we use and ***they cannot make clinical decisions***, including sending our patients to other providers for refills when our clinical judgment says they need an appointment.");

- Ex. 80 at 4 ("Providers are the driving force of this company and *we all carry our own personal liability and insurance not DONE*. If anything happens to these patients, *we (the provider) will be punished by law not the company*. Every state is different so there is no way to put us all under one umbrella. I'm sure we can all find a way to keep patient cost low while keep our license safe.");

- Ex. 100 at 4 (commenting, "Great advocacy for yourself! They know how much business you bring in and the great reviews by patients and they know what they will be losing if you leave. . .," which garnered the sarcastic response: "*Oh they really think we work for them*. **Ok.**" which led another participant to confirm: "***They are so confused / All the time / About everything.***");

- Ex. 100 at 6 (returning to subject in above bullet point: "***They really do think we work for them!! Ha!*** They better rewrite that contract because I feel like they may need reminding on what I signed. I'm sure it has been changed since mine ***but I still go by what the one I signed says,***" referring to the fact that the nurse practitioner contract confirms that the nurse practitioners must make their *own independent* clinical decisions.)

With respect to the other *Bonds* factors, these nurse practitioners did not receive a salary, but rather were paid based on the number of patients they treated and the specific kind of medical care provided (*i.e.*, initial assessment vs. follow up). *See United States v. Al-Shawaf*, No. 516CV01539ODWSPX, 2018 WL 4501108, at *6 (C.D. Cal. Sept. 19, 2018) quoting *Hennighan*, 38 F. Supp. 3d at 1104 ("Where the worker is paid by the hour, it typically suggests an employment relationship; where the worker is paid by the job, it points toward independent contractor.").

While Done provided certain "tools" to these nurse practitioners, such as the ability to use the Done website to book appointments or correspond with patients, the primary "tool" necessary to do the "work" was the practitioners' own medical judgment and experience, which was not "provided" by Done but rather supplied by the independent contractors themselves. In fact, even in the Emeruem Private Text Messages, the participants refer to Done as "*nothing more than a billing service.*" Ex. 72 at 6; Ex. 88 at 2 ("***Done needs to remember that they are NOT in the practice of medicine*** . . . they are ***only the software platform*** we use and ***they cannot make clinical decisions***."). As the Emeruem Private Text Messages demonstrate, many of these independent medical providers who utilized the Done platform also worked simultaneously for *other* patients

6

DEFENDANT RUTHIA HE'S TRIAL BRIEF CONCERNING GOVERNMENT TRIAL
EXHIBITS 61, 72, 77, 80, 83, 88, 95, 100, 113, 255, AND 260
Case No. 3:24-cr-00329-CRB

associated with *other* clinics and *other* practices, which further proves their status as independent contractors, not agents. *See, e.g.*, Ex. 72 at 1 ("**I had a patient at my other practice** I've seen only 2x over course of 8 months- she's a transfer of care from other np who left"); *Id.* at 3 (in response to "[s]o this wasn't a Done patient?" stating, "[y]eah this is not [D]one my follow ups at this [other] clinic are 30 minutes").

Moreover, even if the Court were to conclude that these nurse practitioners were somehow the personal "agents" of Ms. He or Dr. Brody, a private text message chain, purposefully *exchanged on the contractors' personal devices*, rather than through company software, complaining and demeaning Ms. He and Dr. Brody is not a statement made within the "scope" of their agency relationship. *See* Ex. 61 at 1 (texting *personal* cell phones of several independent contractors who also used the Done platform and writing, "I thought it might be nice for us to **talk privately** about the refill policy."). Moreover, the Text Messages stretch over a six month period and several of the participants left the Done platform while still continuing to participate in the Text Messages, meaning that *none* of the messages from those individuals, after the date they left Done could ever be admitted under Federal Rule of Evidence 801(d)(2)(D), since that rule only permits agent admissions made "while [the agency relationship] existed."

II. **STATEMENTS WITHIN THE EMERUEM PRIVATE TEXT MESSAGES MUST BE EXCLUDED AS MORE PREJUDICIAL THAN PROBATIVE.**

Certain statements within the Emeruem Private Text Messages must also be excluded as more prejudicial than probative. These messages are stream-of-consciousness, petty workplace chatter, that has zero indicia of reliability and they include myriad disparaging comments about Ms. He, personally, each of which should be redacted and precluded from the jury's consideration:

• Ex. 255 at 1 ("Happy New Year **God is good and I'm so thankful he saved me from that place!** I'm so happy at where I'm at now! **That women is evil** an al the crap she put us through!")

• Ex. 255 at 2 ("**Ruthia handled the incident in the cold blooded way you would expect**…she had her lawyers draft a letter to the mother stating that Done can't confirm/deny or discuss treatment of this patient due to HIPAA privacy laws.")

Dated:  September 28, 2025              WILLKIE FARR & GALLAGHER LLP

                                By:     */s/ Koren Bell*
                                        Koren Bell
                                        Michael S. Schachter
                                        Steven J. Ballew

                                        *Attorneys for Defendant*
                                        RUTHIA HE