**THE CHAPMAN LAW FIRM**
Ronald W. Chapman, II, LL.M. *(pro hac vice)*
456 E. Milwaukee Avenue
Detroit, Michigan 48202
Ph: 346-242-7626
E: Ron@Chapmanandassociates.com

**DOWLING DEFENSE GROUP LLC**
John J. Dowling III. *(pro hac vice)*
6201 Fairview Road, Suite 200
Charlotte, North Carolina 28210
Ph: 631-574-7905
E: john@dowlingdefensegroup.com

**ROBERTO ESCOBAR**
CA Bar No. 217352
201 N. Brand Blvd., Suite 200
Glendale, California 91203
Ph: 818-281-0541
E: bobby@elaw.business

Attorneys for Defendant David Brody

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>        Defendants. | CASE NO.:  3:24-CR-00329-CRB<br><br>**DAVID BRODY'S MOTION FOR A NEW TRIAL** |

1

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, April 30, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant David Brody will and hereby does move for an order granting a new trial under Federal Rule of Criminal Procedure 33. This motion is supported by a Memorandum of Points and Authorities, which follows below.

3:24-CR-00329-CRB

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ 5

INTRODUCTION .................................................................................................................... 7

BACKGROUND .................................................................................................................... 10

SUMMARY OF ARGUMENT .................................................................................................. 11

LEGAL STANDARDS ........................................................................................................... 12

ARGUMENT ........................................................................................................................ 13

I.    By forcing Dr. Brody's new counsel to proceed to trial in such a compressed timeframe, the Court denied Dr. Brody his Sixth Amendment right to the effective assistance of counsel. ...... 13

    A.    Relevant background. ................................................................................................. 13

        1.    Dr. Brody's lawyers abandon him three months before trial. ..................................... 13

        2.    A solo practitioner inherits the defense case three months before trial. ..................... 14

        3.    Litigation, filings, and discovery productions during the summer of 2025. ................ 14

        4.    Ms. Nechay moves for a continuance based on inadequate time to prepare and a medically necessary procedure. .................................................................................. 15

    B.    Argument. .................................................................................................................. 16

        1.    There had been only one previous continuance. ........................................................ 18

        2.    Inconvenient for them, impossible for her. ............................................................... 18

        3.    The motion to continue was based on legitimate constitutional and medical reasons. 19

        4.    The Court's refusal to continue prejudiced Dr. Brody. ............................................... 20

        5.    The reasons for the requested delay were outside Dr. Brody's control. ...................... 21

II.    The Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to the effective assistance of counsel. ......................................................................................... 22

    A.    *Strickland* one: Ms. Nechay was ineffective when she outsourced nearly the entire defense to someone else's lawyer without an adequate investigation. ............................................. 23

        1.    The doctrine of strategic choice. .............................................................................. 23

        2.    Scope of review. ...................................................................................................... 24

        3.    The present case. ...................................................................................................... 29

    B.    *Strickland* two. ......................................................................................................... 28

III.    The Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to present a complete defense. ........................................................................................................ 30

    A.    The right to present a complete defense. ..................................................................... 30

    B.    The cumulative effect of the Court's evidentiary rulings knee-capped Dr. Brody's right to present a complete defense. .......................................................................................... 32

        1.    Dr. Brody's training videos were crucial evidence. ................................................... 32

        2.    The Court prohibited the defense from calling former patients. ................................ 33

CONCLUSION ..................................................................................................................... 34

3:24-CR-00329-CRB

**TABLE OF AUTHORITIES**

**Cases**

*Avery v. Alabama*, 308 U.S. 444 (1940)................................................................17

*Chambers v. Mississippi*, 410 U.S. 284 (1973). ..........................................10, 31

*Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) .......................................25

*Correll v. Ryan*, 539 F.3d 938 (9th Cir. 2008) .............................................9, 24

*Ewing v. Williams*, 596 F.2d 391 (9th Cir. 1979)............................................25

*Faretta v. California*, 422 U.S. 806 (1975).....................................................17

*Greiner v. Wells*, 417 F.3d 305 (2d Cir. 2005).................................................23

*Henry v. Poole*, 409 F.3d 48 (2d Cir. 2005).....................................................25

*Holmes v. South Carolina*, 547 U.S. 319 (2006)..............................................31

*Lama v. Borras*, 16 F.3d 473 (1st Cir. 1994). .................................................28

*Matylinsky v. Budge*, 577 F.3d 1083 (9th Cir. 2009) .......................................28

*Portuondo v. Agard*, 529 U.S. 61 (2000) .........................................................31

*Reynoso v. Giurbino*, 462 F.3d 1099 (9th Cir. 2006).......................................24

*Rosario v. Ercole*, 601 F.3d 118 (2d Cir. 2010)...............................................25

*Ruan v. United States,* 597 U.S. 450, 457 (2022)..............................................33

*Rogers v. Dzurenda*, 25 F.4th 1171 (9th Cir. 2022)..................9, 12, 24, 27, 28

*Smith v. Brookhart*, 996 F.3d 402 (7th Cir. 2021) ...........................................34

*Strickland v. Washington*, 466 U.S. 668 (1984)...........9, 10, 11, 23, 24, 25, 29

*Ungar v. Sarafite*, 376 U.S. 575 (1964) ...........................................................17

*United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992).............12

*United States v. Arny*, 831 F.3d 725 (6th Cir. 2016).................................10, 34

*United States v. Campbell*, 135 F.4th 376 (6th Cir. 2025)...............................33

*United States v. Cronic*, 466 U.S. 648 (1984).......................................7, 23, 25

*United States v. Diaz*, 876 F.3d 1194 (9th Cir. 2017). .....................................28

*United States v. Evans*, 728 F.3d 953 (9th Cir. 2013).........................10, 32, 33

3:24-CR-00329-CRB

*United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000)................................................12

*United States v. Leavitt*, 608 F.2d 1290 (9th Cir. 1979)..............................................18, 20

*United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992)..............................10, 32, 33

*United States v. Nixon*, 418 U.S. 683 (1974) ....................................................................31

*United States v. Osorio-Arellanes*, 112 F.4th 647 (9th Cir. 2024)....................................24

*United States v. Rojas-Contreras*, 474 U.S. 231 (1985) ...................................................17

*United States v. Scovis*, 743 F. App'x 795 (9th Cir. 2018) ...............................................31

*United States v. Steele*, 733 F.3d 894 (9th Cir. 2013). .....................................................13

*United States v. Stever*, 603 F.3d 747 (9th Cir. 2010)................................................11, 32

*United States v. Studley*, 783 F.2d 934 (9th Cir. 1986).....................................................18

*United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009)...............................................18

*United States v. Verderame*, 51 F.3d 249 (11th Cir. 1995)...............................................17

*United States v. Zamora-Hernandez*, 222 F.3d 1046 (9th Cir. 2000) ...........................9, 22

*United States v. Zolot*, 968 F. Supp. 2d 411 (D. Mass. 2013)...........................................28

*Wiggins v. Smith*, 539 U.S. 510 (2003) .............................................................................24

*Williams v. Florida*, 399 U.S. 78 (1970)...........................................................................31

*Wood v. Allen*, 558 U.S. 290 (2010)...................................................................................22

*Yokely v. Hedgepeth*, 801 F. Supp. 2d 925 (C.D. Cal. 2011) ...........................................22

**Other Authorities**

Federal Rule of Criminal Procedure 33...........................7, 9, 10, 11, 12, 13, 17, 22, 31, 35

Federal Rule of Evidence 404(b)..........................................................................................15

Federal Rule of Criminal Procedure 29................................................................................12

Defendant David Brody submits this memorandum of points and authorities in support of his motion for a new trial under Federal Rule of Criminal Procedure 33(a).

**INTRODUCTION**

Dr. David Brody devoted his life to helping others with mental health challenges. In furtherance of that effort, he agreed to serve as a clinical president for a large telemedicine company that provided nationwide access to care for adults with ADHD. After a few years of operations, the Government charged Dr. Brody and his co-defendant, Ruthia He, with conspiring to illegally distribute stimulants without a legitimate medical purpose, substantive violations of the Controlled Substances Act, health care fraud, and, for Ruthia He, obstruction of justice. *See* ECF No. 1. The co-defendant and the Government had well-staffed, well-funded, and well-prepared benches of several lawyers. Dr. Brody, however, had a solo practitioner who inherited the case only ninety days before trial. The jury convicted him on all counts. Because of the procedural and structural breakdown in his defense, the verdict was not the result of the robust adversarial testing process the Framers envisioned and that the Supreme Court has described as the result of "the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984). Based on this breakdown, Dr. Brody is entitled to a new trial in the interest of justice under Federal Rule of Criminal Procedure 33.

*First*, by forcing Dr. Brody's new counsel to proceed to trial in such a compressed timeframe, the Court denied Dr. Brody his Sixth Amendment right to counsel. The Court should have granted Dr. Brody's motion to continue the trial because there were legitimate constitutional, practical, and medical reasons for the requested delay.

Ruthia He originally agreed to pay for Dr. Brody's defense. But when she cut off funding only six months before trial, that decision set in motion a series of cascading problems that resulted in the collapse of Dr. Brody's defense team and, ultimately, the adverse jury verdict. After his three attorneys abandoned him due to a lack of funding only ninety days before trial, Dr. Brody was left with a solo

7

practitioner who was not equipped to handle the case.  Only a few months before trial, the Government produced over 1.2 million pages of discovery for a total of over 20 million pages of discovery.  ECF No. 377-2 at 2.  In addition, from the moment his new counsel inherited the case, the Government and the co-defendant's attorneys were engaged in scorched-earth motion practice on a series of dense legal issues that Dr. Brody's counsel had to review.  *See, e.g.*, ECF Nos. 304, 305, 312, 314, 317, 318, 319, 330, 330, 331, 333, 334, 335.  As Dr. Brody's lawyer explained in her first and only motion to continue: "[i]t is physically impossible for any attorney to competently review, analyze, and prepare this mountain of evidence for trial set to begin next month."  ECF No. 377-2 at 8.  Trial counsel also explained—and produced documentation to support—that she had a personal medical issue that was hampering her ability to devote her focus to Dr. Brody's defense.  *Id.*  The "recent exacerbation of painful symptoms," she explained, "require[ed] a medically necessary procedure" that "caused unforeseen delays after [she] entered her appearance on the case."  ECF No. 377-3 at ¶¶ 3-4.

When the Court denied the motion to continue from the bench less than twenty-four hours after filing, seemingly relying exclusively on counsel's earlier "representations that [counsel] would be ready to proceed" as planned, the record does not reflect that the Court considered the factors under *United States v. Turner*, 897 F.3d 1084, 1102 (9th Cir. 2018).  For example, there had only been one previous continuance, the inconvenience to Dr. Brody's counsel outweighed any inconvenience to other stakeholders, the motion was based on legitimate constitutional and medical reasons, the refusal to continue trial prejudiced Dr. Brody, and the reasons for the requested continuance were outside of Dr. Brody's control.  Because all of the *Turner* factors cut in favor of continuing the trial, this was a "justifiable request for delay."  *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

In this case, "[t]he wheels of justice were spinning too fast[,] and [this] [C]ourt's denial of a continuance compromised [Dr. Brody's] right to a fair trial."  *United States v. Zamora-Hernandez*, 222 F.3d 1046, 1057 (9th Cir. 2000) (Nelson, J., dissenting).  Because the denial of the motion to continue

3:24-CR-00329-CRB

forced Dr. Brody's lawyer to prepare for a trial of this magnitude without the requisite preparation, Dr. Brody was denied his right to the effective assistance of counsel, and the Court should grant Dr. Brody a new trial under Rule 33.

*Second*, Dr. Brody is entitled to a new trial because his trial lawyer was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Trial counsel abdicated her role as defense counsel for Dr. Brody and outsourced it to the co-defendant's attorneys and failed to call an expert witness to rebut the Government's expert's testimony about Done's prescribing practices. Neither decision was the product of a strategic choice, and these decisions are therefore not entitled to deference. *Rogers v. Dzurenda*, 25 F.4th 1171, 1183 (9th Cir. 2022). Faced with the impossible task before her, she pursued the only option available: outsource nearly the entire defense strategy to the co-defendant's attorneys and pursue a joint defense strategy. That decision was not, and could not, have been the product of a reasonably thorough factual and legal investigation calculated to result in a strategic choice. Without the requisite investigation to support her decisions, a trial lawyer cannot be said to have made a "strategic" choice. *Correll v. Ryan*, 539 F.3d 938, 949 (9th Cir. 2008).

Trial counsel's decision to delegate, outsource, and pursue a joint defense strategy with the co-defendant prejudiced Dr. Brody. If trial counsel had investigated, she would have realized that a joint strategy was unlikely to result in an acquittal. And if she had investigated, she would have realized that it was critical to call an expert medical witness, lest Dr. Goodman enjoy a monopoly on the discussion regarding what is at the very heart of this case: The medical legitimacy of Done's prescribing practices.

As a result, because Dr. Brody's attorney's decision to delegate the defense to the co-defendant's attorneys and to pursue a joint defense strategy was not the product of a strategic choice and because it prejudiced Dr. Brody, he was denied his right to counsel under *Strickland*. He is entitled to a new trial.

*Third*, the Court should grant Dr. Brody a new trial under Rule 33 because he was denied his right to present a complete defense under *Chambers v. Mississippi*, 410 U.S. 284 (1973).

3:24-CR-00329-CRB

The Court precluded Dr. Brody from introducing his training videos, which represented "the main piece of evidence . . . for the defendant's main defense . . . to a critical element of the government's case." *United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013).  If these videos had been introduced, there is no doubt they would have "added substantially to the knowledge the jury [would have] gained during the course of the trial."  *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992).

In addition, the Court prohibited the defense from calling patients to testify about legitimate care they received from Done.  This fundamentally created an incomplete, one-sided impression for the jury that the sixteen patients the Government's expert discussed at trial represented the entire universe of the approximately 140,000 patients that Done treated.  The Court should have permitted the defense to call Done's former patients.  *See United States v. Arny*, 831 F.3d 725, 733-34 (6th Cir. 2016) (affirming district court's order for a new trial where defense counsel failed to investigate and call doctor's former patients to testify about legitimate care they received).

The "cumulative effect," *Chambers*, 410 U.S. at 290 n.3, of these exclusions hampered Dr. Brody's right to present a complete defense, and relegated his position as being "confined to poking holes in the Government's case[,]" rather than being able to affirmatively present evidence, *United States v. Stever*, 603 F.3d 747, 757 (9th Cir. 2010).

### BACKGROUND[1]

In the summer of 2024, a federal grand jury sitting in this District returned a seven-count Indictment charging defendants Dr. Brody and his business partner Ruthia He with a series of offenses related to their work at, and operation of, Done Global, Inc., a telemedicine company providing nationwide treatment for adults with attention deficit hyperactivity disorder.  ECF No. 1.  The Indictment charged defendants with conspiracy to violate the Controlled Substances Act, four counts of substantive violations

---

[1] The relevant factual and procedural background is interwoven throughout the argument section of this brief.

of the Act, conspiracy to commit health care fraud, and conspiracy to obstruct justice. 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), 18 U.S.C. §§ 1349 and 1512(k). A jury convicted both of all offenses.

Shortly after the verdict, Dr. Brody retained new counsel. ECF Nos. 548-549. Dr. Brody now moves to for a new trial under Rule 33.

## SUMMARY OF ARGUMENT

I.    First, by forcing Dr. Brody's new counsel to proceed to trial in such a compressed timeframe, the Court denied Dr. Brody his Sixth Amendment right to the effective assistance of counsel. To remedy that fundamental constitutional defect in the framework of the trial, the Court should grant Dr. Brody a new trial under Rule 33. All of the factors that courts consider under *United States v. Turner*, 897 F.3d 1084, 1102 (9th Cir. 2018), pointed to granting the motion to continue.

II.    Second, the Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). His trial counsel failed to conduct the requisite investigation and decided to outsource the defense strategy to the co-defendant's lawyers. Her decision to delegate nearly the entire defense strategy to someone else's attorney was not the product of a strategic choice, and it is therefore not entitled to deference. *See Rogers v. Dzurenda*, 25 F.4th 1171, 1183 (9th Cir. 2022). Trial counsel's decision to pursue the joint defense strategy prejudiced Dr. Brody; there is a reasonable probability that, had trial counsel conducted a thorough investigation, she would have realized that pursuing a joint defense strategy was unlikely to result in an acquittal. Similarly, trial counsel's decision to forego calling an expert medical witness to rebut Dr. Goodman's testimony was a critical error that was not the product of a strategic choice.

Because Dr. Brody was denied his right to counsel under *Strickland*, the Court should grant him a new trial under Rule 33.

III.    Finally, the Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to present a complete defense. Here, the cumulative effect of the Court's rulings on defense

cross-examination and proffered evidence constituted a systematic denial of the right to present a complete defense. The two errors are as follows: (1) the Court prohibited the defense from introducing Dr. Brody's training videos; and (2) the Court prohibited the defense from calling patients to testify about legitimate care they received from Done.

**LEGAL STANDARDS**

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike Rule 29, Rule 33(a) does not require this Court to view evidence, or draw inferences, in the Government's favor. *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). Thus, "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

Specifically with regard to ineffective assistance of counsel claims, the Ninth Circuit has expressly encouraged district courts to consider these claims as germane under Rule 33. *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013). "[W]hen a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *Id.* "Requiring a defendant to wait for post-conviction relief has several consequences, including that a defendant may serve months in prison waiting for post-conviction arguments to be heard. Lengthy delays necessarily entail concomitant weakening of memories and aging of evidence." *Id.*

3:24-CR-00329-CRB

**ARGUMENT**

**I.      By forcing Dr. Brody's new counsel to proceed to trial in such a compressed timeframe, the Court denied Dr. Brody his Sixth Amendment right to the effective assistance of counsel.**

Only three months before this enormous trial, Dr. Brody's co-defendant cut off his defense funding and caused his entire defense team to abandon him.  When his new lawyer, a solo practitioner, inherited the case, she naturally was intellectually and practically overwhelmed with the amount of work that was required to adequately prepare a defense for a trial of this magnitude.  In a sworn declaration seeking a continuance, she described the task as "physically impossible."  The Court's denial of the motion to continue resulted in Dr. Brody being denied the effective assistance of counsel.  Because Ms. Nechay was not prepared to try this case, the jury's verdict was not arrived at through the robust adversarial testing process envisioned by the Framers.  To remedy that miscarriage of justice, the Court should grant Dr. Brody a new trial under Federal Rule of Criminal Procedure 33.

**A.      Relevant background.**

Co-defendant Ruthia He initially agreed to pay for Dr. Brody's defense.  ECF No. 270-1.  And if that promise had been kept, perhaps Dr. Brody's defense team would have been prepared for trial on the September 2025 date.  But when Ruthia He backed out of that promise and reversed course, it set in motion a series of dilemmas that culminated in the collapse of Dr. Brody's defense team and a replacement with counsel who was not prepared to try a case of this magnitude.

**1.      Dr. Brody's lawyers abandon him three months before trial.**

Shortly after the grand jury returned the Indictment in June 2024, three attorneys made appearances on the case for Dr. Brody.  ECF Nos. 27, 75, 141.  None of these three attorneys limited their appearance in any way.  *Cf.* Crim. L.R. 44-2(c) (permitting limited appearance with leave of court).  Ruthia He informed Dr. Brody's attorneys that Done would be paying for Dr. Brody's defense.  ECF No. 275-3 at ¶ 3 (sealed declaration of Ms. Chung).  That representation would prove to be illusory and short-lived.

Nearly a year after the Indictment was returned, these three attorneys moved for a continuance of the trial date. ECF No. 241. Counsel argued, among other things, that funding issues existed and that counsel lacked the resources to adequately review the voluminous discovery before trial. ECF No. 241 at 3-6. Following litigation, *see* ECF Nos. 247, 248, 257, the Court granted the motion to continue, re-setting the trial date to late September 2025. ECF No. 258.

While the motion to continue was pending, Ruthia He's attorneys informed Dr. Brody's defense team that they would no longer be providing funding for Dr. Brody's defense. ECF No. 270-1.

Less than a month after the Court granted the one and only continuance motion that had been filed at that point, Dr. Brody's entire defense team moved to withdraw. ECF No. 270. The defense team argued that irreconcilable differences had arisen between them and Dr. Brody. *Id.* at 1.

The Court granted Dr. Brody's entire defense team permission to withdraw. ECF No. 281. At this juncture, Dr. Brody was left with not a single lawyer who was familiar with the facts, circumstances, or the procedural history of his case.

### 2. A solo practitioner inherits the defense case three months before trial.

Three months before trial, attorney Valery Nechay made an appearance on the case. ECF No. 290. At this point, it was incumbent on Ms. Nechay to perform a series of functions, as would be required of criminal defense counsel in any case. *See generally* American Bar Ass'n, *Criminal Justice Standards for the Defense Function* (4th ed. 2017).

### 3. Litigation, filings, and discovery productions during the summer of 2025.

By the time Ms. Nechay made an appearance, the Government had already produced an enormous amount of discovery to the defense. This included nearly 19 million pages of discovery. ECF No. 377-2 at 2. Over the course of the summer, that number exploded even further to include an additional 1.2 million pages of discovery. *Id.* In the words of Ms. Nechay, "[i]t is physically impossible for any attorney

3:24-CR-00329-CRB

to competently review, analyze, and prepare this mountain of evidence for trial set to begin next month." ECF No. 377-2 at 8.

The difficulty did not stop there. The Government provided notice to the defense during the summer of 2025 of its intent to offer swathes of "other acts" evidence under Federal Rule of Evidence 404(b). ECF No. 377-2 at 4. Compounding what was already a nearly impossible project, Ms. Nechay was now in the unenviable position of having to "rebut allegations about Dr. Brody's mortgage, tax history, and prescribing practices at a completely different clinic[.]" ECF No. 377-2 at 4. As Ms. Nechay explained, "[t]his significantly expands the trial's scope beyond the Indictment's allegations adding layers of complexity and preparation time that were not fully apparent before the Government filed its notices." ECF No. 377-2 at 4.

Simultaneously, the Government and the co-defendant's attorneys were engaged in scorched-earth pre-trial motions practice on a stockpile of dense legal issues. *See*, *e.g.*, ECF No. 304 (Gov't motion for disclosure); 305 (He opp. to motion for disclosure); 312 (He motion to compel); 314 (He reply brief); 317 (He motion in limine); 318 (He motion in limine); 319 (Gov't motion in limine); 330 (Gov't motion in limine); 330 (Gov't response to He motion in limine); 331 (Gov't response to He motion in limine); 333 (He motion to exclude); 334 (He response to motion in limine); 335 (Gov't response to motion to exclude); etc.

Ms. Nechay previously explained that there were "numerous complex evidentiary disputes currently the subject of approximately ten motions recently filed by Ruthia He and the Government – in August alone." ECF No. 377-2 at 4.

### 4. Ms. Nechay moves for a continuance based on inadequate time to prepare and a medically necessary procedure.

Facing the impossible task before her, including reviewing the barrage of filings coming through and the near-daily document dumps, Ms. Nechay moved for a continuance of the trial date. ECF Nos. 377-2, 377-3. In addition to the inadequate time within which to prepare, Ms. Nechay explained to the

Court that she had a medical procedure scheduled for very shortly before trial that she was worried about and that would require days to recover from. *See* ECF No. 377-3 (sealed declaration of Ms. Nechay). In her sworn declaration, Ms. Nechay described to the Court that she suffered a "recent exacerbation of painful symptoms . . . requiring a medically necessary procedure . . ." ECF No. 377-3 at ¶ 3. She further described the challenges she faced in trying to secure an appointment with the doctor for the procedure, and further explained that her "efforts to [schedule the appointment] well in advance of this trial are well documented . . ." *Id.* at ¶ 4. These challenges "caused unforeseen delays after [she] entered her appearance on this case." *Id.* Finally, Ms. Nechay explained that "the average time it takes to return to regular activity is reported between 2-4 weeks." *Id.* at ¶ 5.

Both the Government and Ruthia He opposed the motion.

The Court denied Ms. Nechay's motion less than twenty-four hours later. The Court reasoned that Ms. Nechay had previously "affirmatively represent[ed] to the Court that [she] would be prepared" to try the case on September 29, 2025. Tr. of Pre-Trial Conf. at 6:17-19 (Sept. 9, 2025). The Court explained that it "relied on [her] representations that [she] would be ready to proceed on the 29th." *Id.* at 7:2-4.

**B.    Argument.**

The Court should have granted Ms. Nechay's motion to continue because it was unreasonable to expect her to be able to adequately prepare for trial in such a compressed timeframe. All of the factors under *United States v. Turner*, 897 F.3d 1084, 1102 (9th Cir. 2018), pointed to granting the motion. And now with the benefit of hindsight, the record reflects how unprepared Ms. Nechay was to adequately defend Dr. Brody. As a result, to remedy the fundamental constitutional defect in the framework of this trial, the Court should grant Dr. Brody a new trial under Federal Rule of Criminal Procedure 33.

The Supreme Court has held that "[t]he Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v.*

16

3:24-CR-00329-CRB

*California*, 422 U.S. 806, 807 (1975).  The Supreme Court has cautioned that denying a criminal defense lawyer the opportunity to prepare her defense converts the defense function "into a sham."  *Avery v. Alabama*, 308 U.S. 444, 446 (1940).  As Justice Blackmun once cautioned, "[t]he constitutional right to assistance of counsel is rendered meaningless if a defendant is forced to trial in the absence of adequate time to prepare."  *United States v. Rojas-Contreras*, 474 U.S. 231, 240 (1985) (Blackmun, J., concurring).

The ability of defense counsel to have adequate time to prepare for trial is "[i]mplicit in [the] right to counsel" under the Sixth Amendment.  *United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995).  For this reason, the Eleventh Circuit has explained that "we feel compelled to caution against the potential dangers of haste, and to reiterate that an insistence upon expeditiousness in some cases renders the right to defend with counsel an empty formality."  *United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995).  "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

"Generally, a decision to grant or deny a continuance is reviewed for an abuse of discretion."  *United States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986).  When a request for a continuance implicates the defendant's Sixth Amendment right to effective assistance of counsel, a reviewing court must consider several factors in deciding the motion.  *Turner*, 897 F.3d at 1102.  The Court considers: "(1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant."  *Id.* (citation omitted).

Here, all of the *Turner* factors cut in favor of a continuance and the Court should have granted Ms. Nechay's motion.  We address each factor in turn.

3:24-CR-00329-CRB

### 1. There had been only one previous continuance.

The first factor courts consider is whether there had been previous continuances. In this case, there had only been one prior continuance, and it was based largely on the same grounds as the Nechay motion. *See* ECF No. 241. This factor supports a finding that the Nechay motion should have been granted. This was not a case where defense counsel serially moved for continuances in an effort to delay trial. Nor was it a case where the defense sought to use the motion "as a ploy to gain time or effect delay." *Cf. United States v. Thompson*, 587 F.3d 1165, 1174 (9th Cir. 2009). Nor was it a case where Dr. Brody or his attorneys "engage[ed] in a course of conduct which [was] dilatory and hinder[ed] the efficient administration of justice." *Cf. United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979). Instead, defense counsel articulated specific challenges related to the volume of evidence, scope of evidence, and access to evidence. ECF No. 241, *passim*.

As a result, because there had only been *one* previous continuance granted at the request of lawyers who *preceded* Ms. Nechay, the first *Turner* factor cut in favor of granting Ms. Nechay's motion to continue.

### 2. Inconvenient for them, impossible for her.

The second factor courts consider is whether the parties, moving counsel, or the court would be inconvenienced based on how the court ruled on the motion. This factor should have supported a continuance.

As the Court correctly explained in denying the motion, Ms. Nechay had previously represented to the Court that she would be prepared to try the case as scheduled. Tr. of Pre-Trial Conf. at 6:17-19 (Sept. 9, 2025). Even if Ms. Nechay was prepared to try the case when she made that representation, she later represented to the Court in a sworn declaration that she was no longer prepared—and she articulated specific, legitimate reasons for why her ability to become prepared had deteriorated. ECF No. 377-2.

3:24-CR-00329-CRB

By wedding itself to Ms. Nechay's previous representation, this Court adopted the sort of "insistence upon expeditiousness in the face of a justifiable request for delay" that the Supreme Court has stated "violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12 (1983) (citation omitted). True, the Court had already summoned jurors for the trial date. Tr. of Pre-Trial Conf. at 7:2-5 (Sept. 9, 2025). And true, Ruthia He was sitting in jail demanding a speedy trial. *See* Tr. of Pre-Trial Conf. at 4:17-19 (Sept. 9, 2025). No doubt granting the motion to continue would cause inconvenience all around. But whatever level of inconvenience would have been experienced for other stakeholders in the trial, it was "physically impossible" for Dr. Brody's lawyer to become prepared. ECF No. 377-2 at 8.

The convenience factor should have cut in favor of granting Dr. Brody's motion for a continuance.[2]

### 3. The motion to continue was based on legitimate constitutional and medical reasons.

Factor three is whether there were legitimate reasons for the requested continuance. These reasons include the large discovery productions that had to be reviewed, the numerous motions that had to be reviewed and filed, and Ms. Nechay's personal medical situation.

Ms. Nechay's motion to continue was hardly a "dilatory" tactic. *Cf. Leavitt*, 608 F.2d at 1293. It was a cry for help. It is in fact hard to fathom a more robust and "legitimate" basis, to use the words of the law, *see Turner*, 897 F.3d at 1102, than what Ms. Nechay articulated in her motion.

In addition, the simple fact that Dr. Brody had only one attorney compounds the conclusion that there was a legitimate reason for the request for a continuance. In this case, the Government had a team of at least three attorneys, all supported by at least several investigators and a bench of support staff at the U.S. Attorney's Office—all of whom had been working on this case for at least fifteen months before trial. Similarly, Ruthia He had three lawyers and support staff—again, many of whom had been working on the

---

[2] To the extent that everyone besides Dr. Brody's lawyer was prepared for trial as scheduled, the Court had the opportunity to sever the cases. Along with the motion to continue, Ms. Nechay moved for severance from the co-defendant. ECF No. 377-2.

case for nearly a year before trial. *See* ECF Nos. 136, 140, 156 (notices of appearances for He's attorneys). In dramatic contrast, Dr. Brody's one and only attorney inherited the defense case only three months before trial. ECF No. 290 (appearance).

This *Turner* factor should have cut strongly in favor of granting a continuance.

**4.    The Court's refusal to continue prejudiced Dr. Brody.**

The fourth factor courts consider is whether the denial of the motion to continue would prejudice the defendant. Here, the denial prejudiced Dr. Brody because it put his counsel in the unenviable position of having to prepare to try an enormous case in an extremely compressed timeframe. Under these circumstances, Ms. Nechay was forced to try to review millions of additional documents and dozens of motions from the Government and the co-defendant, and *then* try to formulate a coherent strategy for dealing with all of it—in an extremely short amount of time. *See* ECF No.377-2, *passim*. As Ms. Nechay explained:

> [e]ven if undersigned counsel's team was able to work on this case full-time, which is not feasible, is not possible for undersigned counsel to adequately review and understand the 20.1 million pages and over 4,000 other native files totaling 4.3 terabytes of discovery [in] this case by September 29, 2025, after first appearing on June 9, 2025.

*Id.* at 5.

Because the ability of defense counsel to have adequate time to prepare for trial is "[i]mplicit in [the] right to counsel[,]" *Verderame*, 51 F.3d at 252, "[t]he constitutional right to assistance of counsel is rendered meaningless if a defendant is forced to trial in the absence of adequate time to prepare[,]" *Rojas-Contreras*, 474 U.S. at 240 (Blackmun, J., concurring).

Without adequate time to prepare for trial, Dr. Brody was forced to proceed to trial with an attorney who was not equipped to meet the case of the prosecution in this high-stakes, highly technical, lengthy trial.

**5.      The reasons for the requested delay were outside Dr. Brody's control.**

The final factor courts consider is whether the need for the delay is the defendant's fault.  Here, it was not his fault.  It was not Dr. Brody's fault that his co-defendant cut off funding for his defense; it was not his fault that his first team of lawyers abandoned him; it was not his fault that Ms. Nechay lacked adequate time to prepare for a trial of this magnitude; and it was not his fault that his lawyer was intellectually and physically distracted due to a personal medical issue that arose right before trial.

Start with his co-defendant cutting off funding.  From the outset of the case, the expectation was that Done would pay for Dr. Brody's defense.  *See* ECF No. 275-3 at ¶¶ 4, 6.  But that changed in the spring of 2025 when Ruthia He decided to cut off funding.  *See id.*

Next, it was not Dr. Brody's fault that his first set of lawyers backed out—it was Ruthia He's.  Dr. Brody did not terminate his prior defense team—they abandoned him.  This is not a case in which Dr. Brody serially terminated lawyer after lawyer in an effort to delay.  *Cf. Yokely v. Hedgepeth*, 801 F. Supp. 2d 925, 948 (C.D. Cal. 2011) (concluding that, after granting five continuances, defendant's effort to retain new counsel the day before sentencing was an effort to delay the proceedings).  And the friction between his prior defense team and Dr. Brody—what they described as irreconcilable differences, *see* ECF No. 275-3—cannot be attributed to Dr. Brody as having been his "fault."

\* \* \*

In this case, "[t]he wheels of justice were spinning too fast[,] and [this] [C]ourt's denial of a continuance compromised [Dr. Brody's] right to a fair trial."  *United States v. Zamora-Hernandez*, 222 F.3d 1046, 1057 (9th Cir. 2000) (Nelson, J., dissenting).  The *Turner* factors all strongly pointed to granting a continuance.  The Court should grant Dr. Brody a new trial under Rule 33.

**II.    The Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to the effective assistance of counsel.**

The Court should exercise its discretion under Rule 33 to grant Dr. Brody a new trial because he was denied his Sixth Amendment right to the effective assistance of counsel.

Ms. Nechay abdicated her role as defense counsel for Dr. Brody and outsourced it to someone else's attorney. Her decision to delegate nearly the entire defense strategy (which we show below) to someone else's attorney was not the product of a strategic choice. True, a trial lawyer's decisions on how to defend the client are ordinarily immune from scrutiny under the doctrine of strategic choice. But the decision must be based on a sufficient factual and legal investigation that supports the choice. Here, Ms. Nechay did not engage in the requisite investigation to justify a nearly wholesale delegation of the defense to another law firm, her decision was the "antithesis of a 'strategic' choice." *Wood v. Allen*, 558 U.S. 290, 305 (2010) (Stevens, Kennedy, JJ., dissenting).

The "choice" to pursue a joint defense strategy materially damaged Dr. Brody's chances of an acquittal. If trial counsel had properly investigated, she would have determined that pursuing a joint defense strategy—and delegating nearly the entire strategy to Ruthia He's attorneys—was unlikely to result in an acquittal. If trial counsel had properly investigated, there is a reasonable probability that the result of the proceeding would have been different.

Thus, because Dr. Brody's trial counsel's performance was not the product of a strategic choice, and because that performance prejudiced Dr. Brody, he was denied his right to the effective assistance of counsel and the Court should grant a new trial.

\* \* \*

The Sixth Amendment secures a criminal defendant's right to counsel. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). The right to counsel is the right to the effective assistance of counsel. *Id.* at 686. "That a person who happens to be a lawyer is present . . . alongside the accused, however, is not enough to satisfy the constitutional command." *Id.* at 685. This constitutional command "is recognized .

22

. . because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). The right "assures the fairness, and thus the legitimacy, of our adversary process by ensuring that defendants have a fair opportunity to contest the charges against them." *Greiner v. Wells*, 417 F.3d 305, 318-19 (2d Cir. 2005) (citations omitted).

A defendant wins a *Strickland* claim by making a two-prong showing. *Strickland*, 466 U.S. at 688. Under the first prong, that his trial lawyer's performance was legally deficient. *Id.* Under the second, that the performance prejudiced his case in such a way that, but for the unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *Id.* We address each prong in turn.

A.    *Strickland* **one: Ms. Nechay was ineffective when she outsourced nearly the entire defense to someone else's lawyer without an adequate investigation.**

Under the first prong of the *Strickland* standard, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[A] criminal defendant's counsel may be deemed ineffective only if counsel's performance falls outside the wide range of reasonable professional assistance." *United States v. Osorio-Arellanes*, 112 F.4th 647, 663 (9th Cir. 2024) (citation omitted). Review of a defense lawyer's conduct at trial is "highly deferential," there being a rebuttable presumption that his actions consisted of "sound trial strategy." *Osorio-Arellanes*, 112 F.4th at 663 (citations omitted).

1.    **The doctrine of strategic choice.**

But that deference is limited by the doctrine of strategic choice. *Strickland*, 466 U.S. at 690-91. When courts analyze counsel's performance under prong one, the question is often *not* whether counsel should have pursued this or that strategy. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Instead, courts "focus on whether the investigation supporting [the decision complained of] *was itself reasonable*." *Id.* (emphasis in original). The lack of a supporting legal and factual investigation may make "a fully

3:24-CR-00329-CRB

informed decision" with respect to a particular strategy "impossible." *Id.* at 527-28. Without the requisite investigation to support her decisions, a trial lawyer cannot be said to have made a "strategic" choice. *Correll v. Ryan*, 539 F.3d 938, 949 (9th Cir. 2008). "An uninformed strategy is not a reasoned strategy. It is, in fact, no strategy at all." *Id.* (reversing denial of habeas relief). The Ninth Circuit "does not give deference" to trial counsel's choice of one strategy over another "when [counsel] did not investigate the choice and had no informed view on" which route was more likely to benefit the defendant. *See Rogers v. Dzurenda*, 25 F.4th 1171, 1183 (9th Cir. 2022) (affirming grant of habeas relief). "Although trial counsel is typically afforded leeway in making tactical decisions regarding trial strategy, counsel cannot be said to have made a tactical decision without first procuring the information necessary to make such a decision." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006) (affirming grant of habeas relief).

### 2. Scope of review.

The U.S. Supreme Court has held that "the type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole—specific errors and omissions may be the focus of a claim of ineffective assistance as well." *Cronic*, 466 U.S. at 657 n.20. Extrapolating the Supreme Court's rationale, the Ninth Circuit has explained that reviewing courts can consider either "specific blunders" or that counsel was " 'totally' unprepared." *Ewing v. Williams*, 596 F.2d 391, 397 (9th Cir. 1979).[3] A court may even "order a new trial where multiple errors or omissions result in prejudice to the defendant, even where no one error would, by itself, require a new trial." *Id.* (citing *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc)).

Judges of the Second Circuit have explained this concept cogently by saying that although a reviewing court considers "all the circumstances," *Greiner*, 417 F.3d at 319, "[i]t is [nevertheless] axiomatic that, even if defense counsel had performed superbly throughout the bulk of the proceedings, they would still be found ineffective under the Sixth Amendment if deficient in a material way, albeit only

---

[3] Below, Dr. Brody argues both.

for a moment and not deliberately, and that deficiency prejudiced the defendant." *Rosario v. Ercole*, 601 F.3d 118, 138 (2d Cir. 2010) (Straub, J., concurring in part and dissenting in part). In this regard, the Second Circuit has explained that evaluating counsel's performance "in all other respects [other than the one(s) complained of] fail[s] to apply the *Strickland* standard at all." *Henry v. Poole*, 409 F.3d 48, 72 (2d Cir. 2005) (citations omitted).

### 3.    The present case.

In the present case, Ms. Nechay delegated nearly the entire defense strategy to the co-defendant's lawyers. That decision was not, and could not, have been the product of a reasonably thorough factual and legal investigation calculated to result in a strategic choice.

The Court need not look far to confirm that Ms. Nechay was in over her head when she inherited the case only three months before trial. In her motion to continue, she described the enormous amount of discovery she stepped into, as well as the ongoing barrage of daily discovery productions coming through the gate. ECF No. 377-2 at 2. In the words of Ms. Nechay, "*[i]t is physically impossible* for any attorney to competently review, analyze, and prepare this mountain of evidence for trial set to begin next month." *Id.* at 8 (emphasis added). There is no way that any solo practitioner could have even made a dent in reviewing this material in such a compressed timeframe. Meanwhile, the co-defendant's attorneys and the Government were bombarding her with serial motion practice. *See, e.g.*, ECF Nos. 304, 305, 312, 314, 317, 318, 319, 330, 330, 331, 333, 334, 335. Keep in mind that this was a co-defendant's law firm described as "[a]n elite firm with 16 global offices and approximately 1,200 attorneys." *Willkie Farr & Gallagher LLP*, VAULT (last visited Feb. 10, 2026), https://tinyurl.com/mv8ajvd6. Nechay explained that there were "numerous complex evidentiary disputes currently the subject of approximately ten motions recently filed by Ruthia He and the Government – in August alone." ECF No. 377-2 at 4.

September was even worse for Dr. Brody's one and only lawyer. At that point, the co-defendant's attorneys and the Government filed another series of hotly contested motions. *See, e.g.*, ECF No. 380

3:24-CR-00329-CRB

(proposed jury instructions—over 140 pages long); 399 (Gov't motion to exclude); 400 (motion to compel); 401 (opposition); 405 (opposition); 417 (motion to quash); 419 (notice); 420 (response); 421 (motion in limine); 422 (motion to exclude); 423 (opposition).  October was worse still, not least of which was because of the compounding stress of having to review motion after motion after motion, *on top of* the August and September motions.

Faced with these compounding and overlapping challenges, Ms. Nechay pursued the only possible option she had available: Delegate the entire defense strategy to the co-defendant's lawyers.  But because she was basically going in blind, she could not "make a fully informed decision" on whether to delegate anything at all, never mind delegate nearly the entire defense.  *See Wiggins*, 539 U.S. at 523.  Lacking a sufficient background investigation, it was "impossible" for Dr. Brody's lawyer to determine if this "strategy" was in the best interest of her client.  *Id.*  Going in blind "is not a reasoned strategy.  It is, in fact, no strategy at all."  *Correll*, 539 F.3d at 949.

The focus is *not* on whether it was in fact the best tactical decision to pursue to a joint defense theory and to delegate most of the decision-making to the co-defendant's lawyers.  Instead, the "focus [is] on whether the investigation supporting [the decision to pursue a joint defense theory and to delegate] *was itself reasonable.*"  *Wiggins*,  539 U.S. at 523.  As in *Rogers*, this Court should "not give deference" to Dr. Brody's lawyer's decision to pursue a joint defense theory (and to delegate) because she "did not investigate the choice and had no informed view on" whether this decision was likely to improve or reduce Dr. Brody's chance of avoiding a felony conviction.  *See* 25 F.4th at 1183.

One did not need a law or medical degree to predict that Ruthia He was going to impute fault on Dr. Brody.  That strategy materialized shortly after the jury was sworn.  In opening statements, Ruthia He's attorney explained that "because Ruthia didn't know anything about the diagnosis and treatment of ADHD, she surrounded herself with medical experts who did. [Like] Dr. Brody."  Trial Tr. 253:5-7.  Translation: Ruthia He didn't know anything about what constituted proper prescribing of controlled

3:24-CR-00329-CRB

substances, but Dr. Brody did. *See id.* Next, her attorneys told the jury that, as for "members of Done's leadership team, [] *Ruthia looked to Dr. Brody* and these experienced doctors to advise on how to execute her vision of using technology to innovate, improve efficiency, and expand access to ADHD care." Trial Tr. 253:18-21. (emphasis added). Translation: If anyone did anything wrong, it was Dr. Brody. *See id.*

Ruthia He's attorneys completely unmasked their strategy in closing, when it was too late for Dr. Brody's counsel to change course. They told the jury "[t]hink about this: You heard that there were very responsible members of clinical medical leadership at Done, in addition to *Dr. Brody*." Trial Tr. 5559:14-16 (emphasis added). "These would be the people who would know if a criminal conspiracy was afoot." Trial Tr. 5559:20-21. The gun did not stop smoking there: "*These are the people* that had a front-row seat to what the medical practices were. *They would have been able to see whether they believed* that there were doctors and nurses who are knowingly or intentionally writing prescriptions for no legitimate medical purpose and outside of the usual course of professional practice." Trial Tr. 5559:22-25, 5560:1-2 (emphasis added). No translation necessary.

The joint defense strategy, if it could be described as a "strategy" at all, did not work for Dr. Brody. He was convicted on every count.

Finally, trial counsel failed to call an expert witness to rebut Dr. Goodman's testimony—a critical mistake. Ordinarily, the decision of which witnesses to call, or not to call, is left to the discretion of the defense attorney. *See Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009). But when defense counsel fails to conduct the requisite investigation, courts "d[o] not give deference" to trial counsel's decision. *Rogers*, 25 F.4th at 1183. Had trial counsel adequately investigated the facts and the law, she would have concluded that it was critical to call a medical expert to rebut the testimony of Dr. Goodman.

Indeed, "expert witnesses are almost always used in Pill Mill cases." Joseph B. Evans, J.D., *Expert Witnesses Are a Necessary Prescription For Pill Mill Cases*, EXPERT INSTITUTE (Feb. 12, 2021), https://tinyurl.com/bd6skhmm. "The standard of acceptable medical care must ordinarily be established

by expert testimony." *United States v. Zolot*, 968 F. Supp. 2d 411, 429 (D. Mass. 2013). "Naturally, the trier of fact can rarely determine the applicable standard of care without the assistance of expert testimony." *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994). As the Ninth Circuit has explained, expert testimony in these types of cases is "helpful because a lay jury would not have the requisite knowledge to evaluate whether the dosage, mix, and course of narcotics prescribed by [a doctor] were medically appropriate for the conditions being complained of by his patients." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017).

By choosing to forego the use of a medical expert, trial counsel left Dr. Goodman to enjoy a monopoly on direct testimony related to the medical necessity and validity of Done's prescribing practices. For example, Dr. Goodman testified that in forty years, he had never seen such a deviation from the usual course of practice. Trial Tr. 3900:21-24. Without an expert of her own, defense counsel was not able to counter this assertion in any meaningful way. The Government's repeated references to Dr. Goodman during closing argument confirm how central his testimony and credibility were to the Government's case. *See, e.g.*, Trial Tr. 5497:8; 5500:17, 20, 24; 5508:12; 5520:17; 5523:8; 5524:3; 5526:11; 5527:7; 5531:7, 13; 5540:20.

### B. *Strickland* two.

What *would* possibly have worked for Dr. Brody—that is, something that had the potential to alter the outcome of what happened, *Strickland*, 466 U.S. at 649—was pursuing the truth. The truth is that there had been robust disagreements between Ruthia He and Dr. Brody regarding how to prescribe. Instead of Ms. Nechay drilling the metaphorical knife into Ruthia He based on the disagreements (which she should have done), Ms. Nechay (and the co-defendant's lawyers) pursued this milquetoast theory that there were garden variety differences of opinion that are typical of any business. *See, e.g.*, Trial Tr. 253:24-25 ("[S]ometimes there was debate and disagreement. Done's medical leadership team didn't always see things the same way.").

3:24-CR-00329-CRB

Debate and disagreement?  Nonsense.  Try robust clashing between a career business executive and a doctor focused on patient care.  The evidence of robust clashing between the two was powerful cannon fodder Ms. Nechay could have used to show that Dr. Brody was trying to pursue the legitimate practice of medicine while Ruthia He was pursuing a profit motive.  That theory would have lined up perfectly with even *the Government's* theory that Ruthia He "was focused on speed and volume, removing the guardrails required by law because that led to more money."  Trial Tr. 225:7-8, , and that "[Ruthia] He controlled every aspect of the operation with Defendant Brody a fig-leaf," ECF No. 349 at 4:10-14.

Although the prejudice showing under *Strickland* is "highly demanding," defendants are *not required* to show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.  To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 649.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial.  *Id.* at 694.

Had Ms. Nechay adequately investigated the facts and the law, she would have determined that the wholesale joint defense strategy that she pursued was unlikely to result in an acquittal.  Sure, the defendants' interests were aligned to the extent they were jointly charged, inter alia, with conspiracy.  But the interest alignment started and stopped at that point.  As the Government explained, "Defendant He controlled every aspect of the operation with Defendant Brody a fig-leaf."  ECF No. 349 at 4:10-14.

In fact, Ms. Nechay expressly recognized that the defendants had materially different involvement, culpability, and interests.  In her motion to continue or sever, she forecasted Dr. Brody's defense theory.  ECF No. 377-2 at 7, 10-11.  That defense was diametrically opposed to the co-defendant's.  *See id.*

Next, Ms. Nechay made apparently zero effort to establish that Ruthia He personally gained *millions* of dollars in profit while Dr. Brody earned a comparatively paltry sum.  Other than an errant comment in her opening statement, *see* Trial Tr. 270:4 (he "was paid conservatively as a salaried

employee."), Ms. Nechay did not elicit any testimony or introduce any evidence to establish the enormous disparity in compensation, equity, or financial motive between Dr. Brody and his boss.

Finally, as explained above, trial counsel's failure to call an expert witness to rebut the allegations of Dr. Goodman severely prejudiced Dr. Brody.  Through Dr. Goodman, the Government was able to monopolize the discussion regarding the standard of care, the medical necessity of Done's treatment, and the adequacy of its prescribing practices.  This left the jury with a one-sided impression on these subjects, and further likely left the jury speculating as to why, if Done's prescribing practices were above board, Dr. Brody did not call a medical expert of his own.  Had trial counsel called a medical expert to testify as to the adequacy of Done's procedures and prescribing practices, "there is a reasonable probability that . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 649.

\* \* \*

In sum, Dr. Brody's trial counsel failed to conduct the requisite investigation to determine if pursuing a joint defense strategy was a wise choice.  Her decision to pursue that strategy fell below the objective standard of reasonableness and caused Dr. Brody to suffer prejudice.  If counsel had investigated, she would have discovered that pursuing a different strategy was more likely to result in an acquittal.  The Court should grant a new trial because Dr. Brody was denied his right to the effective assistance of counsel.

**III.    The Court should grant a new trial under Rule 33 because Dr. Brody was denied his right to present a complete defense.**

**A.    The right to present a complete defense.**

The "central function" of a criminal jury trial, the Supreme Court has explained, "is to discover the truth."  *Portuondo v. Agard*, 529 U.S. 61, 73 (2000).  "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.  The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts."  *United States v. Nixon*, 418 U.S. 683, 709 (1974).  To that end, "[o]ur adversary system "is designed to enhance the search for truth," *Williams v. Florida*, 399 U.S. 78, 82 (1970), not suppress it.

In *Chambers v. Mississippi*, the Supreme Court recognized a due process right to present a defense. 410 U.S. 284 (1973). "Few rights," the court explained, "are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 302. The right does not stop at mere presentation of some evidence, or some witnesses; the right embraces "a meaningful opportunity to present *a complete defense*." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted) (emphasis added).

"In certain instances, the cumulative effect of a court's rulings may deprive a defendant of the right to present a defense[.]" *United States v. Scovis*, 743 F. App'x 795, 801 (9th Cir. 2018). In *Chambers*, the Supreme Court endorsed the view that "the cumulative effect" of multiple evidentiary rulings may "frustrate" the defendant's "efforts to develop an exculpatory defense." 410 U.S. at 290 n.3. A series of evidentiary rulings that block the admission of defense evidence may leave the defendant in the position of being "confined to poking holes in the Government's case[,]" rather than being able to affirmatively present evidence. *United States v. Stever*, 603 F.3d 747, 757 (9th Cir. 2010) (reversing conviction based on denial of right to present a defense).

Even technically *correct* evidentiary rulings have been found to constitute a denial of the right to present a complete defense. But "[w]hen evidence is excluded on the basis of an *improper* application of the [rules of evidence], due process concerns are still greater because the exclusion is unsupported by any legitimate state justification." *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992) (emphasis in original) (citation omitted). Of course, not every incorrect evidentiary ruling amounts to a constitutional violation. *Lopez-Alvarez*, 970 F.2d at 588. "At a minimum, a defendant must demonstrate that the excluded evidence was important to his defense." *Id.* And the excluded evidence must have had the capacity to "add[] substantially to the knowledge the jury [would have] gained during the course of the trial." *Id.* Matters that were "already established" generally cannot be complained of. *Id.*

3:24-CR-00329-CRB

Finally, the Ninth Circuit has held that a district court denied a defendant his right to present a complete defense when it excluded "the main piece of evidence . . . for the defendant's main defense . . . to a critical element of the government's case." *United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013) (reversing conviction).

**B.     The cumulative effect of the Court's evidentiary rulings knee-capped Dr. Brody's right to present a complete defense.**

Here, the cumulative effect of the Court's rulings on defense cross-examination and proffered evidence constituted a systematic denial of the right to present a complete defense.  The two errors are as follows: (1) the Court prohibited the defense from introducing Dr. Brody's training videos; and (2) the Court prohibited the defense from calling patients to testify about legitimate care they received from Done.  We discuss each topic in turn.

**1.     Dr. Brody's training videos were crucial evidence.**

The Court precluded the defense from introducing Dr. Brody's training videos.  These training videos captured Dr. Brody's robust beliefs in the legitimacy of medical necessity of the work Done was doing for patients across the country.  If they had been introduced, there can be no doubt that the videos would have "added substantially to the knowledge the jury [would have] gained during the course of the trial." *Lopez-Alvarez*, 970 F.2d at 588.  As in *Evans*, Dr. Brody's training videos represented "the main piece of evidence . . . for the defendant's main defense . . . to a critical element of the government's case." 728 F.3d at 967.  As the Supreme Court held in *Ruan v. United States*, in order to convict under 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt that the doctor "knowingly or intentionally acted in an unauthorized manner." 597 U.S. 450, 457 (2022).  In other words, after *Ruan*, "a defendant unlawfully distributes controlled substances only where he *knows* that he is 'acting in an unauthorized manner, or intend[s] to do so.' " *United States v. Campbell*, 135 F.4th 376, 386 (6th Cir. 2025) (quoting *Ruan*, 597 U.S. at 454) (emphasis in original).

3:24-CR-00329-CRB

The training videos were so central to refuting the Government's charge of criminal intent that Dr. Brody's trial counsel explicitly referred to them in her opening statement. Ms. Nechay explicitly told the jury in opening that it would hear evidence about Dr. Brody creating educational content, that Dr. Brody "t[aught]" and "set standards," and that he "created well-researched educational programs and internal guidance urging clinicians to document necessity, check risk, and use their own licenses and ethics." Trial Tr. 267-268. Ms. Nechay also explicitly told the jury in opening that "*you will see* training on pill-seeking red flags." Trial Tr. 269:19-20 (emphasis added).

Not only was the excluded evidence "important to [Dr. Brody's] defense," *Lopez-Alvarez*, 970 F.2d at 588, but it would have completely changed the picture the Government painted for the jury about Dr. Brody's knowledge and intent. The lengthy commentary Dr. Brody makes in the training videos is *irreconcilable* with the charge that Dr. Brody "knew that the clinical policies and practices [he] implemented at Done would lead to the issuance of unauthorized prescriptions." Trial Tr. 5496:2-3 (Gov't closing). The Court's exclusion of the training videos "left the jury adrift, trying to understand [Dr. Brody's] intent without crucial evidence." *Smith v. Brookhart*, 996 F.3d 402, 418 (7th Cir. 2021).

### 2. The Court prohibited the defense from calling former patients.

*Second*, the court prohibited the defense from calling patients to testify about legitimate care they received from Done. This fundamentally created an incomplete, one-sided impression for the jury that the sixteen patients Dr. Goodman discussed at trial represented the entire universe of the approximately 140,000 patients that Done treated. Indeed, when the Government in a § 841(a)(1) prosecution calls only the "problematic" patients, it is incumbent on defense counsel to present evidence—if it exists, which, here, it did—of patients who were legitimately treated, lest the jury "infer that all of [the defendant's] other patients were" treated just as poorly—or illegally. *United States v. Arny*, 831 F.3d 725, 733-34 (6th Cir. 2016) (affirming district court's order for a new trial where defense counsel failed to investigate and call doctor's former patients to testify about legitimate care they received).

3:24-CR-00329-CRB

**CONCLUSION**

Dr. Brody respectfully requests that the Court issue an order granting a new trial under Federal Rule of Criminal Procedure 33(a).

Dated: February 12, 2026

THE CHAPMAN LAW FIRM

By:   */s/  Ronald W. Chapman*
        Ronald W. Chapman, II, LL.M.

DOWLING DEFENSE GROUP LLC

By:   */s/  John J. Dowling III.*
        John J. Dowling III.

ROBERTO ESCOBAR

     */s/  Roberto Escobar*

*Attorneys for Defendant*
*David Brody*