**ROBERTO ESCOBAR**
CA Bar No. 217352
201 N. Brand Blvd., Suite 200
Glendale, California 91203
Ph: 818-281-0541
E: bobby@elaw.business

Attorneys for Defendant David Brody

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>                Defendants. | CASE NO.:  3:24-CR-00329-CRB<br><br>**DEFENDANT DAVID BRODY'S REPLY TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM (ECF No. 638)**<br><br>Sentencing Date: July 7, 2026<br>Time: 10:00 a.m.<br>Courtroom 6, 17th Floor<br><br>**Judge:** Hon. Charles R. Breyer |

Brody Reply to Gov't Suppl. Sentencing Memo

1

3:24-CR-00329-CRB

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................3

I. INTRODUCTION ........................................................................................................4

II. THE GOVERNMENT'S SIX QUANTIFICATION METHODS CANNOT YIELD A RELIABLE PILL-COUNT FINDING BEYOND THE FIVE COUNTS OF CONVICTION ........................................4

    A. Method 1 (the Goodman 16 charts) proves nothing about the platform ...........................4

    B. Method 2 (Dr. Brody's bridge prescriptions) confuses a procedural label with magnitude .............5

    C. Method 3 (coconspirator volume) is unreliable and is not Dr. Brody's conduct ..............................5

    D. Methods 4–5 (no follow-up; 180+ day gaps) rest on invalid proxies ..............................................5

    E. Method 6 (deduplicated 17.2 million pills) magnifies, not cures, unreliability ...............................6

III. THE RELEVANT-CONDUCT CALCULATION FAILS UNDER U.S.S.G. § 1B1.3 .......................6

    A. The Coconspirators' Pill Counts Are Not Reasonably Foreseeable to, or Within the Scope of, Dr. Brody's Agreement .................................................................................6

    B. Even Dr. Brody's Own 394,324 Prescriptions Must Be Scoped by Magnitude, Not Attributed Wholesale .................................................................................7

IV. THE COURT'S APRIL 28 FINDINGS AND THE HEARTLAND DETERMINATION CONTROL .................................................................................9

V. KELLER AND THE OTHER COMPARATORS CONFIRM THAT 120 MONTHS WOULD CREATE UNWARRANTED DISPARITY .................................................................................10

VI. THE § 3553(a) FACTORS COMPEL A NON-CUSTODIAL SENTENCE .....................................12

    A. Probation's neutral judgment .................................................................................12

    B. History and characteristics .................................................................................12

    C. Nature of the offense .................................................................................12

VII. RESERVATION OF RIGHTS REGARDING EXTRAPOLATION UNDER NAPOLI ................13

VIII. CONCLUSION .................................................................................14

Brody Reply to Gov't Suppl. Sentencing Memo

2

3:24-CR-00329-CRB

## TABLE OF AUTHORITIES

**CASES**

Gall v. United States, 552 U.S. 38 (2007) ..............................................................................9, 12

Kimbrough v. United States, 552 U.S. 85 (2007)...........................................................................9

United States v. Banuelos, 322 F.3d 700 (9th Cir. 2003) ..............................................................7

United States v. Becerra, 992 F.2d 960 (9th Cir. 1993).................................................................7

United States v. Booker, 543 U.S. 220 (2005)................................................................................9

United States v. Collazo, 984 F.3d 1308 (9th Cir. 2021) (en banc)...........................................6, 7

United States v. Keller, 142 F.4th 645 (9th Cir. 2025) (cert. petition pending, No. 25-7141 (U.S. filed Mar. 24, 2026)) ...........................................................................................................10, 11, 12

United States v. Lee, 966 F.3d 310 (5th Cir. 2020) ...................................................................9, 10

United States v. Napoli, No. 3:10-cr-00642-CRB (N.D. Cal.) .................................................13, 14

**STATUTES, RULES, AND GUIDELINES**

18 U.S.C. § 3553(a) ...........................................................................................................9, 10, 12, 14

18 U.S.C. § 3553(a)(2)(B)–(C) ....................................................................................................12

21 U.S.C. § 829(a) .....................................................................................................................5, 8

21 U.S.C. § 829(e) .........................................................................................................................5

21 U.S.C. §§ 841(b), 846 ...............................................................................................................6

U.S.S.G. § 1B1.3.............................................................................................................5, 6, 7, 8, 14

U.S.S.G. § 1B1.3(a)(1)(A) .............................................................................................................8

U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.3(A)....................................................................................6, 7

U.S.S.G. § 6A1.3(a) ....................................................................................................................4, 14

**OTHER AUTHORITIES**

Non-Prosecution Agreement, United States v. Cerebral, Inc. (Nov. 4, 2024)............................11

Sentencing Transcript, United States v. Napoli, No. 3:10-cr-00642-CRB, ECF No. 1290 (June 5, 2013) ....................................................................................................................................13

Superseding Indictment, United States v. Napoli, No. 3:10-cr-00642-CRB, ECF No. 144......................13

Brody Reply to Gov't Suppl. Sentencing Memo

3

3:24-CR-00329-CRB

## I. INTRODUCTION

The Government's memorandum (ECF No. 638) asks the Court to revisit a question it has already decided. On April 28, after seven weeks of trial, the Court anchored Dr. Brody's base offense level at 12 to the five counts of conviction, found the Done patient population heterogeneous, and held that unidentified, unquantified harm could not raise the offense level. The Government nonetheless renews its theory that the Court need find only roughly 321,000 of 37 million pills unlawful—"under 1%"—to reach level 38. That argument mistakes **scale for culpability**: it converts a large absolute pill count into a finding of criminal quantity without ever establishing a *rate* of unlawful prescribing against a valid comparator. As Dr. Mayer's declaration (ECF No. 639, Ex. B) explains, that move is methodologically indefensible in a self-selected ADHD-telehealth population. The Court should adhere to its level-12 finding and impose a non-custodial sentence centered on probation with home confinement.

## II. THE GOVERNMENT'S SIX QUANTIFICATION METHODS CANNOT YIELD A RELIABLE PILL-COUNT FINDING BEYOND THE FIVE COUNTS OF CONVICTION

A disputed sentencing finding requires "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). None of the Government's six methods clears that bar, because each rests on the same defect Dr. Mayer identifies—treating raw pill counts and population-level proxies as proof of individualized illegality.

*A. Method 1 (the Goodman 16 charts) proves nothing about the platform.* Dr. Goodman reviewed 16 selected charts—including the five counts of conviction—and the Government concedes this yields only level 32. A "small, selected chart review" of charged or high-risk files "can show that certain examples exist; it cannot determine how common they are," and the Goodman sample "say[s] nothing about the prescribing landscape at Done Global" (ECF No. 639, Ex. B (Mayer Decl.) at 7–9 (Questions 8.A–E,

Brody Reply to Gov't Suppl. Sentencing Memo

4

3:24-CR-00329-CRB

9)). Population-level inference requires a defined target population, sampling frame, and uncertainty quantification the Government never supplied (ECF No. 639, Ex. B (Mayer Decl.) (Question 8.B)).

***B. Method 2 (Dr. Brody's bridge prescriptions) confuses a procedural label with magnitude.*** The Government argues that because no Schedule II "refill" exists under 21 U.S.C. § 829(a), all of Dr. Brody's prescriptions are unlawful pill counts. But the Court already drew the controlling distinction, asking not whether a violation occurred but "what is the magnitude of that violation," and whether all pills attributed to Dr. Brody can fairly be counted toward the base offense level. Dr. Mayer defines a bridge refill as "a short-duration continuity prescription intended to maintain an established treatment regimen during a temporary interruption in usual care," which can be "clinically supportable" when the patient was already evaluated and maintained on the medication and faces provider unavailability or coverage disruption (ECF No. 639, Ex. B (Mayer Decl.) at 6 (Questions 5.A–B)). The Government's reliance on 21 U.S.C. § 829(e)'s covering-practitioner definition does not change the analysis: whether or not each bridge prescription satisfied that provision's telemedicine-evaluation formality goes to the fact of a violation, not to the magnitude of criminally attributable drug quantity, which is the only question now before the Court. That is precisely Dr. Brody's context (ECF No. 639, Ex. A (Brody Decl.) ¶ 7, at 2). A bridge refill is "not purely ministerial"—confirming clinical judgment within an existing treatment plan rather than a rubber stamp (ECF No. 639, Ex. B (Mayer Decl.) at 6 (Question 5.C)).

***C. Method 3 (coconspirator volume) is unreliable and is not Dr. Brody's conduct.*** Six providers' guilty pleas establish their own offenses, not the *rate* of unlawful prescribing within their total volume; the Government's assumed fractions (12%–25%) rest on no validated denominator. As shown in Part III, that volume is also not relevant conduct attributable to Dr. Brody under § 1B1.3.

***D. Methods 4–5 (no follow-up; 180+ day gaps) rest on invalid proxies.*** "No recorded visit within 180 days" and similar gaps are "screening markers," "not validated measures of clinical impropriety unless compared against an appropriate patient-level reference standard" (ECF No. 639, Ex. B (Mayer Decl.) at

Brody Reply to Gov't Suppl. Sentencing Memo

5

7 (Question 7.B)). Records are created for "care, billing, compliance, and communication, not later epidemiologic inference" (ECF No. 639, Ex. B (Mayer Decl.) (Question 8.D)). A one-time, short-duration prescription pattern "is not dispositive… a contextual marker, not a validated proxy" of impropriety (ECF No. 639, Ex. B (Mayer Decl.) at 6 (Question 5.E)).

***E. Method 6 (deduplicated 17.2 million pills) magnifies, not cures, unreliability***. Summing five flawed proxies produces only a larger unreliable number. This is the "false precision" the Court flagged when it questioned whether the Government's general-population-versus-clinic comparison was "apples and oranges". As Dr. Mayer concludes, "[a]ggregate counts may justify scrutiny. They do not, by themselves, answer the clinical or epidemiologic question" (ECF No. 639, Ex. B (Mayer Decl.) at 9 (Question 9)).

## III. THE RELEVANT-CONDUCT CALCULATION FAILS UNDER U.S.S.G. § 1B1.3

**A. The Coconspirators' Pill Counts Are Not Reasonably Foreseeable to, or Within the Scope of, Dr. Brody's Agreement.**

The Government's methods 3 and 6 sweep roughly 9 million pills prescribed by six coconspirators into Dr. Brody's base offense level. The Guidelines do not permit that wholesale attribution. In a jointly undertaken criminal activity, a defendant is accountable for the acts of others only to the extent they were **(1) within the scope of the criminal activity the defendant agreed to undertake, (2) in furtherance of that activity, and (3) reasonably foreseeable** in connection with it. U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.3(A). These are independent requirements, and the scope inquiry is individualized to *this* defendant—not coextensive with the conspiracy as a whole. *Id.*

The Ninth Circuit reaffirmed precisely this limitation in *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc). Although *Collazo* held that the Government need not prove a conspirator's knowledge of drug type and quantity to establish *statutory* liability under §§ 846 and 841(b)—overruling

Brody Reply to Gov't Suppl. Sentencing Memo

6

3:24-CR-00329-CRB

*Becerra* and *Banuelos* on that point—the en banc court was careful to preserve the separate, individualized accountability standard that governs the *Guidelines* calculation after conviction. As the court explained, once the statutory range is set, "the district court must follow the Guidelines, which will establish a fair sentence based on **an individualized assessment of accountability**," under which "**each conspirator, for sentencing purposes, is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within the scope of his particular agreement** with the conspirators." *Collazo*, 984 F.3d at 1336. The court confirmed that § 1B1.3(a) "limits a defendant's accountability for sentencing purposes" and that any such finding "must be supported by a preponderance of the evidence." *Id.* (citing § 1B1.3(a)(1)(B) & cmt. n.3(A)).

The Government has not made that individualized showing. Dr. Brody was a salaried physician who did not found, own, or control Done, did not design its business model or compensation system, and was not paid by prescription volume (ECF No. 639, Ex. A (Brody Decl.) ¶ 3, at 1). Nothing in the record establishes that he agreed to a joint enterprise embracing the independent prescribing decisions of Cruz, Kim, Lucchese, Pratcher, Shapard, or Simor, that their volume furthered any activity he personally agreed to undertake, or that the specific scale of their prescribing was reasonably foreseeable to him. Mere participation on the same telehealth platform does not make every coconspirator's pill the foreseeable, in-scope consequence of Dr. Brody's salaried, bridge prescribing. Because *Collazo* forbids judging Dr. Brody "on the distribution made by the entire conspiracy" rather than on his own agreement, methods 3 and 6 fail § 1B1.3 on their own terms. *Collazo*, 984 F.3d at 1336.

**B. Even Dr. Brody's Own 394,324 Prescriptions Must Be Scoped by Magnitude, Not Attributed Wholesale.**

Brody Reply to Gov't Suppl. Sentencing Memo

7

3:24-CR-00329-CRB

The Government treats every one of Dr. Brody's 394,324 pills as countable simply because no fresh appointment preceded each bridge prescription. But § 1B1.3 does not authorize wholesale attribution even of a defendant's *own* conduct. Relevant conduct reaches only acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," U.S.S.G. § 1B1.3(a)(1)(A), and the resulting drug-quantity finding must rest on reliable evidence rather than assumption, by a preponderance. The controlling question, as the Court framed it on April 28, is "the magnitude of that violation"—not the bare fact that § 829(a) was crossed.

That distinction matters because Dr. Brody's prescriptions are not a homogeneous mass. The Court found the Done patient population heterogeneous, comprising patients who received appropriate treatment, patients who should not have received medication, and patients for whom the medication may have been appropriate but the evaluation inadequate. Dr. Brody's prescriptions fell across that same spectrum: by design they were continuity-of-care bridge refills for patients already evaluated, diagnosed, and maintained on stimulants by other Done clinicians (ECF No. 639, Ex. A (Brody Decl.) ¶¶ 5, 7–9, at 2–3). As Dr. Mayer explains, such bridge prescribing can be "clinically supportable," a one-time, short-duration pattern "is not dispositive" of impropriety, and a bridge refill is "not purely ministerial" (ECF No. 639, Ex. B (Mayer Decl.) at 6 (Questions 5.A–B, 5.C, 5.E)).

It follows that the lawful, continuity-supportable portion of Dr. Brody's prescribing cannot be swept into the calculation merely because it shares a procedural feature—no same-day appointment—with the unlawful portion. The Government's specific figures—87,885 pills to 1,555 members unseen for 180+ days, and an average of roughly 30 to 33 seconds per prescription—describe processing speed and appointment gaps, not the clinical validity of any given continuity refill; as Dr. Mayer explains, such timing and follow-up metrics are "contextual marker[s], not … validated prox[ies]" for unlawful prescribing, and cannot by themselves quantify a criminally attributable pill count (ECF No. 639, Ex. B

Brody Reply to Gov't Suppl. Sentencing Memo

8

3:24-CR-00329-CRB

(Mayer Decl.) at 6–7 (Questions 5.E, 7.B)). The Government bears the burden of establishing the quantity attributable to Dr. Brody by reliable, individualized evidence, and it has offered no method to separate supportable bridge refills from unsupportable ones. Dr. Mayer establishes that no validated proxy performs that separation across a large, heterogeneous platform (ECF No. 639, Ex. B (Mayer Decl.) at 6–9 (Questions 5.E, 7.B–D, 8.A–E)). The reliable course is therefore the one the Court already chose: anchor the base offense level to the five counts of conviction rather than to a 394,324-pill aggregate that conflates lawful continuity care with criminal distribution. At most, the unscoped balance is a § 3553(a) consideration, not a quantity-table input—consistent with the Court's refusal to elevate the offense level on "unidentified and unquantified" harm.

## IV. THE COURT'S APRIL 28 FINDINGS AND THE HEARTLAND DETERMINATION CONTROL

The Court found this case "way out of the heartland" the Guidelines were intended to address, contrasting it with street-level trafficking in "pills, pounds, and kilos". Indeed, the Court explained that it could identify the heartland "very easily because I have it every day," and concluded that this case "is not the same crime that is addressed in the heartland of cases in the Court's view." 4/28/26 Tr. 13:10–14, 21–23.

Dr. Mayer confirms why: high diagnosis and prescribing rates in a self-selected ADHD population "do not, standing alone, distinguish lawful treatment from inadequate treatment or clearly unlawful treatment," and telemedicine is "a modality of care," not a marker of illegitimacy (ECF No. 639, Ex. B (Mayer Decl.) at 7–9 (Questions 6.A–B, 7.B–C, 9)). Where the Guidelines' principal metric—aggregate quantity—does not map onto the conduct, a variance is part of the sentencing court's duty. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Booker*, 543 U.S. 220 (2005). The Government's lead heartland analogy, *United States v. Lee*,

Brody Reply to Gov't Suppl. Sentencing Memo

9

3:24-CR-00329-CRB

966 F.3d 310 (5th Cir. 2020), only underscores the difference: *Lee* involved a traditional pill-mill clinic dispensing oxycodone alongside stimulants, prewritten prescriptions, ignored pharmacist red flags, and family pleas to stop feeding patients' addictions—none of which describes Dr. Brody's salaried, downstream continuity prescribing of stimulants to already-diagnosed Done patients. The Court already set the base offense level at 12 and declined to quantify broader harm because it was "unidentified and unquantified". The Government offers no new evidence to disturb that finding.

## V. KELLER AND THE OTHER COMPARATORS CONFIRM THAT 120 MONTHS WOULD CREATE UNWARRANTED DISPARITY

Section 3553(a)(6) directs courts to avoid unwarranted disparities among similarly situated defendants. The Ninth Circuit's recent physician-prescribing benchmark, *United States v. Keller*, 142 F.4th 645 (9th Cir. 2025) (cert. petition pending, No. 25-7141 (U.S. filed Mar. 24, 2026)), involved conduct dramatically more aggravated than Dr. Brody's, yet produced a 30-month sentence on affirmance. The contrast is best seen directly:

| Factor | *Keller* (30 months, affirmed) | Dr. Brody (Gov't seeks 120 months) |
|---|---|---|
| Drug type | Schedule II **opioids** (oxycodone, OxyContin) — "a much more dangerous drug" per the Court | Schedule II ADHD stimulants (Adderall/amphetamine salts) |
| Patient death | Yes — patient died of a prescription-drug overdose | **None attributed** to Dr. Brody |
| Identified/quantified harm | Yes — direct, attributed harm | **None identified or quantified** for Guidelines purposes |

Brody Reply to Gov't Suppl. Sentencing Memo

| Factor | *Keller* (30 months, affirmed) | Dr. Brody (Gov't seeks 120 months) |
|---|---|---|
| Warning evidence | Prior suicide attempt known; pharmacy refused to fill | Bridge refills for already-diagnosed, already-maintained patients |
| Prescribing posture | 99th percentile of pain specialists, per patient per day | Salaried, continuity of care prescriber; no volume-based pay |
| Role/ownership | Treating physician directing the prescribing | Non-founder, non-owner; no control of business model |
| Guidelines range / sentence | 51–63 months; **varied down to 30 months**, affirmed | Court-found base level 12; Probation recommends 72 months; the initial draft PSR calculated an advisory range of 33 to 41 months. |

Every comparative axis cuts in Dr. Brody's favor. If 30 months sufficed in *Keller*—opioids, a death, ignored warnings, 99th-percentile prescribing—then 120 months for stimulant continuity-prescribing with no attributed harm is facially disproportionate. As a corporate/platform comparator, the Cerebral non-prosecution agreement also reinforces the disparity point: a comparable at-scale telehealth ADHD platform resolved with $3.65 million in forfeiture and **no criminal sentence whatsoever**. Non-Prosecution Agreement, United States v. Cerebral, Inc., U.S. Att'y Office, E.D.N.Y. (Nov. 4, 2024), discussed in Def. Brody's Supplemental Sentencing Brief, ECF No. 639, at 11.

Brody Reply to Gov't Suppl. Sentencing Memo

3:24-CR-00329-CRB

## VI. THE § 3553(a) FACTORS COMPEL A NON-CUSTODIAL SENTENCE

*A. Probation's neutral judgment.* After adopting the Government's broader quantity methodology, the Probation Office still found a Guidelines sentence "excessive and overly punitive," recommended 72 months—not 120—and declined the vulnerable-victim enhancement. The Court overruled this enhancement. The Government cannot embrace Probation's arithmetic while disregarding its conclusion. The disparity is starker still against the case's own neutral baselines. The initial Draft PSR calculated a total offense level of 20, Criminal History Category I, and an advisory range of 33–41 months; even after revision, Probation recommended 72 months, not the Government's 120. When the initial Probation calculation, Probation's ultimate below-Guidelines recommendation, *Keller*'s 30-month sentence, and this Court's level-12 finding all converge well below a decade, the Government's 120-month request stands alone and unsupported.

*B. History and characteristics.* Dr. Brody is 70 years old and has no criminal history. He is a Stanford-trained, board-certified psychiatrist with roughly 35 years of clinical, supervisory, and teaching experience, including service as a Medical Director. The conviction has already ended that career permanently: he has surrendered his ability to practice, forfeited his professional standing, and faces the collateral consequences the Court may properly weigh as punishment in its own right under *Gall*, 552 U.S. at 49–50. Given his age, health, and the absence of any recidivism indicator, no custodial term is needed to protect the public or deter him. *See* 18 U.S.C. § 3553(a)(2)(B)–(C).

*C. Nature of the offense.* This was physician prescribing in a licensed medical setting, a mixed patient population, during emergency-era telemedicine flexibility—features that bear directly on culpability and counsel against a drug-table sentence.

General deterrence does not require imprisonment here: a felony conviction, permanent professional ruin, strict supervision, and home confinement send a powerful deterrent message to any physician or telehealth platform without imposing a sentence greater than necessary.

Brody Reply to Gov't Suppl. Sentencing Memo

12

3:24-CR-00329-CRB

## VII. RESERVATION OF RIGHTS REGARDING EXTRAPOLATION UNDER NAPOLI

The Government asserts that because Dr. Brody's prescriptions were "patient specific" with "no appointment whatsoever," "there's no extrapolation, there's no *Napoli* issue". Dr. Brody respectfully disagrees and reserves the issue. This Court is uniquely familiar with the limits of extrapolation in this setting, having presided over *United States v. Napoli*, No. 3:10-cr-00642-CRB (N.D. Cal.), where it sentenced even the most culpable defendant to 60 months and the defendants as a group to terms ranging from 24 to 60 months. *See* ECF No. 1290, Tr. 10:15–11:5 (June 5, 2013). The Court has already distinguished the present case from *Napoli* on the record, finding that Done's providers "prescribed … an appropriate medication, appropriate to the condition … and that is a medical exercise," which "separates this case from *Napoli* and all the other cases that I've seen." Trial Tr. 5208:2–6.

That distinction is also why the Government cannot escape the extrapolation problem by relabeling its theory. The Government's quantity methodologies raise the same reliability and extrapolation concerns that animated this Court's caution in *Napoli*. The *Napoli* defendants ran an internet pharmacy that sold Schedule III and IV controlled substances off an online questionnaire, with no face-to-face medical provider and no effort to verify patient information, paying doctors to prescribe sight-unseen. Superseding Indictment, *Napoli*, No. 3:10-cr-00642-CRB, ECF No. 144 ¶¶ 1, 3, 14, 16, 17, 22, 24, 26. Done, by contrast, prescribed only after a face-to-face telehealth appointment and diagnosis by a licensed specialist. To the extent the Government nonetheless asks the Court to treat the entire 394,324-pill aggregate—or any of the methods 3 through 6 platform-wide figures—as criminally unlawful based on categorical proxies (age bands, follow-up gaps, one-time prescriptions) rather than patient-level proof, it performs precisely the inferential leap from an unrepresentative subset to a population total that reliable sentencing factfinding forbids. *See* U.S.S.G. § 6A1.3(a). Dr. Mayer confirms the defect: a small, selected chart review and aggregate proxies "cannot be converted into a reliable estimate of clinically unsupported prescribing across a large, heterogeneous platform," and the Goodman sample "say[s]

Brody Reply to Gov't Suppl. Sentencing Memo

13

3:24-CR-00329-CRB

nothing about the prescribing landscape at Done Global" (ECF No. 639, Ex. B (Mayer Decl.) at 7–9 (Questions 7.A–D, 8.A–E, 9)).

Accordingly, Dr. Brody preserves and does not waive any objection that (1) the Government's quantity methodologies constitute impermissible extrapolation of the kind this Court rejected in *Napoli*; (2) the asserted pill-count findings lack the "sufficient indicia of reliability" required by U.S.S.G. § 6A1.3(a); and (3) any drug-quantity determination beyond the five counts of conviction would violate due process and the principles governing relevant-conduct factfinding. Because the Court has anchored the base offense level at 12, it need not reach these questions; but Dr. Brody preserves them fully for any further proceedings or appeal.

**VIII. CONCLUSION**

The Government's six methods cannot bear the weight placed on them; methods 3 and 6 independently fail § 1B1.3; even Dr. Brody's own prescribing must be scoped by magnitude rather than attributed wholesale; and nothing in the memorandum justifies disturbing the Court's level-12 finding. A sentence centered on probation with home confinement is sufficient, but not greater than necessary, under § 3553(a). Dr. Brody respectfully requests that the Court reject the Government's 120-month recommendation.

Respectfully submitted,

/s/ Roberto Escobar

Roberto Escobar

Attorney for Defendant David Brody, M.D.

Dated: July 1, 2026

Brody Reply to Gov't Suppl. Sentencing Memo

14

3:24-CR-00329-CRB